UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA


| | | |
|---|---|---|
| LINA SCURTU | : | |
| CORNELIA GROZAV | : | |
|    Plaintiffs | : | |
| | : | |
| v. | : | Case No. 07-410 |
| | : | |
| INTERNATIONAL STUDENT | : | |
|      EXCHANGE | : | |
|    a New York corporation | : | |
|    119 Cooper Street | : | |
|    Babylon, New York    11702 | : | |
| | : | **COMPLAINT FOR DAMAGES** |
| HOSPITALITY AND CATERING | : | |
|      MANAGEMENT SERVICES | : | |
|    a California corporation | : | |
|    1137 West Taylor Street, #121 | : | |
|    Chicago, Illinois 60607 | : | |
| | : | |
| WENDCO CORP., | : | |
|    an Ohio  corporation | : | |
|    220 W. Garden Street | : | |
|    Suite 500 | : | |
|    Pensacola, Florida 32501 | : | |
| | : | |
|    Defendants | : | : |

_____/


COME NOW the Plaintiffs herein, Lina Scurtu and Cornelia Grozav, who sue

International Student Exchange, a New York corporation, Hospitality and Catering Management

Services, a California corporation, and Wendco Corp., an Ohio corporation. The basis for this

Complaint, and the remedies sought, are presented below.

## PARTIES

1.    Plaintiff, Lina Scurtu, (hereinafter referred to as "Scurtu") is a citizen of the Republic of Moldova and a legal United States resident alien under Visa #N0003574339, currently residing in Baldwin County, Alabama. She is a graduate of the Republic of Moldova Academy of Economic Study with a degree in Accounting and Finance.

2.    Plaintiff, Cornelia Grozav, (hereinafter referred to as "Grozav") is a citizen of the Republic of Moldova and a legal United States resident alien under Visa #N0003753072, currently residing in Baldwin County, Alabama. She is a graduate of Republic of Moldova Academy of Economic Study with a degree in Accounting and Finance.

3.    Defendant, International Student Exchange, (hereinafter referred to as "ISE") is a corporation incorporated under the laws of the State of New York. It allegedly maintains multiple missions including foreign student exchange programs at the high school level as well as an international professional training program, through which "trainees expect to learn about American business, improve their career skills, experience American culture and return home better qualified for their future."  Defendant ISE has its principal place of business in Babylon, New York.

4.    Defendant, Hospitality and Catering Management Services, (hereinafter referred to as "HCMS") is a corporation incorporated under the laws of the State of

2

California. It is believed that Defendant HCMS has a principal place of business in Atlanta, Georgia.

5.      Defendant, Wendco Corp., (hereinafter referred to as "Wendco") is a corporation believed to be incorporated under the laws of the State of Ohio. Defendant Wendco has its principal place of business in Pensacola, Florida.

## JURISDICTION

6.      This Court has jurisdiction over the requested relief pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1350. The allegations contained herein represent claims of violations by the respective defendants of rights and privileges afforded the Plaintiffs respectively under the Federal statutes, related and ancillary state statutes, ancillary common law, as well as under international treaties to which the United States is a signatory.

## BACKGROUND

7.      ***America is the land of opportunity***. It is with that simple statement of *raison d^etre* that hundreds of thousands of individuals come to the United States each year, immigrants attempting to better their skills, their opportunities, and their lives. Some come permanently seeking a new life. Others, like the Plaintiffs herein, come temporarily, hoping to benefit from our training, our technology, and our professional opportunities.

3

8.      In the early 1960s, Congress established the J-1 training visa program. Eventually, the Immigration and Nationality Act (INA), 8 U.S.C. §1101, et seq., was modified to provide two nonimmigrant visa categories for persons to participate in exchange visitor programs in the United States. The "J" visa was established for educational and cultural exchange programs designated by the Department of State, Bureau of Consular Affairs. [1]

9.      With the advent of these immigration programs encouraging foreigners to obtain training and professional opportunities in the United States, entrepreneurial companies sprang up to facilitate the opportunities of the programs and, without a doubt, to make a profit. ISE and HCMS are two such companies.

10.     On or about the Spring of 2006, Plaintiffs individually came to the decision that they wanted to avail themselves of the training opportunities of working in the United States.  Through the J-1 visa training program that Congress established over forty-five years ago, Plaintiffs believed that they could obtain training in the

---

[1]

The "J" exchange visitor program was designed to promote the interchange of persons, knowledge, and skills in the fields of education, arts, and sciences. Participants include students at all academic levels; trainees obtaining on-the-job training with firms, institutions, and agencies; teachers of primary, secondary, and specialized schools; professors coming to teach or do research at institutions of higher learning; research scholars; professional trainees in the medical and allied fields; and international visitors coming for the purpose of traveling, observing, consulting, conducting research, training, sharing, or demonstrating specialized knowledge or skills, or participating in organized people-to-people programs.

"J" exchange visitors must have sufficient scholastic preparation to participate in the designated program, including knowledge of the English language, or the exchange program must be designed to accommodate non-English speaking participants.

United States and through that training and/or accompanying employment learn new and additional skills. Once additionally trained, Plaintiffs would return to their home Republic of Moldova.

11.     On or about June, 2006, Plaintiff Scurtu entered into a contract with The Association for Youth Exchange Programs, an organization headquartered in the Republic of Moldova and that served as a contractual and/or de facto agent of ISE and HCMS.  The purpose of this agreement was for The Association for Youth Exchange Programs, as agent of the Defendants HCMS and  ISE, to perform all of the requirements necessary for Plaintiff Scurtu to enroll in a training program in the United States.

12.     Under the terms of this agreement with Defendant HCMS and ISE's agent, a DS-2019 form was completed and led to the issuance of a J-1 visa to the United States of America. The DS-2019 was prepared by ISE, a designated sponsoring organization. A fee of $3,500.00 was paid by Scurtu for this arrangement.

13.     Plaintiff Scurtu fully performed under the contract, including the full payment of $3,500.00 thereunder to the Association for Youth Exchange Programs, $220.00 to the Embassy of the United Sates as a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

14.     On or about October 2006, Plaintiff Grozav entered into a similar contract with The Association for Youth Exchange Programs, an organization headquartered in the Republic of Moldova and a contractual and/or de facto agent of ISE and HCMS.   The purpose of this agreement was for The Association for Youth

5

Exchange Programs, as agent of the Defendants ISE and HCMS, to perform all of the requirements necessary for Plaintiff Grozav to enroll in a training program in the United States.

15.   Under the terms of this agreement with Defendant HCMS and ISE's agent, a DS-2019 form was completed and led to the issuance of a J-1 visa to the United States of America. The DS-2019 was prepared by ISE, a designated sponsoring organization. A fee of $3,500.00 was paid by Grozav for this arrangement.

16.   Plaintiff Grozav fully performed under the contract, including the full payment of $3,500.00 thereunder to the Association for Youth Exchange Programs, $220.00 to the Embassy of the United Sates as a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

17.   It is believed and therefore alleged that an arrangement, contractual or otherwise, existed between Defendant ISE and Defendant HCMS through which HCMS assumed the responsibility of finding a suitable training program and employment for individuals who obtain J-1 visas through ISE.  Consequently, HCMS was introduced to the Plaintiffs and undertook the responsibility of finding, creating or providing a management training program for them that would comply with the J-1 visa training program and would provide Plaintiffs "with an opportunity to develop competencies in fast food restaurant management" as HCMS promised in its materials.

6

18.    In addition to undertaking contractually the responsibility of training, HCMS

undertook the responsibility of providing housing for both Scurtu and Grozav, at

Plaintiff's cost.

19.    On or about September 20, 2006, Scurtu executed a signed training plan with

HCMS.

20.    On or about October 25, 2006, Grozav executed a signed training plan with

HCMS.

21.    It is believed and therefore alleged that Defendants HCMS and Wendco have an

arrangement, contractual or otherwise, wherein HCMS assigns, directs, or

provides temporary employees to Wendco for work in one or more of Wendco's

fast food establishments.

22.    On or about September 20, 2006, Plaintiff Scurtu was assigned to work on a

temporary basis in one or more of the restaurants of Defendant Wendco. Scurtu's

hours and assignments were determined and directed by Wendco. Her

compensation was paid by HCMS. Federal and state tax withholdings were

performed by HCMS.  And HCMS deducted from her compensation the weekly

cost of her housing.

23.    On or about October 25, 2006, Plaintiff Grozav was assigned to work on a

temporary basis in one or more of the restaurants of Defendant Wendco. Grozav's

hours and assignments were determined and directed by Wendco. Her

compensation was paid by HCMS. Federal and state tax withholdings were

7

performed by HCMS.  And HCMS deducted from her compensation the weekly cost of her housing.

24.    During all times material hereto, neither Plaintiff Scurtu nor Plaintiff Grozav received anything that could even remotely be defined as management training, either under the Federal regulations of the J-1 visa program or even under the simple legal definition of the term.  Instead, Plaintiffs have been forced to labor as simple cashiers, food prep workers, and cleaning crew.

25.    The Code of Federal Regulations, 22 C.F.R. 62.22, outlines the regulations governing the J-1 training visa program. These regulations include a strict prohibition of being placed in programs that displace full time or part-time workers, and specifically prohibits trainee workers from employment in food prep, as cashiers, as counter help or other similar unskilled worker positions.

**COUNT I**

**BREACH OF CONTRACT BETWEEN SCURTU AND ISE**

26.    Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through twenty-four above.

27.    Plaintiff Scurtu entered into a written contract with ISE on or about July, 2006.

28.    Under said agreement, Scurtu was to (a) complete and return all enrollment documents; (b) pay all installments totaling $3,500.00; ( c) report when she

8

arrives in the United States, commences work, and returns to Moldova; and (d) notify ISE's agent of any change in status.

29.     In addition to the foregoing, Scurtu was obligated to, and in fact did, pay ISE the sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee and approximately $1,500.00 for transportation to the United States. Further, Scurtu fully performed all obligations, and all conditions precedent, under the contract.

30.     Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

31.     ISE failed to fulfill the obligation to find employment that complies with the dictates of the J-1 visa program. Further, ISE failed to act in good faith.

32.     Consequently, ISE has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Scurtu.

33.     Plaintiff Scurtu was injured by this breach of agreement and now seeks compensatory relief from Defendant ISE for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT II

### BREACH OF CONTRACT BETWEEN GROZAV AND ISE

34.   Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through twenty-four above.

35.   Plaintiff Grozav entered into a written contract with ISE on or about October 2006.

36.   Under said agreement, Grozav was to (a) complete and return all enrollment documents; (b) pay all installments totaling $3,500.00; ( c) report when she arrives in the United States, commences work, and returns to Moldova; and  (d) notify ISE's agent of any change in status.

37.   In addition to the foregoing, Grozav was obligated to, and in fact did, pay ISE the sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee and approximately $1,500.00 for transportation to the United States. Further, Grozav fully performed all obligations, and all conditions precedent, under the contract.

38.   Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

39.  ISE failed to fulfill the obligation to find employment that complies with the
dictates of the J-1 visa program. Further, ISE failed to act in good faith.

40.  Consequently, ISE has breached, disregarded, and failed to perform material
obligations under the subject agreement, and such breach and failure has injured
Plaintiff Grozav.

41.  Plaintiff Grozav was injured by this breach of agreement and now seeks
compensatory relief from Defendant ISE for its actions, along with such other
damages, interest, costs, and fees claimed herein.

<u>**COUNT III**</u>

<u>**FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN SCURTU AND ISE**</u>)

42.  Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through twenty-
four above.

43.  Plaintiff Scurtu entered into a written contract with ISE on or about July 2006.

44.  Said written contract had the express object or purpose of "meeting all of the
requirements necessary for participant's enrollment in the Training Program." The
Training Program is a term never defined in the agreement but implied, both in
the contract and in the parole and other written materials of the Defendants to
mean the work program associated with the issuance of a J-1 work program.

45.  Under said agreement, Scurtu was to (a) complete and return all enrollment
documents; (b) pay all installments totaling $3,500.00; ( c) report when she

11

arrives in the United States, commences work, and returns to Moldova; and (d) notify ISE's agent of any change in status.

46.     In addition to the foregoing, Scurtu was obligated to, and in fact did, pay ISE the sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee and approximately $1,500.00 for transportation to the United States. Further, Scurtu fully performed all obligations, and all conditions precedent, under the contract.

47.     Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

48.     ISE promoted, induced, suggested, and promised to Scurtu that it would find employment for her in the United States that complies with the dictates of the J-1 visa program.

49.     ISE knew that such promotions, suggestions, and promises were false.

50.     ISE promoted, induced, suggested, and promised to Scurtu that it would act in good faith, would follow the law, and would teach "about American business, improve [her] career skills, experience American culture and return [her] home better qualified for [her] future."

12

51.  ISE knew that its representations were false but made them nonetheless, with the intent that Scurtu would rely on them to her detriment.

52.  Scurtu did in fact rely upon said false representations and entered into an agreement with ISE based upon these false and fraudulent promises and promotions, as a result ISE has injured Plaintiff Scurtu.

53.  Plaintiff Scurtu seeks compensatory relief from Defendant ISE for its actions, along with such other damages, interest, costs, and fees claimed herein.


## COUNT IV

## FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN GROZAV AND ISE)


54.  Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through twenty-four above.

55.  Plaintiff Grozav entered into a written contract with ISE on or about October 2006.

56.  Said written contract had the express object or purpose of "meeting all of the requirements necessary for participant's enrollment in the Training Program." The Training Program is a term never defined in the agreement but implied, both in the contract and in the parole and other written materials of the Defendants to mean the work program associated with the issuance of a J-1 work program.

57.  Under said agreement, Grozav was to (a) complete and return all enrollment documents; (b) pay all installments totaling $3,500.00; ( c) report when she

arrives in the United States, commences work, and returns to Moldova; and (d) notify ISE's agent of any change in status.

58.     In addition to the foregoing, Grozav was obligated to, and in fact did, pay ISE the sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee and approximately $1,500.00 for transportation to the United States. Further, Grozav fully performed all obligations, and all conditions precedent, under the contract.

59.     Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C )   notify the participant of any contact information changes; and

(D)     act in good faith.

60.     ISE promoted, induced, suggested, and promised to Grozav that it would find employment for her in the United States that complies with the dictates of the J-1 visa program.

61.     ISE knew that its representations were false but made them nonetheless, with the intent that Grozav would rely on them to her detriment.

62.     Grozav did in fact rely upon said false representations and entered into an agreement with ISE based upon these false and fraudulent promises and promotions, as a result ISE has injured Plaintiff Grozav.

14

63.     ISE promoted, induced, suggested, and promised to Grozav that it would act in

         good faith, would follow the law, and would teach "about American business,

         improve [her] career skills, experience American culture and return [her] home

         better qualified for [her] future."

64.     ISE knew that such promotions, suggestions, and promises were false

65.     In inducing Grozav to enter into an agreement with ISE based upon these false

         and fraudulent promises and promotions, ISE has injured Plaintiff Grozav.

66.     Plaintiff Grozav seeks compensatory relief from Defendant ISE for its actions,

         along with such other damages, interest, costs, and fees claimed herein.


## COUNT V

## BREACH OF CONTRACT BETWEEN SCURTU AND HCMS


67.     Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through twenty-

         four above.

68.     Plaintiff Scurtu entered into a derivative written agreement with HCMS on or

         about July 2006.

69.     Under the terms of said agreement, Scurtu was to assigned to work for HCMS's

         contractual partner, Wendco, Inc.  In addition to being employed, Scurtu was to

         pay HCMS $62.50 per week for housing.

70.     During all times material hereto, HCMS knew the rules and regulations governing

         the type of employment acceptable for aliens with J-1 work visas.

71.     Under the terms of the agreement, HCMS was obligated to:

(A)     provide employment and training opportunities consistent with the J-1

work programs;

(B)     provide housing;

( C)    provide orientation to participants, including Plaintiffs, for all material

matters providing training required under the J-1 visa program; and

(D)     act in good faith.

72.     HCMS failed to fulfill the obligations of said contract, specifically failing to:

(A)      find employment and training that complies with the dictates of the J-1

visa program;

(B)      provide safe and secure housing;

( C)     provide orientation and training as required under the visa program; and.

(D)     act in good faith.

73.     Consequently, HCMS has breached, disregarded, and failed to perform material

obligations under the subject agreement, and such breach and failure has injured

Plaintiff Scurtu.

74.     Plaintiff Scurtu was injured by this breach of agreement and now seeks

compensatory relief from Defendant HCMS for its actions, along with such other

damages, interest, costs, and fees claimed herein.


**COUNT VI**

**BREACH OF CONTRACT BETWEEN GROZAV AND HCMS**

16

75.    Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through twenty-four above.

76.    Plaintiff Grozav entered into a written derivative agreement with HCMS on or about October 2006.

77.    Under said agreement, Grozav was assigned to work for HCMS's contractual partner Wendco, Inc. In addition to being employed, Grozav was to pay HCMS $62.50 per week for housing.

78.    During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

79.    Under the terms of the agreement, HCMS was obligated to:

(A)    provide employment and training opportunities consistent with the J-1 work programs;

(B)    provide housing;

( C)    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)    act in good faith.

80.    HCMS failed to fulfill the obligations of said contract, specifically failing to:

(A)    find employment and training that complies with the dictates of the J-1 visa program;

(B)    provide safe and secure housing;

( C)    provide orientation and training as required under the visa program; and.

(D)    act in good faith.

81.    Consequently, HCMS has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Grozav.

82.    Plaintiff Grozav was injured by this breach of agreement and now seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT VII

## FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN SCURTU AND HCMS)

83.    Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through twenty-four above.

84.    Plaintiff Scurtu entered into a written agreement with HCMS on or about July 2006.

85.    Under said agreement, Scurtu was to work for HCMS's assigned contractual partner. In addition to being employed, Scurtu was to pay HCMS $62.50 per week for housing.

86.    During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

87.    Under the terms of the agreement, HCMS was obligated to:

18

(A)     provide employment and training opportunities consisted with the J-1 work programs;

(B)     provide housing;

( C)     provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)     act in good faith.

88.     HCMS promoted, suggested, and promised to Scurtu that it would fulfill these obligations, even though it knew that the employment to which she was sent failed to comply with the dictates of the J-1 visa program, that she was not being provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

89.     HCMS knew that its promotions, suggestions, and promises were false but made said misrepresentation with the intent that plaintiff should rely on them to her detriment.

90.     Scurtu did rely on said misrepresentation to her detriment and did enter into an agreement with HCMS.  Based upon these false and fraudulent promises and promotions, HCMS has injured Plaintiff Scurtu.

91.     Plaintiff Scurtu seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.


**COUNT VIII**

**FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN GROZAV AND HCMS)**

92.     Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through twenty-four above.

93.     Plaintiff Grozav entered into a written agreement with HCMS on or about October, 2006.

94.     Under said agreement, Grozav was to work for HCMS's assigned employer. In addition to being employed, Scurtu was to pay HCMS $62.50 per week for housing.

95.     During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

96.     Under the terms of the agreement, HCMS was obligated to:

        (A)     provide employment and training opportunities consisted with the J-1 work programs;

        (B)     provide housing;

        ( C)    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

        (D)     act in good faith.

97.     HCMS promoted, suggested, and promised to Grozav that it would fulfill these obligations, even though it knew that the employment to which she was sent failed to comply with the dictates of the J-1 visa program, that she was not being provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

20

98.     HCMS knew that its promotions, suggestions, and promises were false but made
        said misrepresentation with the intent that plaintiff should rely on them to her
        detriment.

99.     Grozav relied on these misrepresentations to her detriment and entered into an
        agreement with HCMS.  Based upon these false and fraudulent promises and
        promotions, HCMS has injured Plaintiff Grozav.

100.    Plaintiff Grozav seeks compensatory relief from Defendant HCMS for its actions,
        along with such other damages, interest, costs, and fees claimed herein.


## COUNT IX

### CIVIL CONSPIRACY (ISE, HCMS, AND WENDCO)


101.    Plaintiffs reallege, reaver, and restate Paragraphs one through twenty-four above.

102.    At all times material hereto, Defendants ISE, HCMS, and Wendco actively
        engaged with each other to market, promote, recruit, advertise, and obtain labor
        personnel who might, through the incentives and promises of management
        training and education, travel to the United States. With each individual signed
        up, all Defendants received monetary benefit.

103.    Part and parcel of the recruitment incentives was the understanding that the
        Plaintiffs were in a management training program. Nevertheless, the Defendants,
        in an organized scheme or artifice to circumvent the requirements of the
        immigration procedures for the J-1 visa program, never provided any

management-related training materials. The Defendants never placed the Plaintiffs in appropriate management-related personnel slots. In fact, a summary review of the Plaintiffs' employment history with the Defendants reflects two weeks preparing sandwiches, approximately three weeks as a cashier, and a remainder of time as a drive-through cashier. These duties also required cleaning the dining room and the bathrooms. There have been no meetings or classes with management level personnel, no on-the-job management training sessions, no training of any kind. The Plaintiffs have been used as common laborers.

104.   Defendants, at all times material hereto, were fully aware of the statutory limitations to the subject visa program. Use of the Exchange Visitor Program for ordinary work purposes is strictly prohibited. Defendants knew, or should have known, that sponsors may not place participants in positions which are filled or could be filled by part-time employees. Wendco, with the consent of HCMS, not only placed the Plaintiffs in these positions, it left them in such positions indefinitely.

105.   During all times material hereto, as part of a concerted effort, artifice, or scheme, Defendants conspired with each other, and with others, to violate the established policies relating to the Plaintiffs' visa program and related laws of the United States.

106.   The coordinated and collective intentional acts by Defendants substantially injured the Plaintiffs.

107.   The acts of Defendants, both individual and collective, were intentional and malicious and because of these actions, Plaintiffs were injured and now seek compensatory relief for such intentional acts, along with such other damages, interest, costs, and fees claimed herein.


## COUNT X

## VIOLATIONS OF TRAFFICKING VICTIM PROTECTION REAUTHORIZATION ACT OF 2003


108.   Plaintiff realleges, reavers, and restates Paragraphs one through twenty-four above

109.   It is believed, and therefore alleged, that Defendants ISE and HCMS recruited, transported, and generally obtained the labor services of the Plaintiffs for clients of HCMS.

110.   Defendant Wendco was such a contract client of HCMS and was, at all times material hereto, aware of the activities of HCMS which violated the parameters of the J-1 visa program.

111.   Defendants ISE and HCMS obtained the labor services of the Plaintiffs through fraud.

112.   The labor services provided by the Plaintiffs were compensated at below market rates in order for the Defendant HCMS to benefit financially. Further, Defendant HCMS controlled the Plaintiffs' daily lives through coercion and the threats of

being deported back to Moldova. The combination of these circumstances placed the Plaintiffs in a form of labor servitude.

113.   Plaintiffs have been injured by the Defendants' action in recruiting and obtaining their fraudulently obtained labor services.

114.   Defendants' actions in recruiting, obtaining, and maintaining the labor services of the Plaintiffs in violation of the Trafficking Victim Protection Reauthorization Act of 2003 (18 U.S.C.§§ 1589 and 1590) are remediable by a civil claim for restitution, pursuant to 18 U.S.C. § 1593.

115.   Plaintiffs Scurtu and Grozav seeks compensatory relief from the Defendants for their actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XI

## RICO

116.   Plaintiffs realleges, reavers, and restates the allegations contained in Paragraphs one through twenty-four above.

117.   In 1996, Congress expanded the Racketeer Influenced and Corrupt Organizations Act (RICO) to include violations of federal immigration law, under 18 U.S.C.§§ 1961-1968. Statutory provisions and case precedent have further expanded this protection to allow for civil actions. *See*, Commercial Cleaning Services v. Colin Service Systems, 271 F.3d 374 (2nd Cir. 2001)

118.    Defendants ISE and HCMS have engaged in a repeated activity of sponsoring J-1 visa participants improperly.

119.    Defendant Wendco has engaged in a repeated program of hiring, through HCMS, immigrants with work visas (J-1) inconsistent with the work responsibilities provided.

120.    Section 1324(a) of Title 8 of the United States Code makes encouraging and inducing immigrants to violate the Immigration and Nationality Act a crime. It is also a predicate offense to a RICO claim.

121.    Pursuant to 18 U.S.C. 1964, Defendants have engaged in a pattern of predicate offenses recognized by RICO as racketeering activity. This pattern includes, but is not limited to:

    (A)    Providing employment to an immigrant inconsistent with the visa and work documentation for that immigrant;

    (B)    Encouraging and/or inducing an immigrant to come to, enter, or reside in the United States in violation of law;

    (C)    Encouraging immigrants to remain in the United States in violation of law;

    (D)    Gaining financially from improperly sponsoring a J-1 visa program participant;

    (E)    Circumventing and violating the terms and conditions of the J-1 training program; and

    (F)    Violating the provisions of the federal wage and hour laws.

122.   Due to the Defendants' direct and proximate acts outlined above, and others, Plaintiffs have been injured. Plaintiffs' injuries include, but are not limited to, lost wages and the lost opportunity in participating in a valid, legal, appropriate, and satisfactory J-1 management training program.

123.   Plaintiffs seek compensatory damages for these injuries,  along with such other damages, interest, costs, and fees claimed herein.

## COUNT XII

## DECLARATORY JUDGMENT

124.   Plaintiffs reallege, reaver, and restate Paragraphs one through twenty-four above.

125.   Associated with Plaintiffs' assignment of employment with Defendant Wendco by HCMS, each Plaintiff was required to sign a document entitled "Agreement and Receipt for Foreign Exchange Workers".  Both the executed document and the Dispute Resolution Program requires alternative dispute resolution in the form of arbitration and mediation in lieu of litigation.

126.   Neither the executed document nor the program itself binds the Plaintiffs to this limiting course of action.

127.   Plaintiffs' employment agreement arises from their agreements with ISE and HCMS. Plaintiffs' labor services were assigned to Wendco, yet it was HCMS that dictated when Plaintiffs would work, where Plaintiffs would work, and compensated Plaintiffs for their work. The executed agreements with ISE and

HCMS explicitly and implicitly outline that all disputes shall be handled by a court of competent jurisdiction. (See Exhibit A, Contract)

128.   Any latter agreement to rely solely on arbitration or mediation is an adhesion condition of employment presented by Wendco absent any independent or related consideration. Therefore, it is unenforceable as a matter of law.

129.   Finally, any such condition to employment imposed by Wendco on assigned laborers under a J-1 management training program is void as it violates public policy.  Congress has established specific rights and remedies for victims of those who commit racketeering activities, violate the national immigration laws, and for traffickers of laborers. This preemption by the national legislature in establishing private rights of action creates a clear public policy.  Additionally, due to the limited nature of Plaintiff's visas, Defendant's through their arbitration provision seek to avoid any challenge to their unlawful and tortuous conduct by relying on Plaintiff's forced removal from the United States.  If these rights and remedies cannot be realized due to an employer-created dispute resolution program, public policy is thwarted.

130.   Consequently, Plaintiffs ask this court to issue a declaratory judgment finding the executed agreement with Wendco and its dispute resolution program unenforceable between Wendco and the Plaintiffs as it

　　　　(A)   Is contrary to the dictates of Plaintiffs other agreements;

　　　　(B)   Is not between Plaintiffs and their employers;

(C)   Is unenforceable for lack of separate and independent consideration; and

(D) Violates public policy.

## COUNT XIII

## PUNITIVE DAMAGES

131.   Plaintiffs reavers and incorporates all of the allegations contained in the previous paragraphs.

132.   The actions of the Defendants, as specifically alleged hereinabove, whether taken separately or together, were of such a character, either singularly or collectively such as to constitute a pattern, as to represent a practice of intentional wrongful conduct and/or malice causing harm and resulting in damages to Plaintiffs. More specifically, Defendants acted with a conscious and flagrant disregard for the rights of the Plaintiffs and/or deliberately engaged in oppression, wilfulness, or malice with regard to Plaintiffs.

133.   Defendants should be held liable in punitive and exemplary damages to Plaintiffs for all such conduct.

## JURY DEMAND:

1.   Plaintiffs seek a jury determination of all issues so triable herein.

## RELIEF SOUGHT:

For these reasons, Plaintiffs ask for judgment against the Defendants for the following:

1.      Compensatory damages in an amount not less than $100,000.00 from each

        Defendant.

2.      Punitive and exemplary damages in an amount in excess of $1,000,000.00  from

        each Defendant for all claims;

3.      Costs of court and attorney's fees; and

4.      All other relief the Court deems appropriate.

                                        Respectfully Submitted,

                                        /s/Robert A. Ratliff
                                        Attorney for Plaintiffs
                                        713 Dauphin Street
                                        Mobile, AL 36602
                                        (251) 438-2250 phone
                                        (251) 438-6180 fax
                                        rar@ratlifflegalgroup.com

                                        /s/Jon A. Green
                                        Jon A. Green
                                        Attorney for Plaintiffs
                                        711 Dauphin Street
                                        Mobile, AL 36602
                                        251-438-2250
                                        251-438-6180