UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

LINA SCURTU                                    :
CORNELIA GROZAV                                :
ALENA RAHAZHANAVA                              :
IRYNA HARACHKA                                        :
SVIATLANA DZIARNEIKA                           :
                                               :
    Plaintiffs                                 :
                                               :
v.                                             :          Case No. 1:07-cv-00410-WS-B
                                               :
INTERNATIONAL STUDENT                          :
        EXCHANGE                               :
        a New York corporation                 :
        119 Cooper Street                       :
        Babylon, New York    11702              :
                                               :          **FIRST AMENDED COMPLAINT**
HOSPITALITY AND CATERING                       :
        MANAGEMENT SERVICES                    :
        a California corporation               :
        1137 West Taylor Street, #121          :
        Chicago, Illinois 60607                :
                                               :
WENDCO CORP.,                                  :
        an Ohio  corporation                   :
        220 W. Garden Street                    :
        Suite 500                               :
        Pensacola, Florida 32501                :
                                               :
JOHN DOE                                       :
                                               :
    Defendants                                 :                                    :
_____/

        COME NOW the Plaintiffs herein, Lina Scurtu, Cornelia Grozav, Alena Rahazhanava,

Iryna Harachka, and Sviatlana Dziarneika, who sue International Student Exchange, a New York

corporation, Hospitality and Catering Management Services, a California corporation, Wendco

Corp., an Ohio corporation, and John Doe. The basis for this Complaint, and the remedies sought, are presented below.

## <u>PARTIES</u>

1.     Plaintiff, Lina Scurtu, (hereinafter referred to as "Scurtu") is a citizen of the Republic of Moldova and a legal United States resident alien under Visa #N0003574339, currently residing in Baldwin County, Alabama. She is a graduate of the Republic of Moldova Academy of Economic Study with a degree in Accounting and Finance.

2.     Plaintiff, Cornelia Grozav, (hereinafter referred to as "Grozav") is a citizen of the Republic of Moldova and a legal United States resident alien under Visa #N0003753072, currently residing in Baldwin County, Alabama. She is a graduate of Republic of Moldova Academy of Economic Study with a degree in Accounting and Finance.

3.     Plaintiff, Iryna Harachka, (hereinafter referred to as "Harachka") is a citizen of the Republic of Belarus and a legal United States resident alien, currently residing in Baldwin County, Alabama. She is a graduate of the University of Lodz.

4.     Plaintiff, Alena Rahazhanava, (hereinafter referred to as "Rahazhanava") is a citizen of the Republic of Belarus and a legal United States resident alien, currently residing in Baldwin County, Alabama. She is a graduate of the University of Lodz.

5.    Plaintiff, Sviatlana Dziarneika, (hereinafter referred to as "Dziarneika") is a citizen of the Republic of Belarus and a legal United States resident alien, currently residing in Baldwin County, Alabama. She is a graduate of the University of Lodz.

6.    Defendant, International Student Exchange, (hereinafter referred to as "ISE") is a corporation incorporated under the laws of the State of New York. It allegedly maintains multiple missions including foreign student exchange programs at the high school level as well as an international professional training program, through which "trainees expect to learn about American business, improve their career skills, experience American culture and return home better qualified for their future."  Defendant ISE has its principal place of business in Babylon, New York.

7.    Defendant, Hospitality and Catering Management Services, (hereinafter referred to as "HCMS") is a corporation incorporated under the laws of the State of California. It is believed that Defendant HCMS has a principal place of business in Atlanta, Georgia.

8.    Defendant, Wendco Corp., (hereinafter referred to as "Wendco") is a corporation incorporated under the laws of the State of Ohio. Defendant Wendco has its principal place of business in Pensacola, Florida.

9.    Defendant John Doe is believed to be a corporate entity affiliated with, an agent of, or a contract vendee for HCMS. Once discovery has commenced, and John

Doe's full and complete corporate identity is known, a proper substitution of these pleadings shall occur.

## JURISDICTION

10.   This Court has jurisdiction over the requested relief pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1350. The allegations contained herein represent claims of violations by the respective defendants of rights and privileges afforded the Plaintiffs respectively under the Federal statutes, related and ancillary state statutes, ancillary common law, as well as under international treaties to which the United States is a signatory.

## BACKGROUND

11.   ***America is the land of opportunity***. It is with that simple statement of *raison d^etre* that hundreds of thousands of individuals come to the United States each year, immigrants attempting to better their skills, their opportunities, and their lives. Some come permanently seeking a new life. Others, like the Plaintiffs herein, come temporarily, hoping to benefit from our training, our technology, and our professional opportunities.

12.   In the early 1960s, Congress established the J-1 training visa program. Eventually, the Immigration and Nationality Act (INA), 8 U.S.C. §1101, et seq., was modified to provide two nonimmigrant visa categories for persons to participate in exchange visitor programs in the United States. The "J" visa was established for

4

educational and cultural exchange programs designated by the Department of State, Bureau of Consular Affairs. [1]

13.   With the advent of these immigration programs encouraging foreigners to obtain training and professional opportunities in the United States, entrepreneurial companies sprang up to facilitate the opportunities of the programs and, without a doubt, to make a profit. JOHN DOE, ISE and HCMS are three such companies.

14.   After completing their university studies, Plaintiffs individually came to the decision that they wanted to avail themselves of the training opportunities of working in the United States.  Through the J-1 visa training program that Congress established over forty-five years ago, Plaintiffs believed that they could obtain employment in the United States and through that employment train and learn new and additional skills. Once additionally trained, Plaintiffs would return to their respective homes in Eastern Europe.

----

[1]

The "J" exchange visitor program was designed to promote the interchange of persons, knowledge, and skills in the fields of education, arts, and sciences. Participants include students at all academic levels; trainees obtaining on-the-job training with firms, institutions, and agencies; teachers of primary, secondary, and specialized schools; professors coming to teach or do research at institutions of higher learning; research scholars; professional trainees in the medical and allied fields; and international visitors coming for the purpose of traveling, observing, consulting, conducting research, training, sharing, or demonstrating specialized knowledge or skills, or participating in organized people-to-people programs.

"J" exchange visitors must have sufficient scholastic preparation to participate in the designated program, including knowledge of the English language, or the exchange program must be designed to accommodate non-English speaking participants.

15.     On or about January 28, 2005, Plaintiff Scurtu entered into a contract with The Association for Youth Exchange Programs, an organization headquartered in the Republic of Moldova and that served as a contractual and/or de facto agent of ISE. The purpose of this agreement was for The Association for Youth Exchange Programs, as agent of the Defendant ISE, to perform all of the requirements necessary for Plaintiff Scurtu to enroll in a training program in the United States.

16.     Under the terms of this agreement with Defendant ISE's agent, a DS-2019 form was completed and led to the issuance of a J-1 visa to the United States of America. The DS-2019 was prepared by ISE, a designated sponsoring organization. A fee of $3,500.00 was paid by Scurtu for this arrangement.

17.     Plaintiff Scurtu fully performed under the contract, including the full payment of $3,500.00 thereunder to the Association for Youth Exchange Programs, $220.00 to the Embassy of the United Sates as a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

18.     On or about January 28, 2005, Plaintiff Grozav entered into a similar contract with The Association for Youth Exchange Programs, an organization headquartered in the Republic of Moldova and a contractual and/or de facto agent of ISE.   The purpose of this agreement was for The Association for Youth Exchange Programs, as agent of the Defendant ISE, to perform all of the requirements necessary for Plaintiff Grozav to enroll in a training program in the United States.

19.     Plaintiff Grozav fully performed under the contract, including the full payment of $3,500.00 thereunder to the Association for Youth Exchange Programs, $220.00 to the Embassy of the United Sates as a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

20.     On or about August 2004, Plaintiff Harachka entered into a contract with John Doe, an organization believed to be headquartered in Eastern Europe and that served as a contractual and/or de facto agent of HCMS.  The purpose of this agreement was for John Doe to perform all of the requirements necessary for Plaintiff Harachka to enroll in a training program in the United States.

21.     Under the terms of this agreement with Defendant John Doe, a DS-2019 form was completed and led to the issuance of a J-1 visa to the United States of America. The DS-2019 was prepared by John Doe, a designated sponsoring organization. A fee was paid by Harachka for this arrangement.

22.     Plaintiff Harachka fully performed under the contract, including the full payment thereunder to John Doe, a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

23.     On or about August 2004, Plaintiff Rahazhanava entered into a contract with John Doe, an organization believed to be headquartered in Eastern Europe and that served as a contractual and/or de facto agent of HCMS.  The purpose of this agreement was for John Doe to perform all of the requirements necessary for Plaintiff Rahazhanava to enroll in a training program in the United States.

24.     Under the terms of this agreement with John Doe, a DS-2019 form was completed and led to the issuance of a J-1 visa to the United States of America. The DS-2019 was prepared by John Doe, a designated sponsoring organization. A fee was paid by Rahazhanava for this arrangement.

25.     Plaintiff Rahazhanava fully performed under the contract, including the full payment thereunder to John Doe, a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

26.     On or about August 2004, Plaintiff Dziarneika entered into a contract with John Doe believed to be headquartered in Eastern Europe and that served as a contractual and/or de facto agent of HCMS.  The purpose of this agreement was for John Doe to perform all of the requirements necessary for Plaintiff Dziarneika to enroll in a training program in the United States.

27.     Under the terms of this agreement with John Doe, a DS-2019 form was completed and led to the issuance of a J-1 visa to the United States of America. The DS-2019 was prepared by John Doe, a designated sponsoring organization. A fee was paid by Dziarneika for this arrangement.

28.     Plaintiff Dziarneika fully performed under the contract, including the full payment thereunder,  a visa request filing fee, and an advance fee paid for the cost of transportation to the United States.

29.     It is believed and therefore alleged that an arrangement, contractual or otherwise, existed between one or more of the Defendants ISE, John Doe, and Defendant HCMS through which HCMS assumed the responsibility of finding employment

for individuals who obtain J-1 visas through ISE and/or John Doe.  Consequently, HCMS was introduced to the Plaintiffs and undertook the responsibility of finding, creating or providing a management training program for them that would comply with the J-1 visa training program and would provide Plaintiffs "with an opportunity to develop competencies in fast food restaurant management" as HCMS promised in its materials.

30.    In addition to undertaking contractually the responsibility of training, HCMS understood the responsibility of providing housing for the Plaintiffs, at Plaintiff's cost.

31.    On or about March 20, 2006, Scurtu executed a signed training plan with HCMS.

32.    On or about October 25, 2006, Grozav executed a signed training plan with HCMS.

33.    On or about the summer of 2004, Alena Rahazhanava executed a signed training plan with HCMS.

34.    On or about the summer of 2004, Iryna Harachka executed a signed training plan with HCMS.

35.    On or about the summer of 2004, Sviatlana Dziarneika executed a signed training plan with HCMS.

36.    It is believed and therefore alleged that Defendants HCMS and Wendco have an arrangement, contractual or otherwise, wherein HCMS assigns, directs, or provides temporary employees to Wendco for work in one or more of Wendco's fast food establishments.

37.     On or about March 20, 2006, Plaintiff Scurtu was assigned to work on a temporary basis in one or more of the restaurants of Defendant Wendco. Scurtu's hours and assignments were determined and directed by Wendco. Her compensation was paid by HCMS, Federal and state tax withholdings were performed by HCMS.  And HCMS deducted from her compensation the weekly cost of her housing.

38.     On or about October 25, 2006, Plaintiff Grozav was assigned to work on a temporary basis in one or more of the restaurants of Defendant Wendco. Grozav's hours and assignments were determined and directed by Wendco. Her compensation was paid by HCMS, Federal and state tax withholdings were performed by HCMS.  And HCMS deducted from her compensation the weekly cost of her housing.

39.     On or about August of 2004, Plaintiff Harachka was assigned to work on a temporary basis in one or more of the restaurants of Defendant Wendco. Harachka's hours and assignments were determined and directed by Wendco. Her compensation was paid by HCMS, Federal and state tax withholdings were performed by HCMS.  And HCMS deducted from her compensation the weekly cost of her housing.

40.     On or about August of 2004, Plaintiff Rahazhanava was assigned to work on a temporary basis in one or more of the restaurants of Defendant Wendco. Rahazhanava's hours and assignments were determined and directed by Wendco. Her compensation was paid by HCMS. Federal and state tax withholdings were

performed by HCMS.  And HCMS deducted from her compensation the weekly cost of her housing.

41.    On or about August of 2004, Plaintiff Dziarneika was assigned to work on a temporary basis in one or more of the restaurants of Defendant Wendco. Dziarneika's hours and assignments were determined and directed by Wendco. Her ccompensation was paid by HCMS; Federal and state tax withholdings were performed by HCMS.  And HCMS deducted from her compensation the weekly cost of her housing.

42.    During all times material hereto, none of the Plaintiffs received anything that could even remotely be defined as management training, either under the Federal regulations of the J-1 visa program or even under the simple legal definition of the term.  Instead, Plaintiffs have been forced to labor as simple cashiers, food prep workers, and cleaning crew.

43.    The Code of Federal Regulations, 22 C.F.R. 62.22, outlines the regulations governing the J-1 training visa program. These regulations include a strict prohibition of being placed in programs that displace full time or part-time workers, and specifically prohibits trainee workers from employment in food prep, as cashiers, as counter help or other similar unskilled worker positions.

## COUNT I

## BREACH OF CONTRACT BETWEEN SCURTU AND ISE

44.     Plaintiff Scurtu entered into a written contract with ISE on or about March 20, 2005.

45.     Under said agreement, Scurtu was to (a) complete and return all enrollment documents; (b) pay all installments totaling $3,500.00; ( c) report when she arrives in the United States, commences work, and returns to Moldova; and  (d) notify ISE's agent of any change in status.

46.     In addition to the foregoing, Scurtu was obligated to, and in fact did, pay ISE the sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee and approximately $1,500.00 for transportation to the United States. Further, Scurtu fully performed all obligations, and all conditions precedent, under the contract.

47.     Under the terms of the agreement, ISE was obligated to:

    (A)     assist in obtaining the DS-2019 form;

    (B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

    ( C)     notify the participant of any contact information changes; and

    (D)     act in good faith.

48.     ISE failed to fulfill the obligation to find employment that complies with the dictates of the J-1 visa program. Further, ISE failed to act in good faith.

49.   Consequently, ISE has breached, disregarded, and failed to perform material

obligations under the subject agreement, and such breach and failure has injured

Plaintiff Scurtu.

50.   Plaintiff Scurtu was injured by this breach of agreement and now seeks

compensatory relief from Defendant ISE for its actions, along with such other

damages, interest, costs, and fees claimed herein.


## COUNT II

### BREACH OF CONTRACT BETWEEN GROZAV AND ISE

51.   Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through forty-

three above.

52.   Plaintiff Grozav entered into a written contract with ISE on or about October,

2006.

53.   Under said agreement, Grozav was to (a) complete and return all enrollment

documents; (b) pay all installments totaling $3,500.00; ( c) report when she

arrives in the United States, commences work, and returns to Moldova; and  (d)

notify ISE's agent of any change in status.

54.   In addition to the foregoing, Grozav was obligated to, and in fact did, pay ISE the

sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee

and approximately $1,500.00 for transportation to the United States. Further,

Grozav fully performed all obligations, and all conditions precedent, under the

contract.

55.     Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1

         visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

56.     ISE failed to fulfill the obligation to find employment that complies with the

        dictates of the J-1 visa program. Further, ISE failed to act in good faith.

57.     Consequently, ISE has breached, disregarded, and failed to perform material

        obligations under the subject agreement, and such breach and failure has injured

        Plaintiff Grozav.

58.     Plaintiff Grozav was injured by this breach of agreement and now seeks

        compensatory relief from Defendant ISE for its actions, along with such other

        damages, interest, costs, and fees claimed herein.


**COUNT III**

**BREACH OF CONTRACT BETWEEN HARACHKA AND JOHN DOE**

59.     Plaintiff Harachka realleges, reavers, and restates, Paragraphs one through forty-

        three above.

60.     Plaintiff Harachka entered into a written contract with John Doe on or about late

        summer, 2004.  Under said agreement, Harachka was to (a) complete and return

        all enrollment documents; (b) pay all monetary installments due; ( c) report when

14

she arrives in the United States, commences work, and returns to her home nation;

and  (d) notify John Doe's agent of any change in status.

61.     In addition to the foregoing, Harachka was obligated to, and in fact did, pay John

Doe a sum certain, and incurred out of pocket expenses  for transportation to the

United States. Further, Harachka fully performed all obligations, and all

conditions precedent, under the contract.

62.     Under the terms of the agreement, John Doe was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1

visa;

( C)     notify the participant of any contact information changes; and

(D)     act in good faith.

63.     John Doe failed to fulfill the obligation to find employment that complies with the

dictates of the J-1 visa program. Further, John Doe failed to act in good faith.

64.     Consequently, John Doe has breached, disregarded, and failed to perform material

obligations under the subject agreement, and such breach and failure has injured

Plaintiff Harachka.

65.     Plaintiff Harachka was injured by this breach of agreement and now seeks

compensatory relief from Defendant John Doe for its actions, along with such

other damages, interest, costs, and fees claimed herein

## COUNT IV

## BREACH OF CONTRACT BETWEEN RAHAZHANAVA AND JOHN DOE

66.    Plaintiff Rahazhanava realleges, reavers, and restates, Paragraphs one through forty-three above.

67.    Plaintiff Rahazhanava entered into a written contract with John Doe on or about late summer of 2004.  Under said agreement, Rahazhanava was to (a) complete and return all enrollment documents; (b) pay all monetary installments due; ( c) report when she arrives in the United States, commences work, and returns to her home nation; and  (d) notify John Doe's agent of any change in status.

68.    In addition to the foregoing, Rahazhanava was obligated to, and in fact did, pay John Doe a sum certain, and incurred  out of pocket expenses including transportation to the United States. Further, Rahazhanava fully performed all obligations, and all conditions precedent, under the contract.

69.    Under the terms of the agreement, John Doe was obligated to:

(A)    assist in obtaining the DS-2019 form;

(B)    offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)    act in good faith.

70.    John Doe failed to fulfill the obligation to find employment that complies with the dictates of the J-1 visa program. Further, John Doe failed to act in good faith.

16

71.   Consequently, John Doe has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Rahazhanava.

72.   Plaintiff Rahazhanava was injured by this breach of agreement and now seeks compensatory relief from Defendant John Doe for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT V

## BREACH OF CONTRACT BETWEEN DZIARNEIKA AND JOHN DOE

73.   Plaintiff Dziarneika realleges, reavers, and restates, Paragraphs one through forty-three above.

74.   Plaintiff Dziarneika entered into a written contract with John Doe on or about late summer of 2004.  Under said agreement, Dziarneika was to (a) complete and return all enrollment documents; (b) pay all monetary installments due; ( c) report when she arrives in the United States, commences work, and returns to her home nation; and  (d) notify John Doe's agent of any change in status.

75.   In addition to the foregoing, Dziarneika was obligated to, and in fact did, pay John Doe a sum certain and incurred out of pocket expenses including transportation to the United States. Further, Dziarneika fully performed all obligations, and all conditions precedent, under the contract.

76.   Under the terms of the agreement, John Doe was obligated to:

(A)      assist in obtaining the DS-2019 form;

17

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

77.     John Doe failed to fulfill the obligation to find employment that complies with the dictates of the J-1 visa program. Further, ISE failed to act in good faith.

78.     Consequently, John Doe has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Dziarneika.

79.     Plaintiff Dziarneika was injured by this breach of agreement and now seeks compensatory relief from Defendant John Doe for its actions, along with such other damages, interest, costs, and fees claimed herein.


**COUNT VI**

**FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN SCURTU AND ISE)**


80.     Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through forty-three above.

81.     Plaintiff Scurtu entered into a written contract with ISE on or about March 20, 2005.

82.     Said written contract had the express object or purpose of "meeting all of the requirements necessary for participant's enrollment in the Training Program." The

Training Program is a term never defined in the agreement but implied, both in the contract and in the parole and other written materials of the Defendants to mean the work program associated with the issuance of a J-1 work program.

83.     Under said agreement, Scurtu was to (a) complete and return all enrollment documents; (b) pay all installments totaling $3,500.00; ( c) report when she arrives in the United States, commences work, and returns to Moldova; and  (d) notify ISE's agent of any change in status.

84.     In addition to the foregoing, Scurtu was obligated to, and in fact did, pay ISE the sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee and approximately $1,500.00 for transportation to the United States. Further, Scurtu fully performed all obligations, and all conditions precedent, under the contract.

85.     Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

86.     ISE promoted, induced, suggested, and promised to Scurtu that it would find employment for her in the United States that complies with the dictates of the J-1 visa program.

87.     ISE knew that such promotions, suggestions, and promises were false.

19

88.     ISE promoted, induced, suggested, and promised to Scurtu that it would act in
        good faith, would follow the law, and would teach "about American business,
        improve [her] career skills, experience American culture and return [her] home
        better qualified for [her] future."

89.     ISE knew that such promotions, suggestions, and promises were false

90.     In inducing Scurtu to enter into an agreement with ISE based upon these false and
        fraudulent promises and promotions, ISE has injured Plaintiff Scurtu.

91.     Plaintiff Scurtu seeks compensatory relief from Defendant ISE for its actions,
        along with such other damages, interest, costs, and fees claimed herein.


## COUNT VII

## FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN GROZAV AND ISE)


92.     Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through forty-
        three above.

93.     Plaintiff Grozav entered into a written contract with ISE on or about October,
        2006.

94.     Said written contract had the express object or purpose of "meeting all of the
        requirements necessary for participant's enrollment in the Training Program." The
        Training Program is a term never defined in the agreement but implied, both in
        the contract and in the parole and other written materials of the Defendants to
        mean the work program associated with the issuance of a J-1 work program.

95.     Under said agreement, Grozav was to (a) complete and return all enrollment

documents; (b) pay all installments totaling $3,500.00; ( c) report when she

arrives in the United States, commences work, and returns to Moldova; and  (d)

notify ISE's agent of any change in status.

96.     In addition to the foregoing, Grozav was obligated to, and in fact did, pay ISE the

sum of $3,500.00 and incur out of pocket expenses including a $220.00 filing fee

and approximately $1,500.00 for transportation to the United States. Further,

Grozav fully performed all obligations, and all conditions precedent, under the

contract.

97.     Under the terms of the agreement, ISE was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1

visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

98.     ISE promoted, induced, suggested, and promised to Grozav that it would find

employment for her in the United States that complies with the dictates of the J-1

visa program.

99.     ISE knew that such promotions, suggestions, and promises were false.

100.    ISE promoted, induced, suggested, and promised to Grozav that it would act in

good faith, would follow the law, and would teach "about American business,

21

improve [her] career skills, experience American culture and return [her] home

better qualified for [her] future."

101.   ISE knew that such promotions, suggestions, and promises were false

102.   In inducing Grozav to enter into an agreement with ISE based upon these false

and fraudulent promises and promotions, ISE has injured Plaintiff Grozav.

103.   Plaintiff Grozav seeks compensatory relief from Defendant ISE for its actions,

along with such other damages, interest, costs, and fees claimed herein.


## COUNT VIII

## FRAUD IN THE INDUCEMENT

## (CONTRACT BETWEEN HARACHKA AND JOHN DOE)


104.   Plaintiff Harachka realleges, reavers, and restates, Paragraphs one through forty-

three above.

105.   Plaintiff Harachka entered into a written contract with John Doe on or about late

summer of 2004.

106.   Said written contract had the express object or purpose of "meeting all of the

requirements necessary for participant's enrollment in the Training Program." The

Training Program is a term never defined in the agreement but implied, both in

the contract and in the parole and other written materials of the Defendants to

mean the work program associated with the issuance of a J-1 work program.

107.   Under said agreement, Harachka was to (a) complete and return all enrollment

documents; (b) pay all monetary installments due; ( c) report when she arrives in

the United States, commences work, and returns to her home nation; and  (d)

notify John Doe's agent of any change in status.

108.   In addition to the foregoing, Harachka was obligated to, and in fact did, pay John

Doe a sum certain and incurred out of pocket expenses including a  filing fee and

transportation to the United States. Further, Harachka fully performed all

obligations, and all conditions precedent, under the contract.

109.   Under the terms of the agreement, John Doe was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1

visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

110.   John Doe promoted, induced, suggested, and promised to Harachka that it would

find employment for her in the United States that complies with the dictates of the

J-1 visa program.

111.   John Doe knew that such promotions, suggestions, and promises were false.

112.   John Doe promoted, induced, suggested, and promised to Harachka that it would

act in good faith, would follow the law, and would teach "about American

business, improve [her] career skills, experience American culture and return [her]

home better qualified for [her] future."

23

113.   John Doe knew that such promotions, suggestions, and promises were false.

114.   In inducing Harachka to enter into an agreement with John Doe based upon these false and fraudulent promises and promotions, John Doe has injured Plaintiff Harachka.

115.   Plaintiff Harachka seeks compensatory relief from Defendant John Doe for its actions, along with such other damages, interest, costs, and fees claimed herein.


**COUNT IX**

**FRAUD IN THE INDUCEMENT**

**(CONTRACT BETWEEN RAHAZHANAVA AND JOHN DOE)**


116.   Plaintiff Rahazhanava realleges, reavers, and restates, Paragraphs one through forty-three above.

117.   Plaintiff Rahazhanava entered into a written contract with John Doe on or about late summer of 2004.

118.   Said written contract had the express object or purpose of "meeting all of the requirements necessary for participant's enrollment in the Training Program." The Training Program is a term never defined in the agreement but implied, both in the contract and in the parole and other written materials of the Defendants to mean the work program associated with the issuance of a J-1 work program.

119.   Under said agreement, Rahazhanava was to (a) complete and return all enrollment documents; (b) pay all monetary installments due; ( c) report when she arrives in

the United States, commences work, and returns to her home nation; and  (d) notify John Doe's agent of any change in status.

120.    In addition to the foregoing, Rahazhanava was obligated to, and in fact did, pay John Doe a sum certain and incur out of pocket expenses including  transportation to the United States. Further, Rahazhanava fully performed all obligations, and all conditions precedent, under the contract.

121.    Under the terms of the agreement, John Doe was obligated to:

(A)     assist in obtaining the DS-2019 form;

(B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

( C)    notify the participant of any contact information changes; and

(D)     act in good faith.

122.    John Doe promoted, induced, suggested, and promised to Rahazhanava that it would find employment for her in the United States that complies with the dictates of the J-1 visa program.

123.    John Doe knew that such promotions, suggestions, and promises were false.

124.    John Doe promoted, induced, suggested, and promised to Rahazhanava that it would act in good faith, would follow the law, and would teach "about American business, improve [her] career skills, experience American culture and return [her] home better qualified for [her] future."

125.    John Doe knew that such promotions, suggestions, and promises were false.

126.   In inducing Rahazhanava to enter into an agreement with John Doe based upon
these false and fraudulent promises and promotions, John Doe has injured
Plaintiff Rahazhanava.

127.   Plaintiff Rahazhanava seeks compensatory relief from Defendant John Doe for its
actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT X

## FRAUD IN THE INDUCEMENT

## (CONTRACT BETWEEN DZIARNEIKA AND JOHN DOE)

128.   Plaintiff Dziarneika realleges, reavers, and restates, Paragraphs one through forty-
three above.

129.   Plaintiff Dziarneika entered into a written contract with John Doe on or about late
summer of 2004.

130.   Said written contract had the express object or purpose of "meeting all of the
requirements necessary for participant's enrollment in the Training Program." The
Training Program is a term never defined in the agreement but implied, both in
the contract and in the parole and other written materials of the Defendants to
mean the work program associated with the issuance of a J-1 work program.

131.   Under said agreement, Dziarneika was to (a) complete and return all enrollment
documents; (b) pay all monetary installments due; ( c) report when she arrives in

the United States, commences work, and returns to her home nation; and (d) notify John Doe's agent of any change in status.

132. In addition to the foregoing, Dziarneika was obligated to, and in fact did, pay John Doe a sum certain and incur out of pocket expenses including a filing fee and transportation to the United States. Further, Dziarneika fully performed all obligations, and all conditions precedent, under the contract.

133. Under the terms of the agreement, John Doe was obligated to:

    (A)     assist in obtaining the DS-2019 form;

    (B)     offer assistance in obtaining employment and training suitable for the J-1 visa;

    ( C)    notify the participant of any contact information changes; and

    (D)     act in good faith.

134. John Doe promoted, induced, suggested, and promised to Dziarneika that it would find employment for her in the United States that complies with the dictates of the J-1 visa program.

135. John Doe knew that such promotions, suggestions, and promises were false.

136. John Doe promoted, induced, suggested, and promised to Dziarneika that it would act in good faith, would follow the law, and would teach "about American business, improve [her] career skills, experience American culture and return [her] home better qualified for [her] future."

137. John Doe knew that such promotions, suggestions, and promises were false.

138.  In inducing Dziarneika to enter into an agreement with John Doe based upon these false and fraudulent promises and promotions, John Doe has injured Plaintiff Dziarneika.

139.  Plaintiff Dziarneika seeks compensatory relief from Defendant John Doe for its actions, along with such other damages, interest, costs, and fees claimed herein.

**COUNT XI**

**BREACH OF CONTRACT BETWEEN SCURTU AND HCMS**

140.  Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through forty-three above.

141.  Plaintiff Scurtu entered into a written agreement with HCMS and Alliance Abroad Group on or about March, 2006. It is believed and therefore alleged that Alliance Abroad Group, by contract or course of action, is an agent, principal, representative, or alter ego of Defendant HCMS.

142.  Under said agreement, Scurtu was to work for HCMS's assigned employer. In addition to being employed, Scurtu was to pay HCMS $62.50 per week for housing.

143.  During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

144.  Under the terms of the agreement, HCMS was obligated to:

    (A)    provide employment and training opportunities consistent with the J-1 work programs;

    (B)    provide housing;

    ( C)    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

    (D)    act in good faith.

145.    HCMS failed to fulfill the obligations of said contract, specifically failing to:

    (A)    find employment and training that complies with the dictates of the J-1 visa program;

    (B)    provide safe and secure housing;

    ( C)    provide orientation and training as required under the visa program; and.

    (D)    act in good faith.

146.    Consequently, HCMS has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Scurtu.

147.    Plaintiff Scurtu was injured by this breach of agreement and now seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XII

## BREACH OF CONTRACT BETWEEN HARACHKA AND HCMS

148.     Plaintiff Harachka realleges, reavers, and restates, Paragraphs one through forty-three above.

149.     Plaintiff Harachka entered into a written agreement with HCMS on or about late summer of 2004.

150.     Under said agreement, Harachka was to work for HCMS's assigned employer. In addition to being employed, Harachka was to pay HCMS a sum certain each week for housing.

151.     During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

152.     Under the terms of the agreement, HCMS was obligated to:

(A)     provide employment and training opportunities consistent with the J-1 work programs;

(B)     provide housing;

( C)     provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)     act in good faith.

153.     HCMS failed to fulfill the obligations of said contract, specifically failing to:

(A)      find employment and training that complies with the dictates of the J-1 visa program;

30

(B)      provide safe and secure housing;

( C)      provide orientation and training as required under the visa program; and.

(D)      act in good faith.

154.   Consequently, HCMS has breached, disregarded, and failed to perform material

obligations under the subject agreement, and such breach and failure has injured

Plaintiff Harachka.

155.   Plaintiff Harachka was injured by this breach of agreement and now seeks

compensatory relief from Defendant HCMS for its actions, along with such other

damages, interest, costs, and fees claimed herein.


## COUNT XIII

## BREACH OF CONTRACT BETWEEN GROZAV AND HCMS


156.   Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through forty-

three above.

157.   Plaintiff Grozav entered into a written agreement with HCMS and Alliance

Abroad Group on or about October, 2006. It is believed and therefore alleged that

Alliance Abroad Group, by contract or course of action, is an agent, principal,

representative, or alter ego of Defendant HCMS.

158.   Under said agreement, Grozav was to work for HCMS's assigned employer. In

addition to being employed, Grozav was to pay HCMS $62.50 per week for

housing.

31

159.   During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

160.   Under the terms of the agreement, HCMS was obligated to:

(A)   provide employment and training opportunities consistent with the J-1 work programs;

(B)   provide housing;

( C)   provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)   act in good faith.

161.   HCMS failed to fulfill the obligations of said contract, specifically failing to:

(A)    find employment and training that complies with the dictates of the J-1 visa program;

(B)    provide safe and secure housing;

( C)    provide orientation and training as required under the visa program; and.

(D)   act in good faith.

162.   Consequently, HCMS has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Grozav.

163.   Plaintiff Grozav was injured by this breach of agreement and now seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein

.

## COUNT XIV

## BREACH OF CONTRACT BETWEEN RAHAZHANAVA AND HCMS

164.    Plaintiff Rahazhanava realleges, reavers, and restates, Paragraphs one through forty-three above.

165.    Plaintiff Rahazhanava entered into a written agreement with HCMS on or about late summer of 2004 .

166.    Under said agreement, Rahazhanava was to work for HCMS's assigned employer. In addition to being employed, Rahazhanava was to pay HCMS a sum certain per week for housing.

167.    During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

168.    Under the terms of the agreement, HCMS was obligated to:

(A)    provide employment and training opportunities consistent with the J-1 work programs;

(B)    provide housing;

( C)    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)    act in good faith.

169.    HCMS failed to fulfill the obligations of said contract, specifically failing to:

(A)     find employment and training that complies with the dictates of the J-1 visa program;

(B)      provide safe and secure housing;

( C)      provide orientation and training as required under the visa program; and.

(D)      act in good faith.

170.   Consequently, HCMS has breached, disregarded, and failed to perform material obligations under the subject agreement, and such breach and failure has injured Plaintiff Rahazhanava.

171.   Plaintiff Rahazhanava was injured by this breach of agreement and now seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.


**COUNT XV**

**BREACH OF CONTRACT BETWEEN DZIARNEIKA AND HCMS**


172.   Plaintiff Dziarneika realleges, reavers, and restates, Paragraphs one through forty-three above.

173.   Plaintiff Dziarneika entered into a written agreement with HCMS in late summer of 2004.

174.   Under said agreement, Dziarneika was to work for HCMS's assigned employer. In addition to being employed, Dziarneika was to pay HCMS a sum certain each week for housing.

175.   During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

176.  Under the terms of the agreement, HCMS was obligated to:

   (A)  provide employment and training opportunities consistent with the J-1

        work programs;

   (B)  provide housing;

   ( C)  provide orientation to participants, including Plaintiffs, for all material

        matters providing training required under the J-1 visa program; and

   (D)  act in good faith.

177.  HCMS failed to fulfill the obligations of said contract, specifically failing to:

   (A)   find employment and training that complies with the dictates of the J-1

        visa program;

   (B)   provide safe and secure housing;

   ( C)   provide orientation and training as required under the visa program; and.

   (D)  act in good faith.

178 .  Consequently, HCMS has breached, disregarded, and failed to perform material

      obligations under the subject agreement, and such breach and failure has injured

      Plaintiff Dziarneika.

179.  Plaintiff Dziarneika was injured by this breach of agreement and now seeks

      compensatory relief from Defendant HCMS for its actions, along with such other

      damages, interest, costs, and fees claimed herein.

35

## <u>COUNT XVI</u>

### <u>FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN SCURTU AND HCMS</u>)

180.   Plaintiff Scurtu realleges, reavers, and restates, Paragraphs one through forty-three above.

181.   Plaintiff Scurtu entered into a written agreement with HCMS and Alliance Abroad Group on or about March, 2006. It is believed and therefore alleged that Alliance Abroad Group, by contract or course of action, is an agent, principal, representative, or alter ego of Defendant HCMS.

182.   Under said agreement, Scurtu was to work for HCMS's assigned employer. In addition to being employed, Scurtu was to pay HCMS $62.50 per week for housing.

183.   During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

184.   Under the terms of the agreement, HCMS was obligated to:

(A)    provide employment and training opportunities consisted with the J-1 work programs;

(B)    provide housing;

( C)    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)    act in good faith.

185.    HCMS promoted, suggested, and promised to Scurtu that it would fulfill these obligations, even though it knew that the employment to which she was sent failed to comply with the dictates of the J-1 visa program, that she was not being provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

186.    HCMS knew that its promotions, suggestions, and promises were false.

187.    In inducing Scurtu to enter into an agreement with HCMS based upon these false and fraudulent promises and promotions, HCMS has injured Plaintiff Scurtu.

188.    Plaintiff Scurtu seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.


## <u>COUNT XVII</u>

## <u>FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN GROZAV AND HCMS)</u>


189.    Plaintiff Grozav realleges, reavers, and restates, Paragraphs one through forty-three above.

190.    Plaintiff Grozav entered into a written agreement with HCMS and Alliance Abroad Group on or about October, 2006. It is believed and therefore alleged that Alliance Abroad Group, by contract or course of action, is an agent, principal, representative, or alter ego of Defendant HCMS.

191.   Under said agreement, Grozav was to work for HCMS's assigned employer. In addition to being employed, Scurtu was to pay HCMS $62.50 per week for housing.

192.   During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

193.   Under the terms of the agreement, HCMS was obligated to:

   (A)   provide employment and training opportunities consisted with the J-1 work programs;

   (B)   provide housing;

   ( C)   provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

   (D)   act in good faith.

194.   HCMS promoted, suggested, and promised to Grozav that it would fulfill these obligations, even though it knew that the employment to which she was sent failed to comply with the dictates of the J-1 visa program, that she was not being provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

195.   HCMS knew that its promotions, suggestions, and promises were false.

196.   In inducing Grozav to enter into an agreement with HCMS based upon these false and fraudulent promises and promotions, HCMS has injured Plaintiff Grozav.

197.   Plaintiff Grozav seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XVIII

## FRAUD IN THE INDUCEMENT (CONTRACT BETWEEN HARACHKA AND HCMS)

198.  Plaintiff Harachka realleges, reavers, and restates, Paragraphs one through forty-three above.

199.  Plaintiff Harachka entered into a written agreement with HCMS in late summer of 2004.

200.  Under said agreement, Harachka was to work for HCMS's assigned employer. In addition to being employed, Harachka was to pay each week for housing.

201.  During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

202.  Under the terms of the agreement, HCMS was obligated to:

   (A)    provide employment and training opportunities consisted with the J-1 work programs;

   (B)    provide housing;

   ( C )    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

   (D)    act in good faith.

203.  HCMS promoted, suggested, and promised to Harachka that it would fulfill these obligations, even though it knew that the employment to which she was sent failed to comply with the dictates of the J-1 visa program, that she was not being

provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

204. HCMS knew that its promotions, suggestions, and promises were false.

205. In inducing Harachka to enter into an agreement with HCMS based upon these false and fraudulent promises and promotions, HCMS has injured Plaintiff Harachka.

206. Plaintiff Harachka seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XIX

## FRAUD IN THE INDUCEMENT

## (CONTRACT BETWEEN RAHAZHANAVA AND HCMS)

207. Plaintiff Rahazhanava realleges, reavers, and restates, Paragraphs one through forty-three above.

208. Plaintiff Rahazhanava entered into a written agreement with HCMS in late summer of 2004.

209. Under said agreement, Rahazhanava was to work for HCMS's assigned employer. In addition to being employed, Rahazhanava was to pay each week for housing.

210. During all times material hereto, HCMS knew the rules and regulations governing the type of employment acceptable for aliens with J-1 work visas.

211. Under the terms of the agreement, HCMS was obligated to:

(A)     provide employment and training opportunities consisted with the J-1 work programs;

(B)     provide housing;

( C)    provide orientation to participants, including Plaintiffs, for all material matters providing training required under the J-1 visa program; and

(D)     act in good faith.

212.    HCMS promoted, suggested, and promised to Rahazhanava that it would fulfill these obligations, even though it knew that the employment to which she was sent failed to comply with the dictates of the J-1 visa program, that she was not being provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

213.    HCMS knew that its promotions, suggestions, and promises were false.

214.    In inducing Rahazhanava to enter into an agreement with HCMS based upon these false and fraudulent promises and promotions, HCMS has injured Plaintiff Rahazhanava.

215.    Plaintiff Rahazhanava seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XX

## FRAUD IN THE INDUCEMENT

## (CONTRACT BETWEEN DZIARNEIKA AND HCMS)

216.    Plaintiff Dziarneika realleges, reavers, and restates, Paragraphs one through forty-

three above.

217.    Plaintiff Dziarneika entered into a written agreement with HCMS in late summer

of 2004.

218.    Under said agreement, Dziarneika was to work for HCMS's assigned employer. In

addition to being employed, Dziarneika was to pay each week for housing.

219.    During all times material hereto, HCMS knew the rules and regulations governing

the type of employment acceptable for aliens with J-1 work visas.

220.    Under the terms of the agreement, HCMS was obligated to:

(A)     provide employment and training opportunities consisted with the J-1

work programs;

(B)     provide housing;

( C)    provide orientation to participants, including Plaintiffs, for all material

matters providing training required under the J-1 visa program; and

(D)     act in good faith.

221.    HCMS promoted, suggested, and promised to Dziarneika that it would fulfill

these obligations, even though it knew that the employment to which she was sent

failed to comply with the dictates of the J-1 visa program, that she was not being

42

provided with the requisite orientation and training as required under the visa program, and that it was not acting in good faith.

222. HCMS knew that its promotions, suggestions, and promises were false.

223. In inducing Dziarneika to enter into an agreement with HCMS based upon these false and fraudulent promises and promotions, HCMS has injured Plaintiff Dziarneika.

224. Plaintiff Dziarneika seeks compensatory relief from Defendant HCMS for its actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XXI

### CIVIL CONSPIRACY

225. Plaintiffs reallege, reaver, and restate Paragraphs one through forty-three above.

226. At times material hereto, Defendants actively engaged with each other to market, promote, recruit, advertise, and obtain labor personnel who might, through the incentives and promises of management training and education, travel to the United States. With each individual signed up, Defendants received monetary benefit.

227. Part and parcel of the recruitment incentives was the understanding that the Plaintiffs were in a management training program. Nevertheless, the Defendants, in an organized scheme or artifice to circumvent the requirements of the immigration procedures for the J-1 visa program, never provided any management-related training materials. The Defendants never placed the Plaintiffs

in appropriate management-related personnel slots. In fact, a summary review of

the Plaintiffs' employment history with the Defendants reflects stints preparing

sandwiches, time as a cashier, and a remainder of time as a drive-through cashier.

These duties also required cleaning the dining room and the bathrooms. There

have been no meetings or classes with management level personnel, no on-the-job

management training sessions, no training of any kind. The Plaintiffs have been

used as common laborers.

228.    Defendants, at all times material hereto, were fully aware of the statutory

limitations to the subject visa program. Use of the Exchange Visitor Program for

ordinary work purposes is strictly prohibited. Defendants knew, or should have

known, that sponsors may not place participants in positions which are filled or

could be filled by part-time employees.  Wendco, with the consent of HCMS, not

only placed the Plaintiffs in these positions, it left them in such positions

indefinitely.

229.    During all times material hereto, as part of a concerted effort, artifice, or scheme,

Defendants conspired with each other, and with others, to violate the established

policies relating to the Plaintiffs' visa program and related laws of the United

States.

230.    The coordinated and collective intentional acts by Defendants substantially

injured the Plaintiffs.

231.    The acts of Defendants, both individual and collective, were intentional and

malicious and because of these actions, Plaintiffs were injured and now seek

compensatory relief for such intentional acts, along with such other damages, interest, costs, and fees claimed herein.

**COUNT XXII**

**VIOLATIONS OF TRAFFICKING VICTIM PROTECTION REAUTHORIZATION ACT OF 2003**

232.    Plaintiff realleges, reavers, and restates Paragraphs one through forty-three above.

233.    It is believed, and therefore alleged, that Defendants John Doe, ISE and HCMS recruited, transported, and generally obtained the labor services of the Plaintiffs for clients of HCMS.

234.    Defendant Wendco was such a contract client of HCMS and was, at all times material hereto, aware of the activities of HCMS which violated the parameters of the J-1 visa program.

235.    Defendants John Doe, ISE and HCMS obtained the labor services of the Plaintiffs through fraud.

236.    The labor services provided by the Plaintiffs were compensated at below market rates in order for the Defendant HCMS to benefit financially. Further, Defendant HCMS controlled the Plaintiffs' daily lives through coercion and the threats of being deported back to their home nations in Eastern Europe. The combination of these circumstances placed the Plaintiffs in a form of labor servitude.

237.   Plaintiffs have been injured by the Defendants' action in recruiting and obtaining their fraudulently obtained labor services.

238.   Defendants' actions in recruiting, obtaining, and maintaining the labor services of the Plaintiffs in violation of the Trafficking Victim Protection Reauthorization Act of 2003 (18 U.S.C.§§ 1589 and 1590) are remediable by a civil claim for restitution, pursuant to 18 U.S.C. § 1593.

239.   Plaintiffs seek compensatory relief from the Defendants for their actions, along with such other damages, interest, costs, and fees claimed herein.

## COUNT XXIII

## RICO

240.   Plaintiffs realleges, reavers, and restates the allegations contained in Paragraphs one through forty-three above.

241.   In 1996, Congress expanded the Racketeer Influenced and Corrupt Organizations Act (RICO) to include violations of federal immigration law, under 18 U.S.C.§§ 1961-1968. Statutory provisions and case precedent have further expanded this protection to allow for civil actions. *See*, Commercial Cleaning Services v. Colin Service Systems, 271 F.3d 374 (2nd Cir. 2001)

242.   Defendants John Doe, ISE and HCMS have engaged in a repeated activity of sponsoring J-1 visa participants improperly.

243.    Defendant Wendco has engaged in a repeated program of hiring, through HCMS, immigrants with work visas (J-1) inconsistent with the work responsibilities provided.

244.    Section 1324(a) of Title 8 of the United States Code makes encouraging and inducing immigrants to violate the Immigration and Nationality Act a crime. It is also a predicate offense to a RICO claim.

245.    Pursuant to 18 U.S.C. 1964, Defendants have engaged in a pattern of predicate offenses recognized by RICO as racketeering activity. This pattern includes, but is not limited to:

  (A) Providing employment to an immigrant inconsistent with the visa and work documentation for that immigrant;

  (B) Encouraging and/or inducing an immigrant to come to, enter, or reside in the United States in violation of law;

  ©) Encouraging immigrants to remain in the United States in violation of law;

  (D) Gaining financially from improperly sponsoring a J-1 visa program participant;

  (E) Circumventing and violating the terms and conditions of the J-1 training program; and

  (F) Violating the provisions of the federal wage and hour laws.

246.    Due to the Defendants' direct and proximate acts outlined above, and others, Plaintiffs have been injured. Plaintiffs' injuries include, but are not limited to, lost wages and the lost opportunity in participating in a valid, legal, appropriate, and satisfactory J-1 management training program.

247.    Plaintiffs seek compensatory damages for these injuries,  along with such other damages, interest, costs, and fees claimed herein.


**COUNT XXIV**

**DECLARATORY JUDGMENT**


248.    Plaintiffs reallege, reaver, and restate Paragraphs one through forty-three above.

249.    Associated with Plaintiffs' assignment of employment with Defendant Wendco by HCMS, each Plaintiff was required to sign a document entitled "Agreement and Receipt for Foreign Exchange Workers".  Both the executed document and the Dispute Resolution Program requires alternative dispute resolution in the form of arbitration and mediation in lieu of litigation.

250.    Neither the executed document nor the program itself binds the Plaintiffs to this limiting course of action.

251.    Plaintiffs' employment agreement arises from their agreements with ISE and HCMS. Plaintiffs' labor services were assigned to Wendco, yet it was HCMS that dictated when Plaintiffs would work, where Plaintiffs would work, and compensated Plaintiffs for their work. The executed agreements explicitly and

implicitly outline that all disputes shall be handled by a court of competent

jurisdiction. (See Exhibit A, Contract)

252.   Any latter agreement to rely solely on arbitration or mediation is an adhesion

condition of employment presented by Wendco absent any independent or related

consideration. Therefore, it is unenforceable as a matter of law.

253.   Finally, any such condition to employment imposed by Wendco on assigned

laborers under a J-1 management training program is void as it violates public

policy.  Congress has established specific rights and remedies for victims of those

who commit racketeering activities, violate the national immigration laws, and for

traffickers of laborers. This preemption by the national legislature in establishing

private rights of action creates a clear public policy.  If these rights and remedies

cannot be realized due to an employer-created dispute resolution program, public

policy is thwarted.

254.   Consequently, Plaintiffs ask this court to issue a declaratory judgment finding the

executed agreement with Wendco and its dispute resolution program

unenforceable between Wendco and the Plaintiffs as it

(A)   Is contrary to the dictates of Plaintiffs other agreements;

(B)   Is not between Plaintiffs and their employers;

©)   Is unenforceable for lack of separate and independent consideration;

and

(D) Violates public policy.

49

## COUNT XXV

## PUNITIVE DAMAGES

255.   Plaintiffs reavers and incorporates all of the allegations contained in the previous

paragraphs.

256.   The actions of the Defendants, as specifically alleged hereinabove, whether taken

separately or together, were of such a character, either singularly or collectively

such as to constitute a pattern, as to represent a practice of intentional wrongful

conduct and/or malice causing harm and resulting in damages to Plaintiffs. More

specifically, Defendants acted with a conscious and flagrant disregard for the

rights of the Plaintiffs and/or deliberately engaged in oppression, wilfulness, or

malice with regard to Plaintiffs.

257.   Defendants should be held liable in punitive and exemplary damages to Plaintiffs

for all such conduct.

## JURY DEMAND:

1.   Plaintiffs seek a jury determination of all issues so triable herein.


## RELIEF SOUGHT:

For these reasons, Plaintiffs ask for judgment against the Defendants for the following:

1.   Compensatory damages in an amount not less than $100,000.00 from each

Defendant.

2.   Punitive and exemplary damages in an amount in excess of $1,000,000.00 from

each Defendant for all claims;

3.      Costs of court and attorney's fees; and

4.      All other relief the Court deems appropriate.




                                        /s/Robert A. Ratliff
                                        Attorney for Plaintiffs
                                        713 Dauphin Street
                                        Mobile, AL 36602
                                        (251) 438-2250 phone
                                        (251) 438-6180 fax
                                        rar@ratlifflegalgroup.com

                                        /s/Jon A. Green
                                        Jon A. Green
                                        Attorney for Plaintiffs
                                        711 Dauphin Street
                                        Mobile, AL 36602
                                        251-438-2250
                                        251-438-6180

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2007, I electronically filed with the Clerk of the

Court using the CM/ECF system the foregoing pleading, which will send notification of such

filing to the following:


Thomas F. Gonzalez
BEGGS & LANE, RLLP
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591

Thomas J. Woodford
JACKSON MYRICK LLP
Post Office Box 1287
Mobile, Alabama 36633

Caroline T. Pryor
Post Office Box 1126
Daphne, Alabama 36526
_____

                                              /s/Robert A. Ratliff
                                              Attorney for Plaintiffs