# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LINDA SCURTU and
CORNELIA GROZAV

       Plaintiffs

v.                                    Case No. 1:07-cv-00410-WS-B

INTERNATIONAL STUDENT
EXCHANGES, et al.,

       Defendants

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS HOSPITALITY AND CATERING MANAGEMENT SERVICES AND WENDCO CORP'S MOTION TO DISMISS COMPLAINT, OR, IN THE ALTERNATIVE, TO STAY THE CASE AND COMPEL ARBITRATION

      Plaintiffs Lina Scurtu and Cornelia Grozav, by and through their undersigned counsel,

hereby respond to the Motion to Dismiss, or, in the alternative, the Motion to Stay the Case and

Compel Arbitration filed by Defendants Hospitality and Catering Management Services, Inc.

(hereinafter referred to as "HCMS") and Wendco Corp. (hereinafter referred to as "Wendco")[1]

      HCMS and Wendco have filed, contemporaneously with its subject motion a *Brief In*

*Support of Motion to Dismiss Complaint As To Defendants Hospitality and Catering*

---

[1]Defendant Wendco states, in passing, that the identification of this defendant as Wendco Corp., an Ohio corporation, is "erroneous" and that the correct name of the defendant is Wendco of Alabama, Inc., an Alabama corporation. As reflected in this defendant's own documents submitted with its Motion, Roger Webb, the president of both entities uses both interchangeably. Once discovery commences and Plaintiffs can determine which one of these operating companies of the Wendy's fast food chain entity actually committed the acts stated, the parties can determine whether there is an error and whether a substitution and correction of the parties is required.

*Management Services and Wendco of Alabama, Inc., Or, In the Alternative, To Stay The Case And Compel Arbitration* (hereinafter referred to as "Defendants' Brief"). Based on the Motion and the Defendants' Brief, HCMS and Wendco argue to this Honorable Court that the Plaintiffs have executed an arbitration agreement entitled "Agreement and Receipt For Foreign Exchange Program Workers." Based on this agreement, Defendants maintain, all claims asserted by the Plaintiffs must be brought to arbitration. In the face of this agreement and pursuant to the Federal Arbitration Act, 9 U.S.C. §2, this Court must stay its proceedings and compel arbitration of the claims by the parties. *See*, 9 U.S.C. §3.

**Plaintiffs oppose this Motion**. Specifically because of the dictates of the Federal Arbitration Act, the national cases that interpret this legislation, common law principles of contracts, and the public policy equities associated with the claims raised in the Plaintiffs' Complaint, the alleged arbitration agreement should be declared unenforceable in this case. *See*, Count XII of Plaintiffs' Complaint. Plaintiffs' arguments in support of its opposition are more fully asserted in the brief filed contemporaneously herewith.

Consequently, Plaintiffs request that this Court deny Defendants HCMS and Wendco their Motion to Dismiss or, in the alternative, to stay the case and compel arbitration.

Respectfully Submitted,

_____
Robert A. Ratliff (BAR#)
Attorney For Plaintiffs
The Ratliff Legal Group
713 Dauphin Street
Mobile, Alabama 36602
(251) 438-2250 Telephone

(251) 438-6180 Facsimile
rar@ratlifflegalgroup.com

_____
Jon A. Green (BAR#)
Attorney For Plaintiffs
711 Dauphin Street
Mobile, Alabama 36602
(251) 438-2250 Telephone
(251) 438-6180 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on August ___, 2007, I electronically filed with the Clerk of the Court

using the CM/ECF system the foregoing pleading, which will send notification of such filing to the

following:

Thomas F. Gonzalez
BEGGS & LANE, RLLP
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591

Thomas J. Woodford
JACKSON MYRICK LLP
Post Office Box 1287
Mobile, Alabama 36633

Caroline T. Pryor
Post Office Box 1126

Daphne, Alabama 36526

_____

Robert A. Ratliff (BAR#)

LINDA SCURTU and
CORNELIA GROZAV

      Plaintiffs

v.                                Case No. 1:07-cv-00410-WS-B

INTERNATIONAL STUDENT
EXCHANGES, et al.,

      Defendants
_____/

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE
TO DEFENDANTS HOSPITALITY AND CATERING MANAGEMENT SERVICES
AND WENDCO CORP'S MOTION TO DISMISS COMPLAINT, OR, IN THE
ALTERNATIVE, TO STAY THE CASE AND COMPEL ARBITRATION**

      Plaintiffs Lina Scurtu and Cornelia Grozav, by and through their undersigned counsel,

hereby submit the following brief in support of their opposition to the Motion to Dismiss, or, in

the alternative, the Motion to Stay the Case and Compel Arbitration filed by Defendants

Hospitality and Catering Management Services, Inc. (hereinafter referred to as "HCMS") and

Wendco Corp. (hereinafter referred to as "Wendco").

### *Introduction*

      For every civic and national opportunity, an economic opportunity arises.  In the early

1960s, Congress established a training visa program designed to promote the interchange of

persons, knowledge, and skills. *See*, Immigration and Nationality Act, 8 U.S.C. §1101, et seq.,

and Congressional History thereof. Eventually codified as a "J" visa, the exchange visitor program was established to encourage foreigners to obtain training and professional opportunities in the United States. To facilitate these programs and to serve as "sponsors," entrepreneurial companies have arisen. These companies actively advertise on the college campuses of Eastern Europe, southeast Asia, South America, and other locales where young, recently educated individuals might want to pay large sums of money to experience the once-in-a-lifetime opportunity of business and job training in America.[2]

In the Spring of 2006, Plaintiffs were convinced by the marketing efforts of Defendant International Student Exchange and its agents that they wanted to avail themselves of the training opportunities in the United States. Though they were young, inexperienced in international travel and business, and recently graduated from a local university in the Republic of Moldova, they were willing to invest a material sum of money in the opportunities presented.

As outlined in the Complaint, the Plaintiffs entered into contracts to obtain J-1 visas and enroll in a training program in the United States. Those initial contracts, copies of which are attached collectively as Exhibit "A" were in their native language. Further, these contracts explicitly stated that all disputes in their program would be handled by "a court of competent jurisdiction."

 After signing these documents, obtaining visas and travel authorizations, and saying goodbye to loved ones, the Plaintiffs embarked on their trip to America.  In July of 2006, Plaintiff Scurtu arrived in New York City, alone and unassisted. She had been given email

---

[2]Under the terms of the then J-1 visa program, an individual can only receive the training opportunity once. It is not renewable nor, if the sponsor fails to perform, can it be repeated.

instructions on how to take a bus to Tennessee to commence her employment. In October of 2006, after a grueling trip to America, Plaintiff Grozav came to Atlanta and then, to Daphne, Alabama. Both Plaintiffs Scurtu and Grozav ultimately found themselves in an overcrowded, unsanitary, unsafe group home in Southern Alabama where they were assigned to work at a local Wendy's fast food establishment.  As part of that assignment, they were given a document to sign: an "Agreement and Receipt for Foreign Exchange Program Workers".  It is this agreement, the so-called arbitration agreement, that serves as the basis for Defendants HCMS and Wendco's motion.

### Defendants' Argument

HCMS and Wendco proclaim in their motion that "prior to entering into the J-1 sponsorship program with HCMS and Wendco, both plaintiffs signed an 'Agreement and Receipt for Foreign Exchange Workers' with defendant HCMS and Wendco." *See*, Brief, page 1 This opening statement by the Defendants sets the tone for their argument. It is incorrect and it is, at best, misleading.

The execution of the arbitration agreement for both plaintiffs occurred at the commencement of their first work week in Daphne.  Scurtu had already commenced "training" under the sponsorship obligations of employment with HCMS, in Gatlinburg, Tennessee and Plaintiff Grozav arrived in Daphne, Alabama to begin "training", based solely on their prior contract signed in Moldova.  Only when Plaintiff's began "training" with Wendy's were the arbitration agreements foisted upon them.

But even dismissing, for the moment, the *time* the agreement was executed, Defendants maintain that (a) the plaintiffs signed an arbitration agreement, (b) under the Federal Arbitration

Act, the arbitration agreement is "valid, irrevocable, and enforceable," and ( c ) all of the plaintiffs claims asserted against HCMS and Wendco fall within the scope of the arbitration agreement.

These assertions by the Defendants, meant to keep from the public eye the claims raised by the Plaintiffs, reflect a superficial comfort level with the shield of arbitration. In fact, and in law, the protections of arbitration require specific facts, particular equities, and a mutuality simply absent from the current situation.

### *No Contract for Arbitration*

The Federal Arbitration Act establishes two major themes appropriate to this motion. First, The Federal Arbitration Act (the "FAA") provides in pertinent part that a written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. *See*, 9 U.S.C. § 2. The FAA "place[s] arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp*.,* 500 U.S. 20, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991). Consequently, while the FAA embodies a strong federal policy in favor of arbitration, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*.,* 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), before a motion to compel arbitration can be granted, a court must first determine whether the parties *agreed* to arbitrate the dispute in question. This determination is a straight-forward contract analysis involving two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within

the scope of that arbitration agreement. *See*, <u>Webb v. Investacorp. Inc.,</u> 89 F.3d 252, 257-58 (5th Cir. 1996).

**It is the Plaintiffs' position that no valid contract for arbitration exists.** Without such a valid contract, no duty to arbitrate exists. <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) It is well settled throughout the nation that it is up to *this Court* (and not some arbitrator) to decide the issue of whether a valid arbitration agreement exists to change the forum of dispute resolution from a judicial one to one of arbitration. *See*, <u>AT&T Techs, Inc. v. Communication Workers of America,</u> 475 U.S. 643, 89 L.Ed. 648, 106 S.Ct. 1415 (1986); ) <u>PaineWebber Inc. v. Elahi</u>, 87 F.3d 589, 594 (1st Cir. 1996); <u>Avedon Eng'g, Inc. v. Seatex</u>, 126 F.3d 1279 (10th Cir. 1997)(quoting <u>First Options of Chicago, Inc. v. Kaplan,</u> 514 U.S. 938, 131 L.Ed.2d 985, 115 S.Ct. 1920 (1995) (arbitration is a matter of contract law)

### *Contract Law - No Mutual Assent*

> Words are notoriously slippery symbols and there may be a wide divergence between the meaning a person intended to convey with his expressions and the meaning reasonably or unreasonably understood by the person to whom he was communicating. John Calamari and Joseph Perillo, <u>Contracts</u>, §2-2; J. <u>Baranello & Sons v. Hausmann Industries, Inc., 571 F. Supp.333 (EDNY 1983)</u>

Without the mutual assent of the parties to the same terms, an essential prerequisite to the formation of a valid contract is lacking. 1 Williston §18; Article II, Uniform Commercial Code. In the instant matter, the Defendants knew what they wanted: they wanted to insure that any and

all claims brought by the plaintiffs would come through arbitration. [3] However, the mutual assent required from the plaintiffs was not forthcoming. The assent was not knowing, and it was not voluntary, and thus it was missing required elements for a valid contract. *See*, <u>Armstrong Bus. Services v. AmSouth Bank</u>, 817 So. 2d 665 (Ala. 2001); <u>Cook's Pest Control, Inc. v. Rebar</u>, 852 So.2d 730 (Ala. 2002)

The terms of this arbitration agreement were in English (a foreign language to the plaintiffs), were obscured, and were self-serving, all in contravention to the common law principles of contract law as well as the statutory requirements under the Uniform Commercial Code. First of all, if Defendants wanted recognition that this document was an arbitration agreement, why is it entitled "Agreement and Receipt for Foreign Exchange Program Workers?" It is a complex legal document of two pages that a lay, 23 year old immigrant would not understand in the scope of rights preserved or waived. Finally, it was self-serving as it was presented as a non-negotiable document of continued employment, stating:

> The Employee acknowledges that he/she has carefully read this Agreement, and understands its terms, that all understandings and agreements between the Agency, Wendco, and the Employee related to the subjects covered in this agreement are contained in it, and that he/she has entered into the Agreement voluntarily and not in reliance on any other promises or representations other than those in the Agreement itself.
>
> The Employee further acknowledges and agrees that he/she has been given the opportunity to discuss this Agreement with his/her own private lawyer and have used that opportunity to the extent that he/she wishes to do so.

---

[3]As evidence supporting Plaintiffs' punitive damage claim will reflect, Defendants have had years' long and multiple claims of breach of contract, visa irregularities, and employment related issues that would be better, in any employer's mind, kept quiet in arbitration than public in litigation.

As an evidentiary hearing would indicate, the Plaintiffs barely had time to walk miles to and from work, had no transportation for errands or employment, and were forced to work multiple shifts. To believe that they had time to review this document with an attorney only underscores the unjust nature of an instrument that they did not understand.   With respect to Plaintiff Grozav, Defendants knew any affirmative assertion that she had time to seek review by counsel was erroneous, as this document was presented to Grozav for her signature immediately after arriving in Alabama.

Wendco presented the document to the plaintiffs and had them sign it after they had already paid substantial sums of money, traveled across the world and uprooted their lives and careers at home, presenting it as if it were simply a required piece of paperwork akin to an emergency contact sheet, I-9 form or some other important but insubstantial document. Defendants had months of opportunity prior to Plaintiff's arrival in the United States to present this document to Plaintiff's but intentionally withheld the document until the last possible moment.

---

### *Contract Law - No Consideration*

General principles of contract law are uniform throughout the jurisdictions. For a contract to be binding, both parties must be bound by the terms of the agreement, and the promissee must give some consideration for the promise made by the promisor. Booth v. Dexter Steam Fire Engine Co., 24 So. 405 (Ala. 1897);  Flynn v. Aerchem, Inc., 102 F. Supp. 2d 1055 (S.D. Ind. 2000) Consideration is defined as a "bargained for exchange whereby the promisor [here Plaintiffs] receives some benefit or the promisee [here Defendants] suffers a detriment." Gibson

v. Neighborhood Health Clinics, Inc., 121 F.3d 1126 (7th Cir. 1997)   Absent "mutuality of obligation," a contract based on reciprocal promises lacks consideration; stated another way, "there can be no contract unless both parties are bound." <u>Floss v. Ryan's Family Steakhouses, Inc.</u>, 211 F.3d 306 (6th Cir. 2000) (holding that an arbitration agreement identical to the one at bar contained illusory promises and failed for lack of consideration); *cf*. RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. e (1981) and acknowledging the illusory promise doctrine under contract law.

While some circuits have held that "an employer's promise to arbitrate can act as consideration for the employee/applicant's promise to do the same, (see, <u>Matterhorn, Inc. v. NCR Corp.</u>, 763 F.2d 866, 869 (7th Cir. 1985)), other cases have indicated just the opposite. Plaintiffs contend that HCMS and Wendco's ability to change the employment rules at any time without notice or consent and the potential for bias in the arbitral forum, together with the fact that the agreement to arbitrate was a mandatory requirement of *continued* employment, indicate that Plaintiffs received no consideration for their promise to arbitrate. *See*, <u>Floss v. Ryan's Family Steakhouses, Inc.</u>, 211 F.3d 306 (6th Cir. 2000)(arbitration agreement identical to the one at issue contained an illusory promise)  "Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory." 1 SAMUEL WILLISTON, CONTRACTS § 43, at 140 (3d ed. 1957).

In sum, Plaintiffs simply ask, "where is the consideration for the promises in the arbitration agreement?" Plaintiffs were already selected for "training" with Defendants. There is no additional responsibility, benefit, or burden. Without separate, distinct, and contemporaneous

consideration for the promises of this agreement, the agreement must fail for lack of consideration. Rather in the instant matter, the signing of the arbitration agreement was merely the prelude to complete abandonment of any pretense that there was to be a training program.

### *Contract Construction - Lack of Consistency*

A cardinal principle of contract construction is that a document should be read to give effect to all its provisions and to render them consistent with each other. Restatement (Second) of Contracts § 203(a) and Comment (b); id., § 202(5). *See, e.g.*, In re Halas, 104 Ill.2d 83, 92, 83 Ill.Dec. 540, 546, 470 N.E.2d 960, 964 (1984); Crimmins Contracting Co. v. City of New York, 74 N.Y.2d 166, 172-173, 544 N.Y.S.2d 580, 583-84, 542 N.E.2d 1097, 1100 (1989)

The so-called contract of arbitration directly conflicts with the provisions of the Plaintiffs' first contract with International Student Exchange in which they were promised, in their home language, that any disputes would be brought before "a court of competent jurisdiction." Given that the first provision, understood and stated in the Plaintiffs' home language, was agreed to initially, any change would be unenforceable as being inconsistent, especially since the change was presented, without consideration and understanding, after employment had commenced, after the Plaintiffs had paid their funds for the program, after the Plaintiffs had received their J-1 visas and after Plaintiffs had traveled to the United States.

### **_Arbitration Agreement is Unenforceable As Being Unconscionable._**

Unconscionable contracts are not enforced in many jurisdictions around the nation. *See*,

Freeman v. Hubco Leasing, Inc., 253 Ga. 698, 324 S.E.2d 462 (1985), Mullis v. $peight Seed Farms, Inc., 234 Ga. App. 27, 505 S.E.2d 818 (1998), *cert. denied,* 1999 Ga. LEXIS 37 (Jan.8, 1999).  In particular, a contract of arbitration is not to be enforced by a court in Alabama when a judicial determination of unconscionability is supported by the record. Ex parte Dan Tucker Motor Sales, Inc., 718 So.2d 33 (Ala. 1998)

When seeking objective standards by which to evaluate unconscionability, courts have used a two-pronged analysis, examining first the procedural elements of the contract and then the substantive components. NEC Technologies, Inc. v. Nelson, 267 Ga. 390, 391, 478 S.E.2d 769, 771 (1996), Mullis, 234 Ga. App. at 29, 505 S.E.2d at 820.

The procedural inquiry addresses the process of making the contract and focuses on two factors**: oppression and surprise**. Mullis, 234 Ga. App. at 30, 505 S.E.2d at 820. "Oppression" arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice; "surprise" involves the extent to which the supposedly agreed upon terms were hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. *Id*. Factors relevant to the procedural inquiry include "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." NEC Technologies, Inc., 267 Ga. at 392, 478 S.E.2d at 772.

Plaintiffs have shown the arbitration provisions to be procedurally unconscionable. First, the arbitration fees that Plaintiffs could be forced to pay are not disclosed in the arbitration provisions. The arbitration provisions simply state that disputes would be resolved by arbitration without indicating that Plaintiffs would be responsible for substantial fees in the arbitral forum

which would be significantly larger than the filing fees required to initiate an action in court. By failing to even mention that the party would have to bear the costs of arbitration, let alone hinting at the magnitude of such costs or providing the signatory with information concerning the applicable fee schedule, the true meaning of the arbitration agreement is obscured.

Secondly, Plaintiffs lacked a meaningful choice as to accepting this arbitration agreement. They did not have information about the arbitration procedures that the Defendants, who were effectively also the drafters, had. Plaintiffs are unsophisticated in American business and legal matters; that being the very purpose they sought to come here for training. The arbitration agreements were presented to Plaintiffs as "standard documents" used for all J-1 training individuals and the arbitration clauses were pre-printed provisions not open to negotiation. The word "arbitration" is not even used in the title of the document! Even if they had fully understood the arbitration provisions, it does not appear that Plaintiffs were in a position to bargain for more favorable terms on this point. A disparity in bargaining power between contracting parties resulting in no real negotiations or meaningful choice, as seen in <u>Mullis</u>, constitutes oppression. <u>Mullis</u>, supra, 234 Ga. App. at 30, 505 S.E.2d at 821.

The substantive inquiry examines the contract for terms that are one-sided. In evaluating substantive unconscionability, courts have considered "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." <u>NEC Technologies, Inc.</u>, supra, 267 Ga. at 392, 478 S.E.2d at 772. Here the arbitration provisions bar *all* judicial remedies available to Plaintiffs. Under the agreements Plaintiffs were forced to sign, Plaintiffs must arbitrate any claims they might wish to assert.

Alabama courts have utilized the similar standards in determining unconscionability, though the test utilized is not articulated as academically. Rather, the Alabama Supreme Court has simply pronounced that a trial court should consider the following factors in determining whether a contract is unconscionable:

-was one party unsophisticated or uneducated?

-was there an absence of meaningful choice?

-were the contractual terms unreasonably favorable to one party?

-was there unequal bargaining power among the parties?

-were there oppressive, one-sided or patently unfair terms in the contract?

*See*, Ex Parte Donald L. Parker, 730 So.2d 168 (Ala. 1999)

Whether the general test is applied or the more basic five questions of Parker, the record is clear that the agreement is unconscionable.

_____The agreements' full import create a result that is unconscionable under Alabama law. The arbitration fees were not disclosed and are virtually prohibitive as to Plaintiffs. To seek arbitration, Plaintiffs will have an economic inability to proceed in the arbitral forum rather than a less expensive public forum. This is especially true where as here, Defendants may rely on the expiration of Plaintiffs' visa and subsequent return to their native country as a further bar to arbitration. Plaintiffs would then be left without substantial redress for any loss and is effectively without a remedy. Such a result is overly harsh and not justified by corresponding concessions from the Defendants. This lack of mutuality on the face of the arbitration agreement, the last minute manner in which it was forced upon Plaintiffs and its practical effect of foreclosing any possible relief for Plaintiff renders the provisions substantively unconscionable.

In the case of a contract of adhesion, such as the arbitration agreements at issue, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability." Northcom, Ltd. v. James, 694 So.2d 1329 (Ala. 1997); see, Ex Parte McNaughton, 728 So.2d 592 (Ala. 1998); AllStar Homes, Inc., d/b/a Best Value Mobile Homes v. Waters, 711So.2d 924 (Ala. 1997); Layne v. Garner, 612 So.2d 404, (Ala.1992); Rollins, Inc. v. Foster, 991 F.Supp. 1426, 1437 (M.D. Ala. 1998); Rhode v. E & T Investments, 6 F.Supp.2d 1322 (M.D. Ala. 1998).

Finally, Alabama courts have been uniform in holding that arbitration agreements that defeat the prospect of class action treatment are unconscionable. The agreements at issue specifically bar collective or class claims. Contemporaneously herewith, Plaintiffs' counsel is seeking to amend the Complain to include three additional plaintiffs who have been similarly injured. In fact, counsel has been recently made aware of many more potential plaintiffs many fo whom have returned to their home countries and are unaware at this point of their rights in this matter.

In fact, the United States State Department, as well as the Government Accounting Office has additionally recognized that there are many more victims of these, and possibly other companies. The Department of State has published an Interim Final Rule on EVP Trainees and Interns. Fed. Reg., June 19, 2007, Vol. 72, No. 117, pgs. 33669-33677. In this report, "both the Department and the GAO have found there have been occasions where training programs were being misused by some sponsors (e.g.; trainees were actually being used as "employees" and the

J-visa was being used in lieu of the H visa or as a stepping stone for another longer term non-immigrant or immigrant classification that may have been unavailable at the time of the visa application)." The State Department went on to note that the exchange visitor program (EVP) was not "not meant to supply U.S. employers with employees under the guise of being trainees."

The State Department has issued massive revisions to the EVP in an effort to curtail these many abuses. Thus the federal government has recognized that the potential number of plaintiffs whom have been defrauded by an unknown number of defendants since the inception of the EVP in 1961 is almost limitless.    Rule 23 of the Federal Rules of Civil Procedure provides for the processing of a civil complaint wherein the named plaintiffs represent a larger, similarly situated and adequately represented class of victims. Once initial discovery is commenced, counsel will seek certification of the class of plaintiffs who have been injured by the defendants in their scheme to defraud the J-1 visa training program and its participants and make seek additional inclusion of additional co-conspirators of HCMS in other regions of the United States. However, if the plaintiffs are barred from litigation due to an arbitration agreement, the claims of the class will be summarily dissipated due to the forum of dispute.

It is well established in Alabama law that an arbitration clause that defeats just the *prospect* of class action treatment is unconscionable. <u>Leonard v. Terminix International Company</u>, 854 So. 2d 529 (Ala. 2002) Such is the case at bar.


***Arbitration Agreement is Unenforceable as Against Public Policy***

In addition to all of the previously noted reasons why the arbitration agreements fail under a contract law analysis and are unenforceable as being unconscionable, the agreements are

unenforceable as against public policy. The claim for arbitration based on the alleged agreement should not be enforced as it violates public equities and public policy on a variety of levels.

First of all, the Complaint brought by the Plaintiffs asserts various statutory claims as well as claims that resonate with the broader social purposes consistent with the statutes and the concerns of the national legislature when adopting such statutes as the J-1 visa program in the first place, RICO laws, and the Trafficking Victim Protection Preauthorization Act of 2003. For plaintiffs to seek redress of grievances for injuries arising out of criminal activity, the proper forum is judicial and arbitration. *See*, <u>Hardie-Tynes Manufacturing CO. V. Cruse</u>, 66 So. 657 (Ala. 1914)(every criminal act which injures person or property is also a civil tort redressable by "the courts")

A second public equity touched by this situation is the practical effect of enforcing the arbitration forum against Defendants HCMS and Wendco while allowing a judicial forum for International Student Exchange. As similar counts are pursued against these three defendants, it is potentially possible for a conflicting judgment to arise, unsuccessful claims against HCMS and Wendco and a successful claim against ISE, or vice versa. Such a potential result is disfavored. *See*, <u>Booth v. Hume Publishing, Inc</u>., 902 F.2d 925 (11th Cir. 1990)


### *Conclusion*

_____Wherefore, Plaintiffs request that the Defendants' Motion be denied. If this Court finds that a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the proper course of action is not to dismiss the case; rather, the FAA requires that this Court stay any ongoing judicial proceedings, 9 U.S.C. § 3, and compel arbitration, 9 U.S.C. § 4.

However, should this Court be inclined to enforce the arbitration provisions against Plaintiffs, they would respectfully request that the Court stay any order to allow Platiffs to move for a certification of a class.

For the reasons presented above, Plaintiffs strongly urge this Court to find the arbitration agreement invalid, unconscionable, and therefore unenforceable.

Respectfully Submitted,

/s/Robert A. Ratliff
Attorney for Plaintiffs
713 Dauphin Street
Mobile, AL 36602
(251) 438-2250 phone
(251) 438-6180 fax
rar@ratlifflegalgroup.com

/s/Jon A. Green
Jon A. Green
Attorney for Plaintiffs
711 Dauphin Street
Mobile, AL 36602
251-438-2250
251-438-6180

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2007, I electronically filed with the Clerk of the

Court using the CM/ECF system the foregoing pleading, which will send notification of such

filing to the following:

Thomas F. Gonzalez
BEGGS & LANE, RLLP
501 Commendencia Street
Post Office Box 12950
Pensacola, Florida 32591

Thomas J. Woodford
JACKSON MYRICK LLP
Post Office Box 1287
Mobile, Alabama 36633

Caroline T. Pryor
Post Office Box 1126
Daphne, Alabama 36526

_____ /s/Robert A. Ratliff
                                         Attorney for Plaintiffs