IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LINA SCURTU, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 07-0410-WS-B |
| | ) |
| INTERNATIONAL STUDENT | ) |
| EXCHANGE, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss Complaint as to Defendants, Hospitality and Catering Management Services and Wendco of Alabama, Inc., or, in the Alternative, to Stay the Case and Compel Arbitration (doc. 11). The Motion has been briefed and is ripe for disposition.

**I.    Background.**

On June 5, 2007, plaintiffs Lina Scurtu and Cornelia Grozav filed their Complaint (doc. 1) in this District Court against defendants International Student Exchange ("ISE"), Hospitality and Catering Management Services ("HCMS"), and Wendco Corp. ("Wendco").[1] The Complaint alleges that Scurtu and Grozav are both citizens of the Republic of Moldova, graduates of the Moldova Academy of Economic Study, and legal resident aliens living in Baldwin County, Alabama pursuant to the J-1 visa training program. (Complaint, ¶¶ 1-2, 10.) This lawsuit concerns the circumstances of their relocation to the United States pursuant to a

---

[1] That Complaint is the operative pleading in this litigation. To be sure, plaintiffs filed a First Amended Complaint, without leave of court, seeking to add three new plaintiffs and a "John Doe" defendant; however, this Amended Complaint was stricken by Order (doc. 24) dated August 20, 2007 on the grounds that defendant ISE had already filed a responsive pleading, that Rule 15(a) precluded plaintiffs from amending their Complaint without leave of court as to that defendant, that no leave of court had been requested to amend the Complaint, and that fictitious party pleading is improper in federal court. To date, plaintiffs have not sought to refile their amended pleading in permissible form against any defendant.

foreign exchange program and their treatment by defendants after arriving in this country.

According to the Complaint, in spring 2006 both plaintiffs elected to participate in the J-1 visa training program, pursuant to which they would receive employment training in the United States and then return to their homeland. (*Id.*, ¶ 10.) In June 2006, Scurtu entered into a contract with a Moldovan organization, nonparty The Association for Youth Exchange Programs, that served as an agent of defendants ISE and HCMS, to arrange for her to enroll in a training program in the United States. (*Id.*, ¶ 11.) The Complaint alleges that Grozav entered into a similar contract with the same entity in October 2006. (*Id.*, ¶ 14.) Each plaintiff is alleged to have paid in excess of $3,700 for applications and arrangements for the requisite visas, with additional payments for travel expenses. (*Id.*, ¶¶ 12-13, 15-16.) The Complaint further alleges that HCMS undertook to locate a management training program for plaintiffs that would satisfy the J-1 requirements and afford plaintiffs an opportunity to develop competency in fast-food restaurant management, and also undertook to provide housing for plaintiffs at plaintiffs' expense. (*Id.*, ¶¶ 17-18.) According to the Complaint, Scurtu executed a signed training plan with HCMS on September 20, 2006, with Grozav executing a like plan on October 25, 2006. (*Id.*, ¶¶ 19-20.) Both plaintiffs were assigned to work for defendant Wendco at one of its fast-food restaurants in Baldwin County, Alabama.

The driving force of the Complaint is plaintiffs' contention that defendants did not make good on their promises to furnish plaintiffs with management training opportunities commensurate with the J-1 program. The Complaint alleges that neither plaintiff has "received anything that could even remotely be defined as management training. ... Instead, Plaintiffs have been forced to labor as simple cashiers, food prep workers, and cleaning crew." (*Id.*, ¶ 24.) As a result of this assignment, plaintiffs bring 13 causes of action against defendants, including four claims of breach of contract (one by each plaintiff against each of ISE and HCMS); four counts of fraud in the inducement (again, one by each plaintiff against each of ISE and HCMS); civil conspiracy; violation of Trafficking Victim Protection Reauthorization Act of 2003, which plaintiffs allege is actionable pursuant to 18 U.S.C. § 1593; a statutory claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), pursuant to 18 U.S.C. §§ 1961-68; declaratory judgment; and punitive damages. Significantly, the Complaint is not styled as a

putative class action complaint and no class allegations are set forth therein.[2]

Defendants HCMS and Wendco now seek to have plaintiffs' claims against them dismissed or stayed on the grounds that they are subject to binding arbitration provisions. In that regard, movants have submitted two substantively identical documents, each of which is slightly over one page in length, entitled "Agreement and Receipt for Foreign Exchange Program Workers" (the "Agreement"). The Agreement states that the signatory employee is being employed by HCMS, and that HCMS will assign the employee to work on a temporary basis in a Wendco restaurant. The Agreement contains a mutually binding arbitration clause, stating in part that "the parties agree that all legal claims or disputes covered by this Agreement must be submitted to binding arbitration and that binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute. The parties also agree that any arbitration between the parties will not be arbitrated on a collective or class-wide basis." (Movants' Brief (doc. 12), at Exhs. A & B.) The scope of the Agreement is quite broad, encompassing "all legal claims, including: claims for wages or other compensation; claims for breach of any contract, covenant or warranty ...; tort claims (including, but not limited to, claims for physical, mental or psychological injury ...) ...; [and] claims for a violation of any other non-criminal federal, state or other governmental law, statute, regulation or ordinance ...." (*Id.*) With respect to disputes over the document itself, the Agreement sets forth the parties' agreement "that the arbitrator ... shall have the exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of this Agreement ...." (*Id.*) The Agreement also contains a severability clause, under which all of its provisions are deemed severable in the event that they are held unenforceable, such that the remaining provisions will be valid, binding and enforceable. Finally, the Agreement includes specific representations that the employee had carefully read it, that she understood its terms, that she had entered into it voluntarily, and that she had been given the opportunity to discuss it with counsel of her choosing. (*Id.*)

Both Scurtu and Grozav executed identical versions of the Agreement. Scurtu's

---

[2] The stricken First Amended Complaint filed without leave of court would have proliferated the number of claims to 25 (spread across 52 pages and 257 numbered paragraphs), but would not have added any class allegations.

signature on the Agreement is dated September 20, 2006, the very same date on which she executed a training plan with HCMS. Grozav's signature is dated October 25, 2006, the very same date on which she executed a training plan with HCMS. Other signatories to the Agreement were both HCMS and Wendco, the same entities that now seek to enforce the Agreement against Scurtu and Grozav.[3]

## II.     Analysis

### *A.     Governing Legal Standard.*

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA") is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (citation omitted). In that regard, "federal policy requires us to construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007); *see also Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003) (strong federal preference for arbitration of disputes expressed by Congress in FAA must be enforced wherever possible).

Under the FAA, parties are generally free to structure their arbitration agreements as they see fit. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "Generally, a court should enforce an arbitration agreement according to its terms, and no exception exists for a cause of action founded on statutory rights." *Davis*, 305 F.3d at 1273; *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) ("courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are

---

[3] There is some discrepancy in the briefing concerning the proper name of the Wendco defendant. The Complaint identifies that entity as "Wendco Corp.," while movants' briefs counter that the correct entity is "Wendco of Alabama, Inc." The Court agrees with plaintiffs that the proper Wendco entity is a subject for discovery and that the Complaint controls in identifying which Wendco entity is being sued herein. For purposes of the instant Motions, however, it matters not which Wendco entity is the correct defendant because the Agreements are executed by "Wendco Corporation / Wendco of Alabama, Inc., its successors and assigns," such that the Agreement applies to either or both Wendco entities. Plaintiffs have not argued otherwise.

enforceable under the FAA") (citation omitted). Simply put, "a court can decline to enforce an arbitration agreement under the FAA only if the plaintiffs can point to a generally applicable principle of *contract* law under which the agreement could be revoked," such as fraud, duress, or some other misconduct or wrongful act recognized by law for revocation of a contract. *Caley*, 428 F.3d at 1371; *see also Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements") (citation omitted); *General Motors Corp. v. Stokes Chevrolet, Inc.*, 885 So.2d 119, 122 (Ala. 2003) (similar).

In determining whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *Hudson v. Outlet Rental Car Sales, Inc.*, 876 So.2d 455, 457 (Ala. 2003). To resolve these questions, courts apply state-law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration. *See Caley*, 428 F.3d at 1368 ("state law generally governs whether an enforceable contract or agreement to arbitrate exists"). "Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts," taking into account the federal policy favoring arbitration. *Id*.

Under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." *Service Corp. Int'l v. Fulmer*, 883 So.2d 621, 633 n.15 (Ala. 2003). In that regard, a party seeking to compel arbitration must prove "(1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *Allied Williams Companies, Inc. v. Davis*, 901 So.2d 696, 698 (Ala. 2004) (citation omitted). There being no dispute here that HCMS and Wendco have made the requisite showing, "the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question." *Id.* (citation omitted); *see also Blue Cross Blue Shield of Alabama v. Rigas*, 923 So.2d 1077, 1086 (Ala. 2005) (once party seeking to enforce arbitration agreement meets burden of showing existence of agreement, burden shifts to other side "to present evidence indicating that the arbitration provision is not valid or that it does not apply to the dispute in question").

In fixing the relevant burdens of proof in this manner, Alabama courts explain, a motion seeking to compel arbitration is "analogous to a motion for summary judgment." *The Dunes of GP, L.L.C. v. Bradford*, --- So.2d ----, 2007 WL 1098545, *1 (Ala. Apr. 13, 2007) (citation omitted). Where a nonmovant seeks to meet its burden by proving that an agreement to arbitrate is invalid, Alabama courts have cautioned that "[s]tatements in motions and briefs are not evidence to be considered by the trial court in ruling on a motion to compel arbitration" and that properly supported motions to compel arbitration should be granted if the nonmovant presents no opposing evidence. *Providian Nat. Bank v. Conner*, 898 So.2d 714, 719-20 (Ala. 2004) (internal citations and quotations omitted).

Scurtu and Grozav do not deny that they actually signed the Agreements, nor do they contend that those Agreements do not extend to their claims in this action. Rather, plaintiffs ask the Court to excuse them from abiding by the arbitration clause because such Agreements are invalid. In this regard, plaintiffs protest that the Agreements are unenforceable for lack of mutual assent, lack of consideration, lack of consistency, and unconscionability. Each of these assertions shall be addressed in turn.[4]

### B.     Lack of Mutual Assent.

As noted *supra*, Alabama courts treat arbitration agreements as "essentially creatures of

---

[4] Plaintiffs place themselves at a distinct disadvantage by failing to offer evidence of any kind in support of their position. Plaintiffs do not submit affidavits. They do not submit exhibits, although their brief references a nonexistent "Exhibit A" that purportedly consists of copies of plaintiffs' initial contracts in their native language. Instead, plaintiffs rely almost exclusively on the unadorned, unsupported representations of counsel, which are not in the form of evidence that can be considered on a motion to compel arbitration, which is a proceeding akin to summary judgment. *See Providian Nat. Bank*, 898 So.2d at 719-20; *see generally Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n.9, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("an articulation not admitted into evidence will not suffice" and "the defendant cannot meet its burden merely ... by argument of counsel"); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment."); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("opinions, allegations, and conclusory statements of counsel do not substitute for evidence"). Plaintiffs do not explain their failure to submit evidence in support of their arguments that the Agreements are invalid, as to which they indisputably bear the burden of proof under Alabama law.

contract, and ordinary contract rules govern the interpretation of arbitration provisions." *Dunes of GP*, 2007 WL 1098545, at *2 (internal quotations and citations omitted). Plaintiffs assert that contract-law principles of mutual assent preclude enforcement of the Agreements. It is difficult to ascertain with precision the nature of plaintiffs' objection, given that their brief touches on numerous unrelated topics in the two pages of argument set forth under the heading of "No Mutual Assent."[5] Nonetheless, the Court understands the essence of plaintiffs' position to be that their assent to the Agreements "was not knowing" and "was not voluntary" because the Agreements' terms "were in English (a foreign language to the plaintiffs)" and "were obscured" within "a complex legal document of two pages that a lay, 23 year old immigrant would not understand." (Plaintiffs' Brief (doc. 23), at 7.)

Contrary to plaintiffs' argument, the Agreements signed by Grozav and Scurtu are short and straightforward, and are not steeped in technical terminology or abstruse legal jargon. Moreover, each Agreement states that plaintiffs understand its terms and that each was given an opportunity to consult with counsel before signing it. Plaintiffs present no evidence tending to undermine these recitations. Indeed, plaintiffs make no showing that Grozav and Scurtu, both of whom are college graduates, are unable to read English or that they were forced to sign the Agreement under coercive circumstances.[6]

Even if such evidence had been presented, which it was not, any argument that the

---

[5] For example, plaintiffs' scattershot brief maintains under this heading that, among other things, the Agreements signed by the plaintiffs were "missing required elements" (without saying what they were), that the Agreements violate "the statutory requirements under the Uniform Commercial Code" (even though this transaction does not relate in any way to the sale of goods), and that the Agreements are "in contravention to the [unspecified] principles of common law" because they are "self-serving." (Plaintiffs' Brief (doc. 23), at 7-8.) Such cryptic statements do not assist the Court in understanding the legal basis of plaintiffs' objection.

[6] Instead, plaintiffs' brief states in conclusory terms that plaintiffs did not have time to see a lawyer on their own and that HCMS and Wendco presented the Agreement "as if it were simply a required piece of paperwork akin to an emergency contact sheet, I-9 form or some other important but insubstantial document." (Plaintiffs' Brief, at 8.) Leaving aside the obvious contradiction in counsel's characterization of it as an "important but insubstantial document," the Court rejects plaintiffs' inchoate insinuation that these circumstances somehow amount to fraud, coercion or deception that negates mutuality of assent to the Agreements.

-7-

Agreements are invalid for want of mutual assent because plaintiffs could not read them is foreclosed by black-letter Alabama law. "A party to a contract is responsible for reading the contract" before signing it. *Advance Tank and Const. Co. v. Gulf Coast Asphalt Co.*, --- So.2d ----, 2006 WL 253600, *6 (Ala. Feb. 3, 2006) (internal citations and quotations omitted). More importantly, Alabama courts have refused to carve out an exception to contract enforcement where a signatory cannot read or understand the document. Indeed, under Alabama law, "[c]onditions such as illiteracy and a lack of education do not ... deprive one of the ability to contract." *Mason v. Acceptance Loan Co.*, 850 So.2d 289, 296 (Ala. 2002). In *Mitchell Nissan, Inc. v. Foster*, 775 So.2d 138 (Ala. 2000), the Alabama Supreme Court rejected the purchaser's argument that an arbitration agreement he signed at the time of purchase was unenforceable because his reading ability is limited to the sixth-grade level. Because the purchaser had not asked the seller to read the agreement to him and had not informed the seller that he was unable to read or understand the contract, the *Foster* court reasoned, he "cannot avoid his contractual obligation by now asserting that he could not read the contract or understand it." *Id.* at 140. In reaching that conclusion, *Foster* relied on long-standing Alabama authority for the proposition that a person who signs an instrument despite an inability to read cannot avoid the effect of his signature if he has neither asked to have the instrument read nor inquired as to its contents. *Id.*

In short, there is an utter failure of proof to support plaintiffs' contention that the Agreements are void for want of mutual assent. They have failed to proffer any evidence that they could not read the Agreements, that they could not understand the Agreements, that they were not given the recited opportunity to consult with counsel of their own choosing, that they ever asked anyone to read or explain the Agreements to them before executing same, or that they ever inquired as to the Agreements' contents. Contrary to plaintiffs' apparent contention, Alabama law does not automatically absolve non-native English speakers of all responsibility to honor contracts they sign, nor does it undo the assent of a signatory whose busy schedule or challenging personal and work situation might render it difficult for her to meet with a lawyer to review an arbitration agreement before signing it. Accordingly, plaintiffs' argument that the Agreements are void for want of mutual assent is without factual or legal merit.

### C. Lack of Consideration.

Next, plaintiffs pose the question of what consideration could possibly support the

Agreements. In making this argument, plaintiffs fail to cite a single Alabama authority or to explain the basis for their apparent contention that continued at-will employment is insufficient to constitute consideration under Alabama law.[7] In fact, unequivocal Alabama precedents directly foreclose this argument by holding that continued at-will employment satisfies the consideration requirement for an arbitration agreement.

For instance, in *Ameriquest Mortg. Co. v. Bentley*, 851 So.2d 458 (Ala. 2002), the plaintiff accepted at-will employment from the defendant that was conditioned on her signing an arbitration agreement. Reversing the lower court ruling, the Alabama Supreme Court found that the arbitration agreement set forth in the plaintiff's employee handbook was supported by sufficient consideration. In so concluding, the *Bentley* court reasoned as follows: "This Court has consistently held ... that providing continued at-will employment is sufficient consideration to make an employee's promise to arbitrate binding. ... The fact that the at-will employment is or may be terminated does not work a failure of consideration." *Id.* at 464 (citations omitted); *see also Gadsden Budweiser Distributing Co. v. Holland*, 807 So.2d 528 (Ala. 2001) (finding that arbitration provision was not unenforceable for lack of mutuality of obligation where employer provided at-will employment in exchange for employee's promise to arbitrate employment disputes); *Baptist Health System, Inc. v. Mack*, 860 So.2d 1265, 1275 (Ala. 2003) (arbitration agreement in employment handbook deemed enforceable where employee continued her employment with employer after receiving the handbook).[8]

Plaintiffs' unsupported argument that the Agreements are invalid for want of consideration fails as a matter of Alabama law.

---

[7] Rather than identifying Alabama authorities that support their position, plaintiffs simply state in general terms that some jurisdictions allow an employer's promise to arbitrate to serve as consideration for the employee's similar promise, while other jurisdictions do not. Without some indication from plaintiffs as to which approach Alabama has adopted or would adopt, this argument is unhelpful.

[8] In addition to the continued at-will employment furnishing the requisite consideration, the mutuality of the arbitration obligation may itself provide consideration under Alabama law. Indeed, as one district court applying Alabama law has explained, "there is adequate consideration because arbitration is required for and binding on both parties." *Maddox v. USA Healthcare-Adams, LLC*, 350 F. Supp.2d 968, 974 (M.D. Ala. 2004).

### D.     Lack of Consistency.

Scurtu and Grozav also contend that the Agreements should be struck down for "lack of consistency." Plaintiffs' argument hinges on their contention that plaintiffs had previously signed agreements with defendant ISE (which agreements are not in the record and have not been placed before the undersigned for review) wherein they agreed that disputes would be brought before a "court of competent jurisdiction."[9] Plaintiffs maintain that their agreement with ISE to litigate disputes in court is irreconcilable with their Agreements with HCMS and Wendco to submit disputes to arbitration. The Court disagrees. There has been no allegation or suggestion that the three defendants in this case are mere alter egos of each other; rather, all indications are that they are distinct legal entities providing distinct services to plaintiffs in connection with their travel to and training in the United States. That plaintiffs may have contracted with one of those entities (ISE) to litigate any disputes between them in court is in no way at odds with their contracting with the other two entities (HCMS and Wendco) to submit any disputes between them to arbitration. Plaintiffs fail to explain how the differing enforcement provisions in the ISE contracts and the HCMS/Wendco Agreements somehow operate to invalidate the latter as a matter of law. The Court perceives no legal basis for such an argument, and therefore overrules plaintiffs' consistency objection.[10]

---

[9]     By identifying these contracts as being with ISE, plaintiffs' brief departs from the Complaint, which alleges that those contracts were entered into with The Association for Youth Exchange Programs, and not ISE. Rather than attempting to resolve this discrepancy, the Court will accept plaintiffs' characterization of the contracts as presented in their brief, notwithstanding the Complaint's allegations otherwise.

[10]     Even if the two sets of contracts were inconsistent, plaintiffs' assertion that the earlier contract takes precedence over a later-executed agreement with inconsistent terms is incorrect, as a matter of law. The Alabama Supreme Court has explained that "parties are free to modify agreements, and if the terms of a subsequent agreement contradict the earlier agreement, the terms of the later agreement prevail." *Cavalier Mfg., Inc. v. Clarke*, 862 So.2d 634, 641 (Ala. 2003). "When parties execute successive agreements and the two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement." *Hunter v. Wilshire Credit Corp.*, 927 So.2d 810, 814 (Ala. 2005) (quoting *Cavalier*, 862 So.2d at 641); *see generally Restatement (First) of Contracts*, § 408 ("A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract."). Thus, in no

*E.     Unconscionability.*

In a further attempt to undermine the arbitration provisions to which they agreed, Scurtu and Grozav challenge the Agreements as being unconscionable in various respects.

*1.     Legal Standard.*

"[T]here is nothing inherently unfair or oppressive about arbitration clauses ... and arbitration agreements are not in themselves unconscionable." *Ryan's Family Steakhouse, Inc. v. Kilpatric*, --- So.2d ----, 2006 WL 3691554, *8 (Ala.Civ.App. Dec. 15, 2006) (internal quotations and citations omitted); *see also Sloan Southern Homes, LLC v. McQueen*, 955 So.2d 401, 404 (Ala. 2006) ("[u]nder Alabama law, arbitration provisions are not per se unconscionable"). This is equally true in employment cases, where courts have stressed that "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Service Corp.*, 883 So.2d at 633 n.15; *see also Caley*, 428 F.3d at 1377 (arbitration agreement is not unconscionable even though "there is some bargaining disparity here, as often in the employment context"). An unconscionable contractual provision is one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Ryan's*, 2006 WL 3691554, at *8 (citations omitted).

"Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002); *see also Rigas*, 923 So.2d at 1086 (observing that "unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proving unconscionability"). The Alabama Supreme Court has declared that the two essential elements of unconscionability are "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." *American Gen. Fin.,*

---

event could an earlier-signed agreement providing for dispute resolution in court serve to neutralize or invalidate a later-signed agreement by the same parties providing for dispute resolution via arbitration. The legal premise of plaintiffs' argument is faulty.

*Inc. v. Branch*, 793 So.2d 738, 748 (Ala. 2000); *see also McQueen*, 955 So.2d at 403 (same).[11] More generally, Alabama courts require parties objecting to arbitration clauses on unconscionability grounds to prove both procedural unconscionability (*i.e.*, that the imposed-upon party lacked meaningful choice about whether and how to enter into the transaction) and substantive unconscionability (*i.e.*, that the contract terms are unreasonably favorable to the more powerful party by, for example, altering in an impermissible manner fundamental duties otherwise imposed by law or negating reasonable expectations of the nondrafting party). *See Rigas*, 923 So.2d at 1086-87.

        2.        *Application of Legal Standard.*

The Court finds that plaintiffs have failed to meet their burden of showing procedural and substantive unconscionability.

On the subject of substantive unfairness, there is no legal or factual basis for concluding that the Agreements' terms are grossly unfavorable to Scurtu or Grozav. Plaintiffs do not identify any particular aspects of the Agreements that they believe to be oppressive; rather, their position is apparently that relinquishing their right to litigate disputes in court is itself grossly unfair. Alabama courts have steadfastly disavowed such a notion. *See, e.g., Gayfer Montgomery Fair Co. v. Austin*, 870 So.2d 683, 691 (Ala. 2003) (arbitration agreement in employment context held not grossly favorable to employer where agreement was equally binding on both parties and did not limit the types of damages that employee could recover); *Potts v. Baptist Health System, Inc.*, 853 So.2d 194, 206 (Ala. 2002) (arbitration agreement in employment context is not grossly favorable to employer where it is equally binding on both parties and does not limit arbitrator's ability to provide remedies under Alabama law). The Agreements at issue in this case are markedly similar to those at issue in *Gayfer* and *Potts*, inasmuch as they were binding on both plaintiffs and HCMS/Wendco and they did not purport to circumscribe the

---

        [11]        "To satisfy the grossly favorable standard, courts look to whether the agreement includes (a) terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy, (b) terms that would impermissibly alter fundamental legal duties, (c) terms that seek to negate the reasonable expectations of the nondrafting party, and (d) unreasonably and unexpectedly harsh terms having to do with central aspects of the transaction." *Patriot Mfg., Inc. v. Dixon*, 399 F. Supp.2d 1298, 1311 (S.D. Ala. 2005).

remedies that an arbitrator could award plaintiffs. There is nothing grossly unfavorable or one-sided about a mere bilateral requirement to arbitrate employment-related disputes between employer and employee. As the Alabama Supreme Court has pointed out, "[i]nstead of suffering unconscionable treatment, a party, by agreeing to arbitrate, ... trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gayfer*, 870 So.2d at 691 (internal quotations and citations omitted).

The absence of a showing of substantive unconscionability is itself fatal to plaintiffs' attempts to invalidate the Agreements on unconscionability grounds. *See Rigas*, 923 So.2d at 1087 ("To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability."). Even if Scurtu and Grozav had shown that the terms of the Agreements were somehow grossly unfavorable to them, which they have not, their unconscionability argument would nonetheless fail because they have failed to make any showing of lack of meaningful choice as necessary to establish procedural unconscionability. There is neither evidence nor argument that HCMS/Wendco placed these Agreements before plaintiffs on a take-it-or-leave-it basis, threatened to fire them if they refused to sign the Agreements, forced them to sign the Agreements on the spot, or forbade them from reviewing the Agreements with counsel or anyone else they saw fit.[12] To the contrary, each plaintiff specifically acknowledged in signing the Agreement that she did so voluntarily and that she had been afforded a full opportunity to discuss it with counsel before executing it. That plaintiffs may now regret the choice they made does not equate to a lack of meaningful choice, particularly in the absence of any showing that plaintiffs' representations in those Agreements concerning voluntariness are a lie. Where, as here, a plaintiff makes no showing of lack of meaningful choice, Alabama courts have given decidedly short shrift to unconscionability arguments. *See Ryan's*, 2006 WL 3691554, at *9 (rejecting employee's argument that arbitration agreement was procedurally unconscionable where employee "offered

---

[12] Indeed, plaintiffs' counsel resorts to unabashed conjecture on this point, stating that "it does not appear that Plaintiffs were in a position to bargain for more favorable terms on this point." (Plaintiffs' Brief, at 12.) What is the evidence? An arbitration clause will not be struck down as unconscionable merely because it "appears" to counsel, with no supporting facts of any kind, that his clients may not have been in a position to bargain for more favorable terms.

*no evidence* indicating that she lacked a meaningful choice in signing the arbitration agreement or that Ryan's exercised overwhelming bargaining power"). This Court does the same.[13]

In finding plaintiffs' unconscionability showing to be inadequate under Alabama law, the Court derives guidance from *Gayfer Montgomery Fair Co. v. Austin*, 870 So.2d 683 (Ala. 2003), a case involving similar circumstances. In *Austin*, the employee argued that the arbitration agreement she had executed in connection with her employment was unconscionable. The Alabama Supreme Court disagreed, reasoning as follows: (a) the employee did not contend that her employer had misrepresented the arbitration agreement; (b) the agreement itself was clear and set forth in unmistakable terms the employee's obligation to arbitrate; (c) there was no evidence that the employee could not have understood what she was signing had she taken time to read it; (d) there was no evidence that the employer denied her the opportunity to read the document or tricked her into signing it; and (e) the employee failed to identify any aspect of the agreement that was grossly favorable to her employer. *Id.* at 690-91. That same constellation of considerations conclusively defeats the unconscionability defense of Scurtu and Grozav.

Before leaving the topic of unconscionability, the Court will explain why four additional arguments proffered by plaintiffs are unavailing. First, plaintiffs assert that the failure of the Agreements to disclose arbitration fees that plaintiffs would have to pay, and the possibility that those fees might be exorbitant, renders the documents unconscionable.[14] In *Bess v. Check*

---

[13] Perhaps plaintiffs intended to argue that they might be fired unless they executed the Agreements immediately and without questions. Even if plaintiffs had so argued, and even if they had presented supporting evidence on that point, such a showing does not rise to the level of procedural unconscionability. *See Potts*, 853 So.2d at 206 (possibility that employee will be fired if she fails to sign arbitration agreement, and resulting financial hardship on employee, is not in and of itself unconscionable and does not invalidate agreement). Nor would it advance plaintiffs' cause to maintain that they were prevented by their own impoverished status from seeking out counsel to review the Agreements. *See Green Tree Financial Corp. of Alabama v. Wampler*, 749 So.2d 409, 416 (Ala. 1999) ("Because the general principles of Alabama contract law do not excuse performance on grounds of financial hardship, we cannot allow a party's poverty, standing alone ..., to constitute a defense to enforcement of an arbitration agreement.").

[14] Plaintiffs offer no evidence as to either their ability to pay or the magnitude of the potential arbitration costs, but simply would have the Court accept on faith that the former is a low number and that the latter is a much higher number.

-14-

*Express*, 294 F.3d 1298 (11th Cir. 2002), the Eleventh Circuit considered and rejected just such an argument. The *Bess* plaintiffs maintained that their arbitration agreement was unenforceable because it potentially gave rise to high costs to the party pursuing arbitration, inasmuch as it said nothing about payment of filing fees, apportionment of arbitration costs, ability to waive fees and costs due to financial hardship or the like. The court explained that because the plaintiffs were simply speculating that their costs of pursuing arbitration might be prohibitively expensive, and "the record reveals only that the arbitration agreement is silent on the subject, ... that fact alone is insufficient to render the agreement unenforceable." *Bess*, 294 F.3d at 1304; *see also Green Tree Financial Corp. of Alabama v. Wampler*, 749 So.2d 409, 415 (Ala. 1999) (noting that, where arbitration clause is silent about costs of arbitration, "settled principles of Alabama law" preclude court from assuming worst case scenario); *Taylor v. Citibank USA, N.A.*, 292 F. Supp.2d 1333 (M.D. Ala. 2003) (party seeking to avoid arbitration on basis of high costs must demonstrate that he faces such high costs if compelled to arbitrate his claim that he is effectively precluded from vindicating his rights in arbitral forum). In light of these authorities, plaintiffs' contention that the Agreements are unconscionable because the arbitration fees are not spelled out in detail therein cannot withstand scrutiny.

Second, plaintiffs balk that an arbitration remedy is no remedy at all because "Defendants may rely on the expiration of Plaintiffs' visa and subsequent return to their native country as a further bar to arbitration." (Plaintiffs' Brief, at 13.) But surely the same scenario could occur even with a remedy that allowed plaintiffs to sue in court. Either way, plaintiffs' visas could lapse during the pendency of arbitral or court proceedings, forcing them to pursue their claims in either an arbitral or a judicial forum from the considerable geographic distance of their mother country. Thus, the inequity of which plaintiffs complain is not unique to their arbitration remedy at all, but is rather an inevitable byproduct of their temporary visa status in the United States and their expressed intent to return to Moldova upon expiration of same.

Third, plaintiffs brand the Agreements as contracts of adhesion. That is simply not correct under Alabama law. In that respect, Alabama courts have categorically declared that "in regard to arbitration agreements, certain defenses - including the defense that an arbitration agreement is a contract of adhesion - are without merit." *Johnnie's Homes, Inc. v. Holt*, 790 So.2d 956, 964 (Ala. 2001).

Fourth, plaintiffs argue that the Agreements are unconscionable because they contain class action waivers. Specifically, the Agreements include a provision stating, "The parties also agree that any arbitration between the parties will not be arbitrated in a collective or class-wide basis." But plaintiffs have not invoked the Rule 23 machinery in this action. Their Complaint includes no class allegations. Even if it did, binding authority is clear that class relief waivers in arbitration clauses are not *per se* unenforceable. *Compare Caley*, 428 F.3d at 1378 (determining, under specific facts of that case, that agreement's prohibition of class actions as to certain employment-related claims was not unconscionable, but was instead consistent with goals of simplicity, informality and expedition touted by Supreme Court) *with Dale*, 498 F.3d at 1220-24 (class action waiver deemed unenforceable because without benefit of class action mechanism, cable subscribers would effectively be precluded from suing defendant because cost of vindicating individual subscriber's claim, relative to potential recovery, is simply too great). "[T]he enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances. Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorney's fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical [e]ffect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns." *Dale*, 498 F.3d at 1224.

Given the specific posture of this case, there is no need for the Court to rule on whether the class relief waiver is or is not enforceable here. As noted, the operative Complaint is devoid of class allegations. More importantly, even if the class relief waiver were unenforceable in this case, that provision would not render the entire Agreement unconscionable. Alabama courts have insisted that "it is the general duty of the court to preserve so much of a contract as may properly survive its invalid and ineffective provisions." *McQueen*, 955 So.2d at 404 (internal quotations and citations omitted). In that regard, Alabama courts routinely "excise void or

illegal provisions in a contract, even in the absence of a severability clause." *Id.*[15] That outcome is reinforced by the fact that the Agreements contain an unambiguous severability clause, which states that the parties "agree that the provisions of this Agreement are severable and, should any provision be held unenforceable, all others will remain valid, binding, and fully enforceable." (Doc. 12, Exhs. A & B.) Thus, even if plaintiffs were correct that the class relief waiver provision is unenforceable, they could not parlay that deficiency into a determination that the Agreements are unconscionable and hence unenforceable in their entirety. Because that issue is irrelevant to the enforceability of plaintiffs' agreement to submit disputes to arbitration, the Court makes no findings and expresses no opinions as to whether the class action waiver is or is not enforceable in this case.

For all of the foregoing reasons, the Court finds that plaintiffs have failed to meet their burden of establishing their affirmative defense that the arbitration agreements in question are unconscionable.[16]

---

[15] It is appropriate to look to state law concerning severability in the arbitration agreement context. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331 (11th Cir. 2005) (if portion of arbitration agreement is unenforceable, court must look to state law to determine whether offensive terms are severable and, if so, compel arbitration according to the remaining, valid terms of the parties' agreement).

[16] In reaching this conclusion, the Court has considered plaintiffs' public policy arguments and has determined them to be without merit. Plaintiffs suggest that because they have brought statutory claims under RICO and the like that the interests of public policy dictate that such claims be litigated in court rather than before an arbitrator. Plaintiffs cite no authority that supports this position, and the overwhelming weight of the caselaw is otherwise. *See, e.g., Caley*, 428 F.3d at 1367 ("courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA" and "it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes") (citation omitted). Nor is there any merit to plaintiffs' unsupported contention that public policy requires the arbitration agreement to be declared unenforceable in this case so as to obviate the need for plaintiffs' claims to be presented in two fora, given that their claims against ISE are not subject to any arbitration agreement. To construe public policy so broadly would be to create a gaping loophole whereby a plaintiff could automatically evade compliance with an arbitration provision to which she agreed to be bound simply by adding another defendant who was not a signatory to that agreement. In the absence of any showing by plaintiffs that public policy forbids or disfavors the enforcement of an arbitration clause simply because the plaintiff has also sued a person not

### F.     *Plaintiffs' Motion for Oral Argument.*

Following the close of briefing on the Motion to Dismiss or Stay, plaintiffs filed a pleading styled "Plaintiffs' Motion for Oral Arguments" (doc. 26). This Motion and the accompanying memorandum read much more like an unauthorized sur-reply than a request for a hearing, with plaintiffs devoting approximately two paragraphs of this 10-page submission to addressing the request for a hearing and the remainder to re-arguing the merits. This is improper. *See, e.g., Kerns v. Sealy*, 496 F. Supp.2d 1306, 1310 n.5 (S.D. Ala. 2007) (observing that sur-replies should only be submitted with prior leave of court).

Additionally, it is difficult to discern whether plaintiffs are asking for oral argument or an evidentiary hearing, as their filing uses both terms interchangeably. To the extent that plaintiffs seek oral argument, that request is **denied**. The parties' briefs adequately set forth their respective positions on the legal issues pertaining to HCMS/Wendco's motion for dismissal or stay, such that oral argument would not substantially assist the Court in understanding the parties' respective legal arguments. *See* Local Rule 7.3 ("the court may in its discretion rule on any motion without oral argument"). To the extent that plaintiffs are actually seeking an evidentiary hearing rather than oral argument, they have failed to make any proffer tending to show the existence of disputed facts that must be resolved via hearing. If Scurtu and Grozav had evidence they wished to present in support of their defenses to the arbitration agreements, it was incumbent on them to submit such evidence now, rather than simply articulating a vague intent to present it in the future. *See Leeman v. Cook's Pest Control, Inc.*, 902 So.2d 641, 644 (Ala. 2004) (explaining that "a motion to compel arbitration is analogous to a motion for summary judgment"). They have not done so, and this Court will not afford them a second bite at the apple by granting them an evidentiary hearing to marshal and submit evidence that could and should have been presented earlier. On that basis, plaintiffs' request for evidentiary hearing is **denied**.[17]

---

subject to that provision, the Court declines to engraft such a sweeping exception onto the general rules favoring enforcement of arbitration agreements under the FAA.

[17]     This outcome works no hardship on plaintiffs. At best, their Motion for Oral Arguments suggests that a hearing is necessary to address "the matter of the plaintiffs [*sic*]

**III. Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. The Motion to Dismiss Complaint as to Defendants, Hospitality and Catering Management Services and Wendco of Alabama, Inc., or, in the Alternative, to Stay the Case and Compel Arbitration (doc. 11) is **granted in part and denied in part**. The Court finds that the arbitration agreements executed by plaintiffs and movants are enforceable, and **orders** those parties to proceed to arbitration in accordance with the terms of such agreements. This arbitration shall encompass all of plaintiffs' causes of action herein against HCMS and Wendco.[18]

2. Notwithstanding the determination that plaintiffs' claims against HCMS and Wendco must be arbitrated, this Court retains jurisdiction to confirm or vacate the resulting arbitration award under 9 U.S.C. §§ 9-10. *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998). Accordingly, the Court **denies** the Motion insofar as it seeks dismissal of plaintiffs' claims against HCMS and Wendco, but **grants** the Motion insofar as it seeks a stay of such claims pending arbitration. The Court **stays** all of plaintiffs' claims against HCMS and Wendco pending the outcome of arbitration. Beginning in **November 2007**, HCMS and

---

educational and business acumen." (Doc. 26, at 8.) However, the undersigned's ruling on the arbitration question does not turn on this factor, so it would serve no purpose to conduct an evidentiary hearing to make factual findings concerning plaintiffs' educational and business acumen. Aside from this one issue, plaintiffs' Motion and brief do not identify any other facts that they wish to develop at a hearing, nor do they explain why they could not have submitted such facts via affidavit or otherwise in this summary-judgment style proceeding regarding the enforceability of the arbitration agreements.

[18] Plaintiffs have requested "that the Court stay any order [compelling arbitration] to allow Platiffs [*sic*] to move for a certification of a class." (Doc. 23, at 17.) The Court declines to do so. As mentioned, the Complaint is devoid of class allegations. Plaintiffs have identified no reason why they have failed to bring their class allegations and motion for class certification previously during the four and a half month history of this litigation in federal court. Nor have plaintiffs made any showing that the *Dale* factors would militate in favor of striking down the class action waiver in this case. The Court will not inject indefinite delay into these proceedings to enable plaintiffs to amend their complaint to bring class allegations that they could have brought before and to file a motion for class certification that they could have filed previously.

Wendco are **ordered** to file, on or before the **third Friday of each month**, a written report reflecting the status of the arbitration proceedings.

3. This Order compelling arbitration specifically exempts plaintiffs' causes of action against defendant International Student Exchange. Those claims have not been ordered to arbitration and will proceed in this forum. In that regard, Magistrate Judge Bivins will enter forthwith a Rule 16(b) Scheduling Order governing the litigation of those claims.

4. Plaintiffs' Motion for Oral Arguments (doc. 26) is **denied**.

DONE and ORDERED this 19th day of October, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE