UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LINDA SCURTU and
CORNELIA GROZAV

    Plaintiffs

v.                                      Case No. 1:07-cv-00410-WS-B

INTERNATIONAL STUDENT
EXCHANGES, et al.,

    Defendants
_____/

**PLAINTIFFS' MOTION TO
STRIKE DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
PLAINTIFFS' RESPONSE THERETO**

COME NOW the Plaintiff Lina Scurtu and the Plaintiff Cornelia Grozav, by and through their undersigned counsel, who respectfully and respectively request that this Court strike the Defendants' Motion to Dismiss (Docket #112). As grounds for this request, Plaintiffs state as follows:

1. On April 19, 2010, in reaction to the Court-ordered monthly status report of April 16, 2010 (Doc. 108) regarding this case, this Court, *sua sponte,* ordered a **joint** response by all parties to the general inquiry of "how we propose to proceed in this case." (Order, Doc.#109, page 2)

2. Counsel for Plaintiffs attempted on several occasions to co-ordinate with Defendants' counsel to prepare the required joint report to this Court. These attempts included an April 29, 2010-email message from Robert Ratliff to

Defendants' counsel, requesting a conference to prepare a joint response. (A copy of that message is attached as Exhibit A.) Opposing counsel failed to provide an affirmative response. On Friday, May 7, 2010, Robert Ratliff again attempted to arrange for a conference call among all the parties to arrange for a joint report as required by the Court. (See, Exhibit B) Mr. Van Sickle never responded. Mr. Woodford curtly responded by saying: "Rob, I honestly don't think there is a need to have a call." (*Id.*)

3. Counsel diligently sought to comply with this Court's Order. Even if a joint report reflected a difference of opinion as to the how and where this case should proceed, both opinions could have been included in the requested joint report.

4. Rather than doing so, and rather than complying with this Court's Order, Defendants' counsel ignored the undersigned and ignored this Court's direction. Concerned that some report was expected by this Court, Plaintiffs' counsel filed its report (Docket #110 ) on May 10, 2010. Apparently, Defendants' counsel were prepared to ignore this Court's order and proceed on its own path by filing its Motion to Dismiss, a pleading that it filed as Document #112, filed several hours after Plaintiffs' report and motion to proceed were electronically filed on May 10, 2010.

5. For the reasons cited herein and in the Memorandum of Law below, this Court should strike Defendant's brief for non-compliance, or in the alternative, proceed as outlined below.

*Memorandum of Law in Support of Motion to Strike*

A district court has broad authority and power to strike matters from a pleading that it finds to be immaterial, impertinent, or scandalous. This authority is both inherent with a federal court and explicit in the Federal Rules of Civil Procedure, Rule 12(f). See, Dzwonkowski v. Dzwonkowski, 298 Fed. Appx. 885, 2008 U.S. App. LEXIS 22822 (11th Cir. 2008) A district court also has the authority to impose sanctions up to and including the sanction of dismissal for failure to comply with pre-trial orders of the court. See, Fed. Rules of Civil Procedure Rule 37 (regarding the non-compliance with discovery orders); Societe Internationale v. Rogers, 357 U.S. 197 (1958) (sanctions not an abuse of discretion when non-compliance of a court's order was based upon willfulness, bad faith, or any fault of the subject party.)

Plaintiffs' counsel is human and as a member of the Bar rarely, if ever, seeks any type of sanction against opposing counsel for minor infractions, missteps, or collateral omissions that are more aptly defined as human errors. (*See* Siegel v. Lepore, 234 F.3d 1163 (11th Cir. 2000), confirming Alexander Pope's 18th century statement that "to err" is a fundamental characteristic of the human condition.)

As professionals, we are required, by our profession and, in this case, by a judicial order, "to make all reasonable efforts to schedule matters with opposing counsel by agreement." As reflected in the email messages of Exhibits A and B, Defendants' counsel refused to act accordingly.

As professionals, we are never to intentionally embarrass one another and we are to "avoid personal criticism of another lawyer." Defendants' counsel have repeatedly churned time and consequently fees in seeking discovery unrelated to this matter and of issues to which

Plaintiffs have repeatedly offered to execute discovery stipulations. Specifically, Defendants have repeatedly sought discovery regarding the professional relationship between Mr. Robert Ratliff and Aaron Raffield. Though Plaintiffs have repeatedly offered to provide stipulations regarding the involvement of Mr. Raffield and his now defunct companies, Defendants' counsel have repeatedly ignored the offer, failed to provide a proposed stipulation and continued to chase this red herring, wasting time and money on immaterial discovery. Exhibit C.

This refusal, and suggestions to the arbitrator that some nefarious relationship existed between Raffield and Ratliff, sought to embarrass Mr. Raffield and more importantly sought to churn legal fees and costs for his clients.

As professionals, we recognize and "are ever mindful that any motion, trial, court appearance, deposition, pleading, or legal technicality costs someone time and money." Defendants' counsel has failed to recognize that the Plaintiffs are hourly wage earners, simply seeking to obtain remedies to past wrongs committed by HCMS and Wendco.

Plaintiffs' have from the beginning sought only to have an expeditious and final hearing on the merits of this matter. Plaintiffs seek the sanction of striking Defendants' motion to dismiss, a pleading strategically filed electronically between the report of Docket #110 and the Court's deadline of May 10, 2010.

For the reasons cited above, Plaintiffs request that this Motion to Strike be affirmed.

*__Response to Motion To Dismiss__*

In the alternative, Plaintiffs submit the following Memorandum in Response to Defendants Motion to Dismiss.

**Introduction**

The Plaintiffs' claims have been in arbitration for more than two and one-half years. The cost of arbitration to the Plaintiffs in actual fees and costs to date has exceeded $4,500.00, and the arbitrator currently has billed the Plaintiffs for several thousand dollars in additional time. The total cost of arbitration to date, in billed and unbilled time, exceeds twelve thousand dollars. *See, Exhibit A - invoices. filed with Document #111.* These expenses *do not* include out of pocket expenses related to discovery, such as court reporter fees, travel expenses, photocopying, and related charges.[1] As proffered to the arbitrator, and as previously submitted to this Court, the Plaintiffs lack the financial ability to continue funding arbitration in the pursuit of their statutory rights.

The Defendants have requested that this Court dismiss the action as a discretionary remedy for Plaintiffs' alleged "failure to consummate . . . agreed-upon arbitration duties . . . and refusing to proceed with arbitration." (Defendants' Motion, #112, page 1) No articulated legal standard is presented by the Defendants for this dismissal, other than a general reference to this Court's original arbitration referral of October 19, 2007.

**Legal Standard**

Notwithstanding the Defendants' suggestion that no specific legal standard controls in this matter, this Court is bound to certain standards. These controlling standards include the opinion of the arbitrator and the direction he has ordered by referring this matter back to this

---

[1] The parties had originally agreed to a fee splitting arrangement regarding arbitrator's fees, based upon the original understanding that arbitration would be an efficient and expeditious use of time and resources. Soon after the fee arrangement was signed, Defendants' counsel began a long and extenuated discovery quest, churning fees and expenses. Notwithstanding Plaintiffs' request to proceed to a hearing without any discovery, the Defendants and circumstances have stretched the arbitration proceedings over two and a half years. To date, no hearings have been held, no substantive issues resolved, and no testimony presented to the arbitrator.

forum for a determination of the rights, remedies, and defenses associated with Plaintiffs claims in their original complaint.

Plaintiffs requested that the current arbitrator, Hamp Uzzelle, terminate the arbitration and return the matter to this Court. The basis for this request is outlined in Docket #111. In short, the Plaintiffs' claims have been in arbitration for more than two and one-half years. The cost of arbitration to the Plaintiffs in actual fees and costs to date has exceeded $4,500.00, and the arbitrator currently has billed the Plaintiffs for several thousand dollars in additional time. The total cost of arbitration to date, in billed and unbilled time, exceeds twelve thousand dollars. These expenses *do not* include out of pocket expenses related to discovery, such as court reporter fees, travel expenses, photocopying, and related charges. As proffered to the arbitrator, and as previously presented to this Court, the Plaintiffs lack the financial ability to continue funding arbitration in the pursuit of their statutory rights.

Such a situation was well known to all parties, by Plaintiff's email of April 17, 2008. Exhibit E. Therein, Plaintiff's agreed to the terms of the arbitration agreement, but specifically informed all parties that their resources were not unlimited and that in the future, the subject of fees may need to be revisited. More than two years later, with Defendant's still seeking additional discovery, Plaintiff's circumstances and ability to continue, have changed.

Arbitrator Uzzelle considered the Plaintiffs' request, the length of time that has passed[2], the costs incurred, and the origin of his jurisdiction. On March 1, 2010, Arbitrator Uzzelle issued an Order in which he concluded that any request to terminate arbitration must be directed to this

---

[2]To date, notwithstanding Plaintiffs' request to proceed to a hearing with limited discovery, the Defendants and circumstance have stretched the arbitration proceedings over two and a half years. To date, no hearings have been held, no substantive issues resolved, and no testimony presented to the arbitrator.

Court and resolved in this forum. "That Court ordered the case to arbitration, and any decision to reverse that Order must be made by that Court."

Standing on its own, the Order raises certain jurisdictional questions. Nevertheless, Arbitrator Uzzelle augmented his Order on April 7, 2010 with additional direction to the parties. "I do not believe that I can proceed further in this matter." (Doc. 108, page 2) He then completed his direction by suggesting that the parties return to this Court for further proceedings. When read together, these orders from the arbitrator form just the same intent as expressed in the recent Alabama Supreme Court case of  Smallwood v. Holiday Development, LLC, 2009 Ala. LEXIS 264 (Ala. November 13, 2009) In that case, the state's highest court found that when an arbitrator terminates proceedings due to a party's inability to pay arbitration fees and forwards the case to circuit court for the prosecution of claims, the trial court is required under the FAA to give effect to the intent of the arbitrator's decision.

Plaintiffs have requested (Docket #111) that  this Honorable Court re-assert jurisdiction over the full set of claims, demands, and equitable matters contained in the above-captioned matter, and that all parties proceed with adjudicating such claims in this judicial forum. (Plaintiffs have further noted that they wish to commence proceedings immediately. No further discovery is needed. Plaintiffs simply request a hearing date on their motion for partial summary judgment, Defendants' motion for summary judgment, and a final hearing date.) Notwithstanding Plaintiffs request, submitted in response to this Court's invitation for proposals, this Court is obligated under Smallwood to give full effect to the arbitrator's intent and pick up the justiciability of Plaintiffs' claims where the arbitrator has stopped, a stoppage due only to the financial constraints affecting the Plaintiffs.

**Plaintiffs Have Not Breached Any Agreement**

Defendants argue that this matter should be dismissed because the Plaintiffs entered into an arbitration agreement regarding fees, have failed to adhere to that agreement, and should not be rewarded for such a breach with an alternative forum of this federal court. Such an argument is simply not supported by the facts.

Following this Court's referral of Plaintiffs' claims to arbitration, the arbitrator requested that the parties enter into an agreement regarding the payment of fees and costs for the arbitration. (See, Exhibit D) This agreement was signed by counsel for each party and delivered to the arbitrator in June of 2008.   When the fee agreement was executed, it was delivered with a specific caveat from Plaintiffs' counsel that we could not commit to future payments, especially since the scope of the arbitration including discovery had not been determined. (Exhibit E)
The fee agreement was not a permanent, eternal document limiting all parties to its terms for the duration of the undefined arbitration. Not only was the fee agreement not intended to be a permanent agreement as to fees and expenses, it is clear that its enforceability is limited to the parameters of the possible. If demands under the agreement are so high, Plaintiffs cannot possibly meet those claims and the contract becomes one of impossibility.

The parties to this matter recognized this limitation. In an email of March 3, 2008 from Thomas Woodford to the arbitrator, Mr. Woodford recognized that the arbitration fee agreement is "silent on the discovery issue."  It is this unaddressed issues that has generated the need to either modify the financial burden of arbitration or modify the forum in which the claims are resolved. The Arbitrator has ruled that these changed circumstances cannot be addressed with a modification in payment arrangements but only with a referral back to federal court for

resolution.[3]

Contract interpretation is a factual matter, firmly established in the purview of a fact-finder. <u>Alpine Const. CO. v. Water Works Board</u>, 377 S0.2d 954 (Ala. 1979) Any factual review of the agreement and the accompanying email messages reflects that no reasonable party of limited means would allow such a permanent, unlimited obligation to stand. However, any such factual interpretation is one for the arbitrator to make. In Mr. Uzzelle's referral of this matter back to this Court, he has ruled that Plaintiffs cannot afford to continue funding the arbitration but has not determined any facts to indicate that such a circumstance is a breach of the arbitration fee agreement.

Defendants suggest several factual circumstances in support of their argument that Plaintiffs have breached the fee agreement.

A. Plaintiffs have the funds to pay but have chosen other priorities. (Motion, page 7.)This argument is only available by cherry-picking facts and even parsing words to support Defendants continued denigration of Plaintiffs current financial condition. Defendants suggest that since Plaintiffs own "three cars between the two of them" that the claimants have the financial capacity to continue arbitration. How Orwellian!

As indicated by Plaintiff's prior exhibits and in contradiction to the arguments offered by Exhibit 21 of Defendants' Motion, Cornelia Grozav is separate from her current husband. She maintains a single vehicle, disclosed in her statement. Plaintiff Grozav utilized money two years ago received from the settlement with Defendant ISE and her savings to purchase a car in 2008

---

[3] Again, it is fundamental to note that an efficient arbitration proceeding, as proffered by the Plaintiffs, would have resolved the claims. Instead, Defendants counsel sought a broad net of discovery, sought postponents, delayed in making witnesses available, and dragged the pretrial matters out, churning fees that have adversely affected all parties.

for the princely sum of $7,900.00 (See, Exhibit 21, page 117) Rather than using the small sum of settlement for investment, or for a trivial expense, Plaintiff Grozav used the funds to obtain transportation so she could continue working. Defendants claim this to be a self-chosen priority. Plaintiffs maintain that this is a required self-depreciating expense required in this community in order to maintain employment. Public transportation, especially for the odd hours often worked by P.F. Changs waitresses, is not often available in Destin, Florida.

Similarly, Lina Scurtu fully disclosed both the vehicles, and the accompanying payment note on one of them, for her and her United States Air Force husband. With her ample salary of $300 per week and his extravagant Air Force salary, she and her husband not only support themselves, but his parents as well.

B. There is no admissible evidence reflecting the Plaintiffs in ability to pay. Such a statement is likewise without merit. As this court is aware, matters sworn under the penalty of perjury are, by law, considered sworn testimony. See, 28 U.S.C. 1746 Plaintiffs have submitted financial affidavits in the form and nature of *in forma pauperis* affidavits typically reviewed by this court for an indigent party. Since the form is one typically used by the court, counsel believed it would be the best format to present the financial condition of the plaintiffs.

The affidavits submitted are clear that the Plaintiffs are hourly employees, working in a tourist town, barely surviving in the difficult economy. To add thousands of dollars of arbitration fees to their expenses would be a mathematical impossibility.

Defendants argue that Plaintiffs should be able to muster additional funds to pay the arbitrator's fees since they are both employed, have purchased "new" automobiles in 2008, and live in Destin, Florida. Such conclusions are simply not supported by the affidavits nor logic. Yes, the Plaintiffs are employed. They each make approximately $20,000 a year. Yes, they

purchased used automobiles in 2008. These cars were not luxury, new vehicles. They were necessary for employment purposes. Finally, living in Destin, Florida is not akin to being wealthy. Almost 7% of the Destin population is foreign born, and according to the last census, the per capita income in Destin was $32, 048 with the percentage of individuals living beneath the poverty level in the Destin community at approximately 5.5%. See, [http://www.americantowns.com/fl/destin-information.](http://www.americantowns.com/fl/destin-information.) Someone must work the menial jobs necessary for visiting tourists to enjoy their time in the sun.

Plaintiffs have indicated to the arbitrator an inability to fund any additional arbitration fees and based on that notification, the arbitrator has made a referral of this matter back to this court. The arbitrator has not found the Plaintiffs in breach and this court, with all due respect, is limited in making any such finding.

**Defendants Have Engaged in Delay Tactics**

To the prejudice of the Plaintiffs, the Defendants have engaged in a repeated pattern of delaying tactics. The Defendants now have the audacity to suggest that they have not engaged in any delay.

The matter was referred to arbitration on October 19, 2007. Plaintiffs were open and accommodating as to the arbitrator, yet it took almost two months for the Defendants to present Hamp Uzzelle as the arbitrator. (Docket #39) Four more months passed as the attorneys for Wendco and HCMS thought about how best to fund this arbitration. Rather than paying the arbitrator's fees as outlined in the Wendco Dispute Resolution Handbook (which, if followed, would have obviated all of these proceedings), the Defendants refused to accept that pre-existing obligation of the Wendco handbook and insisted that the Plaintiffs share in the payment of the fees. (See, Exhibits E and F)

Another two months had to pass as the Defendants' counsel insisted on extensive discovery parameters. Once a scheduling order was issued, Defendants again sought delay around every corner. Rather than accepting stipulations as to facts, Defendants counsel sought motions to compel. (Document 61) Rather than accepting a stipulation as to post termination economic damages, Defendants counsel sought a motion to compel Plaintiff to answer discovery matters even though such matters violated her Fifth Amendment rights. This issue alone held up all matters for more than four months. (December 2008 to April 3, 2009)

Then, to add insult to the injury of these unnecessary and unreasonable delays, Defendant HCMS refused to comply with ordered discovery requests in March of 2009. More than three months later, HCMS sought a protective order from discovery claiming that responding to discovery would require "disclosure of confidential commercial information that could cause competitive injury to HCMS." (Motion, page 3) To provide perspective to this tactic, it should be noted that the protective order sought was because Plaintiffs requested the following information, *inter alia*:

1. The job title and job description of the person completing the Request, the employees for whom she had supervisory responsibilities, and the training she (the individual completing the Request) received from her employer;

2. The relationship between Wendco and HCMS, and the manner in which HCMS assigns temporary workers to Wendco;

3. An explanation of HCMS's responsibilities in the maintenance and implementation of the J-1 training visa program;

4. An explanation of the laws, regulations, and written requirements (including implementation regulations) associated with the J-1 training programs;

5. An identification of all documents, conversations, and communications relative to HCMS and the Complainants.

6. An identification of all participants in the HCMS J-1 visa training programs for the subject time period, and how they were contacted and trained

7. As to requested production of documents, HCMS was asked, in part, for copies of all documentation required to be maintained by federal regulations, copies of corporate documentation for HCMS.

None of these requested documents or information represented "confidential commercial information."

After another four months, the parties resolved the issue and depositions were scheduled. Brief depositions were held over the following several months, and a final hearing was scheduled for September of 2009. That hearing was postponed by the Defendants and an invitation for summary judgment motion was presented by Mr. Uzzelle. Though summary judgment motions have been filed, no hearing nor resolution has occurred over the past six months.

While it is true that not all of the delays in these proceedings can be a consequence of the actions of the Defendants, most of the delays can be so determined. In some sense of re-interpretation of the Constitution, the Defendants argue that Plaintiff's invocation of their fifth amendment rights was an instance of "unreasonable delay." (Motion, page 11) It is important to note that the arbitrator sided with the Plaintiff's in this assertion. Further, Defendants argue that Plaintiffs have engaged in "sheer gamesmanship" in challenging the deposition of Mr. Raffield. (Motion, Page 11-12). This agreement is presented even though Plaintiffs' counsel has repeatedly urged Defendants counsel to either co-ordinate the proper process for a third party deposition or agree to a stipulation of facts sought. Causes for delay are objectively with the Defendants

control in this case, despite the procedural revisionism of their recent Motion.

**Proposal**

Plaintiffs have requested that this Court re-assert jurisdiction over the full set of claims, demands, and equitable matters contained in the above-captioned matter, and proceed with adjudicating all such claims in this judicial forum.

Arbitrator Uzzelle, after considering the Plaintiffs' request, the length of time that has passed, the costs incurred, and the origin of his jurisdiction, issued an Order in which he concluded that any request to terminate arbitration must be directed to this Court and resolved in this forum. "That Court ordered the case to arbitration, and any decision to reverse that Order must be made by that Court." He further augmented his Order on April 7, 2010 with additional direction to the parties. "I do not believe that I can proceed further in this matter." (Doc. 108, page 2) He then completed his direction by suggesting that the parties return to this Court for further proceedings. When read together, these orders from the arbitrator form the intent that this matter be referred back to federal court for the completion of dispute resolution. Resolution not through a motion to dismiss because the Defendants are unhappy with the forum, but resolution based on the due process rights of parties seeking to enforce statutory rights.

**Conclusion**

Wherefore, for the reasons cited above, the Plaintiffs urge this court to deny the Defendants' motion to dismiss and, more directly, sustain the direction of the arbitrator that the claims of the Plaintiffs be adjudicated in this judicial forum. This matter is not a frivolous one. Defendants have admitted in discovery that federal law was ignored and issues of national

security and immigration violated. [4]These violations have caused specific and material injuries to the Plaintiffs. It is time for these injuries to be addressed and remedied.

                                                Respectfully Submitted,

                                                /s/ Robert A. Ratliff
                                                Robert A. Ratliff
                                                Attorney For Plaintiffs
                                                The Ratliff Legal Group
                                                713 Dauphin Street
                                                Mobile, Alabama 36602
                                                (251) 438-2250 Telephone
                                                (251) 438-6180 Facsimile
                                                rar@ratlifflegalgroup.com

                                                /s/ Jon A. Green
                                                Jon A. Green
                                                Attorney For Plaintiffs
                                                711 Dauphin Street
                                                Mobile, Alabama 36602
                                                (251) 438-2250 Telephone
                                                (251) 438-6180 Facsimile

---

[4]See Deposition of Belinda Addison, pp. 43, 51, 52 and Deposition of Janice Burke, pp. 12, 28 (transcripts previously filed)

## CERTIFICATE OF SERVICE

      I hereby certify that on May 24, 2010, I electronically filed with the Clerk of the Court using the CM/ECF system the foregoing pleading, which will send notification of such filing to all parties of record.

                                    /s/ Robert A. Ratliff
                                    Robert A. Ratliff
                                    Attorney For Plaintiffs