IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LINA SCURTU, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | CIVIL ACTION 07-0410-WS-B |
| v. ) | |
| ) | |
| HOSPITALITY AND CATERING ) | |
| MANAGEMENT SERVICES, ) | |
| et al., ) | |
| ) | |
| Defendants ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANTS' RENEWED MOTION TO DISMISS**

Plaintiffs, Lina Scurtu and Cornelia Grozav, by and through their undersigned counsel, respectfully request that this Court deny the Defendants' pending Renewed Motion to Dismiss. In support of this position, Plaintiffs present the following to this Court:

**Introduction**

1. The background of this case is well-known to the Court. The Plaintiffs have previously submitted a response (Docket #115) to the Defendants' initial motion to dismiss, a motion that this Court found to be "premature" and that this Court denied without prejudice. (Order, Docket #118) Plaintiffs reassert that response and incorporate it here by reference as if the entire pleading had been fully reiterated.[1]

---

[1] On May 10, 2010, under Docket #112, Defendants filed a motion to dismiss alleging that the Plaintiffs were not proceeding with arbitration. This motion was never filed with the arbitrator but directly with this Court.

1

2. However, and in addition to the substantive arguments presented to this Court for why such a motion to dismiss should be denied, once again, Plaintiffs outline the following reasons: (a) this Court, with all due respect, does not have jurisdiction to hear this motion; (b) the motion is based on incorrect conclusions of law by both the Defendants and this Court; (c) the motion does not comport with local rules, and (d) and the motion is filed in bad faith.

**Lack of Jurisdiction**

3. On October 19, 2007, this Court granted the Defendants' request to stay proceedings against it in this Federal forum pending arbitration. (See, Order, Docket #34) Such a stay placed a hold on Federal court jurisdiction of the matter and remanded the dispute, substantively and jurisdictionally, to the arbitrator. Once the preliminary proceedings are completed by the arbitrator, the Federal court can re-acquire the proverbial baton of jurisdiction. See, *Santa Fe Land Improvement Co. v. Chula Vista,* 596 F.2d 838 (9th Cir. 1979); *International Brotherhood of Boilermakers v. Combustion Engineering, Inc.* , 337 F. Supp. 1349 (D.Conn. 1971); 1A J. Moore Federal Practice P O.203(1)(2nd edition 1981) Until then, though, the jurisdiction of the claims, and the defenses to those claims, lies with Arbitrator.

4. This Court recognized this long-standing issue of judicial economy initially, when it ordered the stay of proceedings in Federal court pending arbitration, and most recently, when it denied Plaintiffs' May 2010 motion to proceed in Federal court. In Plaintiffs' argument to this Court in May, 2010, requesting that it re-acquire

jurisdiction from the arbitration forum and adjudicate the Plaintiffs' claims in Court, this Honorable Court responded by stating that the arbitrator had not given up jurisdiction over the dispute and this Court was not going to assert jurisdiction until it is divested by the arbitrator from the arbitration forum. Order, 7/27/2010, page 9

5. The dispute between the Plaintiffs and the Defendants was remanded to arbitration at the request of the Defendants. The arbitrator, under the Federal Arbitration Act (9 U.S.C. 1-16), then retained exclusive authority for all disputes. See, *Rent-A-Center v. Jackson,* 130 S.Ct. 2772, 177 L. Ed.2d 403, 2010 U.S. LEXIS 4981 (2010) This Court's jurisdiction is generally limited only to enforcing the obligations of arbitration. *Id.*

6. Notwithstanding this Court's prior actions regarding the Defendants' earlier Motion to Dismiss, any such motion must first be addressed by the Arbitrator. As this Court previously ruled on July 27, 2010 (Docket #118), the parties are not entitled to a judicial forum, "inasmuch as the arbitrator has never ordered, directed, or found that this case should proceed to conclusion in this District Court." (Order, page 19) The proper procedural route for this motion is first with the arbitrator.[2]

---

[2]In this Court's Order of October 18, 2010 (Docket #124), additional case citations were provided that reinforced this jurisdictional issue. *Merrill Lynch, Pierce, Fenner & Smith v. Barchman,* 916 F. Supp.845, 849 (N.D. Ill. 1996); *Lagstein v. Certain Underwriters at Lloyd's, London,* 607 F.3d. 634 (9th Cir. 2010)("procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide."); also see, *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009)

**Motion Based on Incorrect Conclusions of Fact**

7. The Defendants' newly renewed Motion to Dismiss is based solely on the invitation by this Court that if the Plaintiffs did not timely pay the sum of $1,332.00, they could not remain in arbitration and could not pursue their claims against the Defendants. This Court's order to the Plaintiffs to remain in the forum of arbitration and to "make their contractually required payment of $1,332.00" to the arbitrator was based upon an incorrect premise and conclusion of fact.

8. According to the arbitrator himself, the cost of simply addressing the pending motions for summary judgment may range from $6,000 to $12,000. (See Exhibit B attached to Plaintiff's Report to Court, Docket #127) Contrary to this Court's belief that only $682.00 from each plaintiff would bring this mater to a potential resolution, the summary judgment process will, according to Arbitrator G. Hamp Uzzelle, require at least a total from the parties of ten times more.

9. If the determination of statutory rights in a summary judgment proceeding would cost $12,000.00 in approximate fees, Plaintiffs would need to find and deposit an additional $4,800.00. And if Plaintiffs are successful in that hearing, arbitration would need to continue to determine damages (statutory, compensatory, and punitive). That process too would require substantial additional funds.

10. Rather than returning to this Court for a reconsideration or clarification of the matter, the parties sought to address the financial issue within the intent of this Court and its Order. Given the Plaintiffs' documented meager financial conditions, updated for all parties as suggested by this Court, the best that could

be mutually agreed was the extended payment plan discussed by all parties. Plaintiffs are now surprised by the Defendants decision to disavow their agreement on the payment plan and seek a procedural path to foreclose the claims of the Plaintiffs.

11. In sum, the previous Order of this Court was based on incorrect information regarding the financial requirements of continuing arbitration. When correct conclusions of facts are reviewed, in light of the Plaintiffs' specific financial information updated and attached as Exhibit "D" to the Status Report filed on October 26, 2010 in Docket #127, compliance with the specific monetary directive of the Court within its time frame was an impossibility.[3] The suggested (and accepted) payment plan was an objectively reasonable path to address the expressed intent of this Court.

12. While the original fee agreement was a conditional one,[4] this new agreement had no such condition. And while an earlier delay in proceeding was necessitated by a

---

[3]Updated financial statements (attached to Docket #127 as Exhibit D) reflected the very limited nature of the Plaintiffs' assets, especially since the primary assets this Court noted as being available to satisfy payments, that is the income of Ms .Scurtu's husband, were now specifically no longer available, as he is in an undisclosed combat zone in the Middle East and not a party to this action. As to Plaintiff Grozav, she is separated from her husband, receives no financial assistance from him, and additionally has a past due debt owed to the Internal Revenue Service.

[4]The March 2008 Agreement clearly indicated that plaintiffs agreed to pay 40% of the arbitrator's retainer fund, subject to the condition that the agreement would need to be modified if financial conditions changed. Those financial conditions changed and sworn statements as to financial conditions were presented to the Defendants.

brief financial issue by one of the Defendants, no condition or provision was included to support a guarantee of the Defendants' monetary payments.

13. Aside from the mistaken factual premise, the imposition of an impossible financial burden to maintain arbitration of statutory claims has been addressed by other courts. See, *Bond v. Twin Cities Carpenters Pension Fund*, 307 F.3d 704 (8th Cir. 2002)(In the context of an arbitration under ERISA, a practice that requires payment of a fee or costs as a condition to making a claim would be considered to unduly inhibit the initiation of claims, and would be unreasonable.)*Green Tree Fin. Corp.-Al. v.Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)(regarding the likelihood and standard for a plaintiff to incur prohibitively expensive arbitration costs); *Bradford v. Rockwell Semiconductor Systems,* 238 F. 3d 549 (4th Cir. 2001)(The case by case analysis articulated by the Supreme Court regarding fee-splitting provisions reflects that there are some circumstances under which the existence of large arbitration costs could preclude a litigant from effectively vindicating his federal statutory rights in the arbitral forum)

14. Plaintiffs' counsel believed that the mutually agreed plan addressed both the incorrect conclusion of fact as well as the expressed goal of this Court to progress with this case in arbitration.

**Motion Violates Local Rules**

15. As this Court knows better than counsel, the Southern District of Alabama has established local rules regarding motion practice in Federal Court. Local rule 7.1

mandates that for dispositive motions such as those arising out of Rule 12(b) and those arising out of Rule 56, a separate and distinct, full brief in support is required. No such brief or memorandum has been filed with this renewed motion to dismiss.

16. Authorized by 28 U.S.C. §§ 2071(a), local rules generally reflect the courts' traditional "authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172-73, 110 S. Ct. 482, 487-88, 107 L. Ed. 2d 480 (1989) (internal quotation marks omitted).

17. Though a minor procedural matter, a pleading that does not comport with the rules should not be entertained by this Court.

**Motion Filed in Bad Faith**

18. To the prejudice of the Plaintiffs, the Defendants have engaged in a repeated pattern of delaying tactics. The Defendants now have the audacity to suggest that they have not engaged in any delay.[5] Rather than arguing a "he said-he said" monologue to this Court, especially since this Honorable Court has expressed a level of exasperation for both sides, Plaintiff addresses only one issue as it affects the pending motion.

---

[5]A timeline and reiteration of counsel's acts of commission and omission was incorporated into Plaintiffs' counsel recent Report to the Court as a clarification and response to the Court's concerns.

19. Early last month, Mr. Woodford and Mr. Van Sickle, on behalf of their respective clients, accepted the proffered fee arrangement, an extended payment plan which would (a) meet the Defendants' goal of paying a limited amount of the arbitrator's fees and costs, (b) allow the financially strapped Plaintiffs to make installment payments notwithstanding their precarious economic situations, (c) allow the Arbitrator the opportunity of completing the task of dispute resolution so that his time up to this point would not have been wasted, and (d) reaffirm the intent and objectives of this Court and Congress under the FAA.

20. On October 15, 2010, in their October Status Report filed as Docket #123, the Defendants HCMS and Wendco of Alabama, Inc. reported to this Court that "the arbitrator and the parties have agreed" to the extended payment plan previously outlined..

21. Contrary to this representation to this Court, to their commitment to the Plaintiffs' counsel, and their agreement to the arbitrator, the Defendants now state in their Renewed Motion to Dismiss that such an agreement would be "unfair to the Defendants." Defendants' counsel backtracks from the statements of their Status Report to this Court and now represents that the extended payment plan for the arbitration was only a matter of discussion between attorneys and after consultation with their clients, they believe it would be "unacceptably dilatory to delay this case further."

22. Such conflicting representations to counsel and to this Court evinces a level of bad faith unaccustomed from Mr. Woodford and Mr. Van Sickle, yet one that

should not be permitted to go unaddressed. It is extremely obvious that the Defendants made an unconditional agreement regarding arbitration fees with the Plaintiffs and the Arbitrator, an agreement summarized and affirmed in their Status Report to the Court. However, given the comments of the Court in its Order of October 18, 2010, Docket # 124, the Defendants now believe they have an unchallenged path to dispose of claims that could materially impact their profits and their future use of the J-1 Visa Program if judgment is found to lie with the Plaintiffs. In an analysis of these two pleadings, the October Status Report and the Motion to Dismiss, one appears to fail the Fed. Rules of Civil Procedure Rule 11 standard.[6] See, *Hashemi v. Campaigner Publications, Inc.*, 1986 U.S. App. LEXIS 23313 (11th Cir. March 26, 1986)(Action is in bad faith if it is pursued for purposes of harassment, delay, or for other improper purposes.)

23. Given the conflict between the Motion to Dismiss and the prior representations in the October Status Report, the Motion should be stricken.

---

[6]Rule 11 reads, in part, "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . .".

**Conclusion**

Wherefore, for the reasons cited above, the Plaintiffs urge this court to deny the Defendants' renewed motion to dismiss.

                                                                Respectfully Submitted,

/s/Jon A. Green
Jon A. Green, Esq.
Attorney For Plaintiffs
711 Dauphin Street
Mobile, Alabama 36602
(251) 438-2250 Telephone
(251) 438-6180 Facsimile


/s/ Robert A. Ratliff
Robert A. Ratliff, Esq.
Attorney For Plaintiffs
The Ratliff Legal Group
713 Dauphin Street
Mobile, Alabama 36602
(251) 438-2250 Telephone
(251) 438-6180 Facsimile
rar@ratlifflegalgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2010, I electronically filed with the Clerk of the Court using the CM/ECF system the foregoing pleading, which will send notification of such filing to all parties of record.

/s/Jon A. Green
Jon A. Green, Esq.


/s/ Robert A. Ratliff
Robert A. Ratliff, Esq.