IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LINA SCURTU, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 07-0410-WS-B |
| | ) | |
| HOSPITALITY AND CATERING | ) | |
| MANAGEMENT SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on plaintiffs' Motion to Vacate or, in the Alternative, to Modify Arbitration Award (doc. 175). Defendant has declined to be heard on this Motion, which is now ripe for disposition.

**I.  Relevant Background.**

The tortured history of this five-year old litigation/arbitration has been exhaustively chronicled in the court file. To summarize, plaintiffs, Lina Scurtu and Cornelia Grozav, filed suit against Hospitality and Catering Management Services ("HCMS") and two other defendants back in June 2007.[1] Plaintiffs maintained, *inter alia*, that HCMS engaged in fraud and breached promises to them in connection with a management training program through which Scurtu and Grozav had relocated from their native Moldova to the United States. In October 2007, the undersigned granted HCMS's motion to compel arbitration and referred plaintiffs' claims to an arbitrator pursuant to valid, enforceable arbitration agreements the parties had executed. Those agreements provided that "[t]he parties agree that the Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings under this Agreement." (Doc. 12, at Exhs. A & B.)

The arbitration proceedings were not a model of efficiency. Delays (attributable in large measure to the parties' reliance on slash-and-burn litigation tactics) threatened to derail this

---

[1]    The other defendants settled plaintiffs' claims against them, and were ultimately dismissed from this action. As such, HCMS is the only relevant defendant.

action. The parties and arbitrator alike called for judicial intervention on multiple occasions, which yielded a series of orders dated July 27, 2010 (doc. 118); October 18, 2010 (doc. 124); November 3, 2010 (doc. 129); February 11, 2011 (doc. 135); and March 3, 2011 (doc. 138). In September 2011, plaintiffs reported that they had compromised and settled their dispute with HCMS (which was then the last remaining defendant), that a settlement agreement had been prepared, and that such agreement was awaiting execution by HCMS.[2]  On that basis, the undersigned entered an Order (doc. 152) on September 26, 2011, dismissing the action with prejudice subject to the right of any party to request that it be reinstated within 30 days if the settlement agreement were not finalized.  Unfortunately, that is precisely what happened. Plaintiffs moved to reopen the case on October 24, 2011 based on HCMS's failure to sign the settlement agreement its counsel had drafted and failure to make agreed-upon installment payments in a timely manner.  (*See* doc. 153.)[3]  When the parties proved unwilling to work together to salvage their negotiated settlement, the Court entered an Order (doc. 160) on November 21, 2011 reinstating the case and renewing the referral to arbitration for resolution on the merits.[4]

On January 25, 2012, the arbitrator entered his "Final Order" on the merits.  That Final Order set forth the arbitrator's conclusions that (a) HCMS had breached its contractual obligation

---

[2]    The key terms of settlement were that HCMS promised to pay plaintiffs the sum of $11,000 in exchange for plaintiffs dismissing their claims against HCMS with prejudice.  The agreement was drafted in its entirety by HCMS, and was signed by plaintiffs.  Under the circumstances, HCMS's execution of the document seemed to be a mere formality.

[3]    In moving for reinstatement, plaintiffs emphatically did not seek specific enforcement of the HCMS settlement agreement.  Rather than requesting a judgment in the amount of $11,000, plaintiffs' October 24 filing demanded that contempt sanctions be imposed against HCMS, to encompass "all the costs this Plaintiff incurred in the arbitration;" and that the matter be set for a trial on the merits in federal court.  (Doc. 153, at 3-4.)  In other words, once HCMS failed to pay the negotiated amount, plaintiffs sought to jettison the settlement agreement and proceed with litigation as if no such agreement had ever existed.  In fact, plaintiffs opposed subsequent efforts by HCMS to reduce that settlement agreement to a final judgment.

[4]    What then ensued was a bizarre sequence of events in which (a) HCMS sought to enforce the settlement agreement that it had previously failed to sign and whose terms it had previously failed to follow; and (b) not to be outdone, plaintiffs opposed enforcement of the settlement agreement that they had previously executed and fought tooth and nail to convince the arbitrator not to award them the agreed-upon $11,000 settlement figure.

to provide training to plaintiffs; (b) all of plaintiffs' other claims were meritless, as a matter of fact and/or law; (c) plaintiffs had failed to present any evidence of damages at the May 9, 2011 hearing, or to avail themselves of opportunities for a damages hearing or to submit evidence of damages at any other time; (d) the settlement agreement between plaintiffs and HCMS was binding and enforceable; (e) no party had requested a hearing on damages (although the arbitrator had offered to provide one) incurred by plaintiffs, such that the only evidence of damages was the $11,000 amount of the settlement agreement; (f) alternatively, HCMS was liable for breaching its promise to provide management training to plaintiffs, and the amount of damages to plaintiffs flowing from such breach was $11,000; (g) plaintiffs were entitled to recover attorney's fees and costs from HCMS for efforts in enforcing the settlement agreement, but had provided no evidence of same; and (h) "Plaintiffs should produce such evidence as to the attorney's fees and court costs that they incur at the time they file a proceeding to enforce this order." (Doc. 175, Exh. A.)

Plaintiffs were dissatisfied with the arbitrator's Final Order in their favor, so they moved for reconsideration and clarification, which had the effect of extending and prolonging these proceedings by an additional six months. (*See* doc. 167, ¶ 4.)[5]  On July 11, 2012, the arbitrator entered his Order on Motion to Clarify and Reconsider and Amendment of Final Judgment.  That Order denied plaintiffs' motion for reconsideration in its entirety, but furnished the following clarifications: (i) judgment would be entered against both "Hospitality and Catering Management Services" and "Hospitality and Catering Management Services, Inc." because of HCMS's

---

[5]     While that motion to reconsider was pending before the arbitrator, HCMS's counsel of record filed a Motion to Withdraw (doc. 171) in this forum for the stated reasons that HCMS had indicated that it was unable to pay its outstanding legal fees, or additional legal fees on a going-forward basis.  HCMS's counsel stated that it had first filed such motion with the arbitrator, but that the arbitrator had ruled that he lacked authority to decide it.  HCMS's counsel further represented that HCMS (by and through its Chief Executive Officer) had consented to counsel's withdrawal and had been informed that it could not represent itself in this matter *pro se*.  On June 19, 2012, the undersigned entered an Order (doc. 172) granting leave to withdraw, ordering HCMS to notify the Court of its new counsel on or before July 6, 2012, and cautioning HCMS that "[f]ailure to comply with this Order in a timely manner will preclude HCMS from the ability to be heard any further in this action."  (Doc. 172, at 2.)  HCMS neither complied with nor acknowledged the June 19 Order; therefore, that entity is no longer entitled to be heard in these proceedings, and the Court takes the Motion to Vacate or Modify Arbitration Award under submission without inviting defendant to file a response.

inconsistency in identifying the entity name in court documents and the settlement agreement; (ii) plaintiffs were not permitted now to name individuals associated with HCMS as defendants because such individuals had never been made parties to this action; (iii) the arbitrator had offered to hold a hearing pertaining to breach of the settlement agreement, but the parties neither expressed interest in same nor presented additional evidentiary material; (iv) all of plaintiffs' claims other than the breach of contract claim (pertaining to failure to provide training) were denied; (v) plaintiffs had never provided any evidence of damages above and beyond the $11,000 previously found by the arbitrator, such that "there is no basis for any additional damages;" (vi) "at such time as Plaintiffs should desire to proceed to enforce the order, they can at that time produce such evidence as they can as to the attorneys' fees and court costs for their efforts in enforcing the settlement agreement;" and (vii) the arbitrator's judgment was in favor of plaintiffs and against Hospitality and Catering Management Services and Hospitality and Catering Management Services, Inc. in the amount of $11,000 "plus costs and reasonable attorneys' fees for their efforts in enforcing the settlement agreement."  (Doc. 175, Exh. B.)

Plaintiffs now insist that the arbitrator's award, as amended, "is incomplete, is based on erroneous conclusions, and contrary to established law."  (Doc. 175, at 3.)  In particular, plaintiffs enumerate seven assignments of error that they contend require vacatur or modification of the award.[6]

## II.     Analysis.

### A.     *Legal Standard for Vacatur or Modification of Arbitration Award.*

Notably absent from plaintiffs' Motion is any recitation, discussion or recognition of the legal standard governing requests to vacate or modify arbitration awards.  Nonetheless, it is well settled that the Federal Arbitration Act ("FAA") "imposes a heavy presumption in favor of

---

[6]     Those challenges to the award include the following: (i) failure of the arbitrator to determine who the parties are and to whom the award applies; (ii) whether the settlement agreement is binding and enforceable; (iii) whether the arbitrator's alternative theories of breach of contract and enforcement of settlement agreement are correct; (iv) whether the award failed to address plaintiffs' RICO and other statutory causes of action; (v) whether plaintiffs were improperly barred from engaging in discovery and presenting evidence of compensatory and punitive damages; (vi) how plaintiffs should go about obtaining an award of attorney's fees; and (vii) whether the arbitrators' conclusion that the parties did not want to present evidence concerning the enforceability of the settlement agreement or damages is factually correct, and whether the award was somehow "short-changed … due to limited funds."  (Doc. 175.)

confirming arbitration awards" and that "a court's confirmation of an arbitration award is usually routine or summary." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (citations omitted); *see also B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006) (similar). The Eleventh Circuit has counseled that "federal courts should defer to an arbitrator's decision whenever possible." *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010) (citation omitted). In short, "judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (citation and internal quotation marks omitted). "[A]rbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *Cat Charter*, 646 F.3d at 843 (citation and internal quotation marks omitted).[7]

A district court "may" (not "must," as FAA review is highly deferential) vacate an arbitrator's award under only four limited scenarios prescribed by statute, to-wit: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4). Likewise, the FAA provides that a district court "may" modify or correct an arbitration award under only three circumstances, to-wit: "(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;] (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; and] (c) Where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(a)-(c). The statute

---

[7]     That said, it bears noting that "arbitration awards are not self-enforcing, but must be given force and effect by being converted to judicial orders on an appropriate motion to confirm or vacate." *See Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1293 (11th Cir. 2010) (citation and internal punctuation omitted). Plaintiffs' motion facilitates just such a conversion of the arbitration award entered here.

also clarifies that any order modifying and correcting an arbitration award should "effect the intent thereof and promote justice between the parties." *Id.* § 11.

These statutory grounds for vacatur or modification are exclusive. *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) ("holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute"); *Cat Charter*, 646 F.3d at 843 n.10 ("The Supreme Court has made clear that the statutory grounds justifying vacatur found in 9 U. S. C. § 10(a) are exclusive.").[8]  That is to say, unless plaintiffs fit their grounds for seeking vacatur or modification of the arbitrator's award into one or more of these narrow enumerated statutory boxes, their motion fails as a matter of law. Where a movant "has failed to demonstrate the existence of any of the statutory grounds for vacating or modifying the arbitrator's award, the district court [is] bound by § 9 to confirm the award." *Frazier*, 604 F.3d at 1324.  Also, "[i]n applying the statutory grounds for the granting of a motion to vacate an award, we must always bear in mind that the basic policy of conducting arbitration proceedings is to offer a means of deciding disputes expeditiously and with lower costs than in ordinary litigation." *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir. 1991).

> **B.**       **Plaintiffs' Grounds for the Motion to Vacate or Modify.**
>
> > **1.**       *Plaintiffs Have Failed to Apply Sections 10 and 11 of the FAA.*

The glaring threshold problem with plaintiffs' Motion to Vacate or Modify is that it omits reference to the legal standard for vacatur or modification of an arbitration award.  Plaintiffs have not undertaken to explain how the alleged defects in the award might fit within the narrow boundaries of the exclusive statutory grounds for relief set forth in §§ 10 and 11 of the FAA. Thus, the Court cannot discern which (if any) of these statutory bases for vacatur or modification plaintiffs might be relying on.  Federal courts do not develop litigants' arguments for them.  *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties").[9]  Recently in this

---

[8]       Although the Eleventh Circuit previously recognized non-statutory grounds for vacating or modifying an arbitration award, it no longer does so after *Hall Street*.  *See Frazier*, 604 F.3d at 1324 ("We hold that our judicially-created bases for vacatur are no longer valid ….").

[9]       *See also M.R. v. Board of School Com'rs of Mobile County*, 2012 WL 3778283, *4 n.5 (S.D. Ala. Aug. 30, 2012) ("Federal courts do not develop parties' legal arguments for (Continued)

very case, the undersigned cautioned that "if plaintiffs seek relief from the arbitrator's judgment, the Court cannot and will not perform their legal research or develop their legal arguments for them." (Doc. 172, at 2 n.2.) Yet plaintiffs have neglected to mention the FAA's statutory grounds for vacatur or modification of an award, or to explain which particular grounds they contend are applicable here and why. This Court cannot speculate and will not fill in the blanks via guesswork as to which grounds in §§ 10 or 11 plaintiffs may be invoking or why they might think such grounds are applicable.

In short, plaintiffs have failed to meet their burden of proving that the heavy presumption in favor of confirming arbitration awards should be disturbed here, or that any of the narrow statutory grounds for vacating or modifying an arbitration award warrant relief. *See, e.g., STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 74 (2nd Cir. 2011) ("[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high"); *Spungin v. GenSpring Family Offices, LLC*, --- F. Supp.2d ----, 2012 WL 3236506, *2 (S.D. Fla. May 25, 2012) ("A party seeking to vacate an arbitral award under Section 10 of the FAA bears the burden of asserting sufficient grounds to vacate the award.") (citation and footnote omitted); *Kostoff v. Fleet Securities, Inc.*, 506 F. Supp.2d 1150, 1155 (M.D. Fla. 2007) ("the moving party … bears the burden of setting forth sufficient grounds to vacate the arbitration award") (citation omitted). This determination, in and of itself, mandates that the Motion to Vacate or Modify be denied.

2.    *Plaintiffs' Stated Reasons for Vacatur or Modification are Unpersuasive.*

Setting aside plaintiffs' failure to identify any statutory bases for vacating or modifying the arbitration award, their purported assignments of error cannot withstand scrutiny. Several of the grounds that plaintiffs cite in favor of vacatur are predicated on plaintiffs' belief that the

---

them."); *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1081 n.27 (S.D. Ala. 2009) ("The parties … cannot be heard to balk if the undersigned does not perform their research and develop their arguments for them."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted); *Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

arbitrator incorrectly decided the law or made factual determinations with which they do not agree.[10]  Those arguments cannot be reconciled with binding precedent, which instructs that an arbitrator's errors of law do not provide a viable basis for disturbing the award.  *See, e.g., B.L. Harbert*, 441 F.3d at 911 ("Arbitration awards will not be reversed due to an erroneous interpretation of law by the arbitrator."); *Aviles v. Charles Schwab & Co.*, 2011 WL 2938020, *3 n.7 (11th Cir. July 20, 2011) ("an incorrect legal conclusion by an arbitrator [is] no ground for setting aside an arbitration ruling in this Circuit"); *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 746 (11th Cir. 1988) ("Courts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation."); *InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp.2d 340, 349 (S.D.N.Y. 2005) ("A mistake of law, a clear error in factfinding, or a failure to understand or apply law appropriately is insufficient to justify disturbing an arbitration award.").  Indeed, under the present state of the law post-*Hall Street*, "[e]ven manifest disregard of the law is no longer a valid independent, non-statutory ground upon which an arbitration award may be set aside."  *Aviles*, 2011 WL 2938020, at *3.  Thus, plaintiffs' contention that the arbitrator reached the wrong result or applied the law incorrectly is, without more, insufficient to permit vacatur of the award.

Next, plaintiffs fault the arbitrator for imposing limits on discovery.  However, "discovery is not guaranteed in arbitration and arbitrators have broad discretion … to grant or deny the ability to obtain discovery."  *Rintin Corp., S.A. v. Domar, Ltd.*, 374 F. Supp.2d 1165, 1170 (S.D. Fla. 2005); *see also Robert Lewis Rosen Associates, Ltd. v. Webb*, 2003 WL 22801698, *5 (S.D.N.Y. Nov. 24, 2003) ("Obviously, it is the role of the Arbitrator, as it is the role of any judicial or quasi-judicial figure, to limit discovery to those subjects that will lead to relevant information.").  This discretion is part and parcel of arbitrators' "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings."  *TIG Ins. Co. v. Global Int'l Reinsurance Co.*, 640 F. Supp.2d 519, 523 (S.D.N.Y. 2009).  More specifically, this case fairly cried out for stringent limits on discovery, given the

---

[10]  In particular, plaintiffs take the arbitrator to task for his determination that the settlement agreement is legally binding and enforceable; for his denial of plaintiffs' claims of RICO, fraud, conspiracy, and violation of the Trafficking Victim Protection Reauthorization Act of 2003; for rejecting plaintiffs' punitive damages claim; and so on.

well-documented propensity of both sides to multiply the arbitral proceedings far beyond that which was reasonable with a lengthy procession of avoidable discovery quarrels.[11]

Plaintiffs also criticize the award because they say "[t]he arbitration … should be against Janice Burke and Paul Cohen, joint and severally, d/b/a HCMS" (doc. 175, at 5).  Apparently, plaintiffs now seek summarily to pierce the corporate veil to transmogrify a five-year court action against HCMS into a judgment against two people who were never named as defendants, who never agreed to arbitrate any claims plaintiffs might have, and who never participated on their own behalf in this litigation or arbitration at any time.[12]  The time to amend a complaint to name new defendants is not when, on the precipice of entry of judgment, plaintiffs realize they may have difficulty collecting against the named defendants.  Yet that is precisely what plaintiffs attempt to achieve.  The arbitrator's refusal to endorse such a tactic to slap a judgment on Janice Burke and Paul Cohen (or, equally unpalatable, to accept plaintiffs' proposal that the arbitration award be vacated and these proceedings begin anew as against Burke and Cohen, thereby

---

[11]    One of many examples found in the court file is the undersigned's observation back in July 2010 that the parties had spent "30 months mired in arbitration proceedings, with no arbitration hearing being conducted, no substantive issues being definitively resolved, and *seemingly interminable discovery disputes and other delays stymieing the progress of arbitration at every turn*."  (Doc. 118, at 2 (emphasis added).)  That July 2010 Order recognized that "the record convincingly documents that there is ample blame to go around for all parties in transforming what should have been a compact, routine arbitration proceeding into a stagnating sinkhole of time ….   The party-driven breakdown of order and efficiency in the arbitration process is both astonishing and virtually unprecedented in the undersigned's experience."  (*Id.* at 2-3 n.2.)  Under these extreme circumstances, the arbitrator was well within his discretion in taking a firm grip on the reins and imposing reasonable boundaries on discovery to put a halt to the most egregious of the observed abuses.

[12]    Plaintiffs do not explain how arbitration against Burke and Cohen would be permissible as a matter of contract, and certainly do not come forward with any agreements under which those individuals agreed to arbitrate plaintiffs' claims against them personally.  *See generally Board of Trustees of City of Delray Beach Police and Firefighters Retirement System v. Citigroup Global Markets, Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (observing that "arbitration is a matter of consent, not coercion," and that "a party ordinarily will not be compelled to arbitrate unless that party has entered into an agreement to do so") (citation omitted).

perpetuating this action indefinitely now that plaintiffs finally know who they really meant to sue) was not error, and will not be disturbed at this time.[13]

On the topic of damages, plaintiffs complain that the arbitrator denied them discovery, never gave them an opportunity to present evidence of damages, and wrongfully denied them punitive damages.  Again, the arbitrator has extremely broad discretion in governing the scope of discovery, and plaintiffs have made no showing that the arbitrator exceeded or abused that discretion.  At any rate, plaintiffs have not shown what discovery they reasonably needed from HCMS to prove up their own compensatory damages flowing from HCMS's breach of contract. Surely plaintiffs know how they were damaged (if indeed they were) by HCMS's failure to provide training as promised, without the need for discovery.  Also, although plaintiffs complain that they were not given an opportunity to present evidence of damages, the Final Order and Order on Motion to Clarify recite multiple such opportunities that were given, none of which plaintiffs successfully rebut.  As for punitive damages, again, the only cause of action on which plaintiffs prevailed was a claim for breach of contract.  Punitive damages are unavailable for a breach of contract, as a matter of law.  *See, e.g., Exxon Mobil Corp. v. Alabama Dep't of Conservation and Natural Resources*, 986 So.2d 1093, 1117 (Ala. 2007) (recognizing "prohibition against punitive damages for breach of contract, even where the breach seems particularly egregious"); *Nolin v. Dismukes*, 554 So.2d 1019, 1020 (Ala. 1989) ("A claim for breach of contract will not support an award of punitive damages.").  As such, plaintiffs have made no viable showing for vacatur or modification of the arbitration award based on their identified concerns relating to compensatory or punitive damages.

Finally, plaintiffs suggest that the arbitration process was compromised because the parties failed (or refused) to pay all of the arbitrator's fees, which led to "short-changing the Final Order due to limited funds," such that not all of plaintiffs' causes of action were addressed and "a more comprehensive resolution" including "a recognition of remaining matters" is necessary.  (Doc. 175, at 12.)  This argument is unavailing.  For starters, there are no "remaining matters" left undecided.  The Final Order and the Order on Motion to Clarify set forth the

---

[13]     In that regard, the arbitrator correctly ruled that "[i]f the Plaintiffs believe that any individuals should in any way be bound by the judgment, they will have to file suit against those individuals and obtain jurisdiction over them and resolve the issue in that lawsuit."  (Doc. 175, Exh. B at 2.)

arbitrator's rulings on all claims, causes of action, and issues joined, with the exception of attorney's fees on the settlement-agreement enforcement issue, which the arbitrator expressly left open for resolution in judicial enforcement proceedings.  Also, nothing in the Final Order or Order on Motion to Clarify reflected that the arbitrator was in any way constrained or conflicted in making his award because of unpaid fees.[14]  Thus, plaintiff raises a phantom issue that does not appear to have impacted the arbitrator's work in any material way, much less impaired the award in a manner that might warrant relief under some (uncited) provision of §§ 10 or 11.

     *C.*       *The Attorney's Fee Issue.*

     As noted, the arbitrator's Final Order expressly left one issue for this Court to decide, as follows: "I conclude that the Plaintiffs are entitled to recover attorneys' fees from HCMS for their efforts in enforcing the settlement agreement.  No evidence has been offered as to the amount of these attorneys' fees.  Accordingly, it is ordered that the Plaintiffs should produce such evidence as to the attorneys' fees and court costs that they incur at the time they file a proceeding to enforce this order and that HCMS should pay the reasonable attorneys' fees and court costs incurred."  (Doc. 175, Exh. A, at 3.)  The arbitrator reiterated this order and these instructions in the Order on Motion to Clarify, wherein he wrote that plaintiffs still had produced no evidence as to their attorneys' fees, but that "at such time as Plaintiffs should desire to enforce the order, they can at that time produce such evidence as they can as to the attorneys' fees and court costs for their efforts in enforcing the settlement agreement."  (Doc. 175, Exh. B, at 3.)[15]

---

[14]     The Court is aware, of course, that the Final Order specifies that, as to the enforcement of settlement agreement, the arbitrator offered to set the issue for hearing "upon the parties providing an additional $1,000.00 to pay for the cost of the hearing."  (Doc. 175, Exh. A, at 2.)  But plaintiffs never requested such a hearing, never expressed a desire that the arbitrator hold such a hearing, never notified the arbitrator that they were unable to afford such a hearing, and never proffered their evidence to the arbitrator in writing.  Nor do plaintiffs apprise this Court of what evidence they wanted to present, why they failed to submit it to the arbitrator in written form, or why they believe such evidence would have mattered for purposes of the ultimate award.

[15]     In light of these very clear directives, plaintiffs' suggestion that the arbitration award must be vacated because plaintiffs do not know when or how to present evidence of their attorney's fees (doc. 175, at 11) borders on frivolity.  The arbitrator told plaintiffs what to do if they wanted an attorney's fee award, yet plaintiffs have not followed through.

Even now, plaintiffs have presented no evidence that they incurred attorney's fees in enforcing the settlement agreement.  To the contrary, the record is clear that, far from trying to enforce the settlement agreement, plaintiffs vigorously attacked it and stridently opposed any efforts to enforce that agreement.  When HCMS breached the settlement agreement last fall, plaintiffs did not attempt to enforce same, but instead pivoted away from the agreement by moving for this Court to hold HCMS in contempt and set the matter on the trial docket.  (*See* doc. 153.)  When HCMS filed a motion (doc. 165) in January 2012 asking this Court to enter judgment against HCMS in the amount of the $11,000 (the same amount recited in the settlement agreement), plaintiffs opposed it.  When the arbitrator entered a Final Order that found HCMS in breach of the settlement agreement and awarded plaintiffs the $11,000 in agreed proceeds of that agreement, plaintiffs urged the arbitrator to reconsider his ruling.  And in their Motion to Vacate filed in this Court, plaintiffs argue at length that the settlement agreement is not valid and not enforceable.  (Doc. 175, at 5-8.)

In sum, far from engaging in efforts to enforce the settlement agreement, plaintiffs have consistently opposed enforcement of same, to the point where they have substantially multiplied these proceedings and delayed their resolution through outspoken objections to both HCMS's and the arbitrator's efforts to enforce that settlement agreement.  Under these circumstances, plaintiffs cannot be have found to have incurred attorney's fees "for their efforts in enforcing the settlement agreement" (doc. 175, at Exh. B) because all of their efforts documented in the court file are at cross purposes to that objective.  On this basis (and given plaintiffs' failure to present evidence to the contrary to the arbitrator or to this Court), the undersigned finds that plaintiffs have expended no attorney's fees in efforts to enforce the settlement agreement.[16]

### III.   Conclusion.

A moving party seeking vacatur of an arbitration award bears "the burden to set forth sufficient grounds to vacate the arbitration award in his moving papers."  *O.R. Securities*, 857 F.2d at 748.  Scurtu and Grozav have not met their burden.  They have not invoked any statutory

---

[16]      In their Motion to Vacate, plaintiffs state that the arbitrator awarded them "attorney fees and costs associated with enforcing the Final Order."  (Doc. 175, at 11.)  This characterization is inaccurate.  Review of the arbitrator's rulings leaves no doubt that he awarded plaintiffs their fees and costs incurred in enforcing the settlement agreement, not their fees and costs incurred in enforcing the Final Order of the arbitrator.

grounds for vacatur or modification of the award, much less shown how their assignments of error might be deemed to satisfy any of those grounds. Moreover, even if those assignments of error could be reviewed outside of the statutory framework prescribed by 9 U.S.C. §§ 10-11 (which they cannot), plaintiffs would not be entitled to relief from the arbitrator's award. After more than five years of the parties battling before the arbitrator (and repeatedly seeking judicial intervention), the Court is of the opinion that "the Award should be confirmed and this controversy should be put to rest once and for all." *Cat Charter*, 646 F.3d at 846.

Inasmuch as plaintiffs have not overcome the heavy presumption in favor of confirming arbitration awards, their Motion to Vacate, or, in the Alternative, to Modify Arbitration Award (doc. 175) is **denied**. The arbitrator's award entered on January 25, 2012 and clarified on July 11, 2012 is **confirmed** pursuant to 9 U.S.C. § 9. Plaintiffs are entitled to a judgment against Hospitality and Catering Management Services and Hospitality and Catering Management Services, Inc., jointly and severally, in the amount of **$11,000**, including **$0.00** for attorney's fees and costs expended in attempting to enforce the settlement agreement. A separate judgment will be entered, and the Clerk of Court is directed to close this file for administrative and statistical purposes.

DONE and ORDERED this 13th day of September, 2012.

s/WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE